UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROGER HALL, et al.,

Plaintiffs,

v.

CENTRAL INTELLIGENCE AGENCY,

Defendant.

Civil Action 04-00814 (HHK)

MEMORANDUM OPINION AND ORDER

Plaintiffs Roger Hall, Studies Solutions Results, Inc. ("SSRI"), and Accuracy in Media

("AIM") bring this action against the Central Intelligence Agency ("CIA" or "Agency") under the

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*.  Plaintiffs seek documents relating

to prisoners of war and those missing in action—POW/MIAs—from the Vietnam War era.

Before the court is Hall's[1] motion for an accounting of time and costs of searches [#32].[2]  Upon

consideration of the motion, the opposition thereto, and the record of the case, the court finds that

Hall's motion must be denied.

I.  BACKGROUND

In 1994 and 1998, Hall submitted five FOIA requests to the CIA seeking five categories

of records pertaining to:  (1) POW/MIAs sent out of Southeast Asia who have not returned to the

United States; (2) Television and radio broadcast intercepts and newspaper articles from 1968 to

---

[1] In this opinion, references to "Hall" include SSRI.  There does not seem to be any
dispute between the parties that SSRI is under Hall's exclusive control.

[2] Hall's motion for partial reconsideration, filed concurrently with this motion, is
resolved by separate order.

1973; (3) Documents prepared and/or assembled by the CIA between January 1, 1971 and December 31, 1975 relating to any United States POW/MIAs in Laos; (4) Records of the Senate Select Committee on POW/MIA Affairs that were withdrawn from the National Archives; and (5) All records relating to 19 individuals who are allegedly POW/MIAs. *Hall v. CIA*, Civil Action No. 98-1319, slip op. 2–4 (D.D.C. Aug. 10, 2000). In the litigation that followed, Judge Friedman found that the CIA had properly invoked various exemptions to the FOIA to justify the CIA's withholding and redaction of certain documents, but that the agency had failed to establish the adequacy of its search. *Id.* at 8–21. Subsequently, the court denied Hall's motion for a "public interest" fee waiver and granted the CIA's motion to require Hall to commit to payment of the search and copying fees before it conducted additional searches. *Id*. at 4–7.

In a report to the court on January 31, 2003, the CIA indicated that the fees incurred since August 2000 for the "searching and processing" of records responsive to Hall's FOIA requests amounted to "at least $29,000." Pl.'s Mot. for Accounting, Exh. 3 at 2. Two months later, after "review[ing] and reconfirm[ing] the calculation of the fees incurred," the CIA determined that "some of the fees initially attributed to plaintiff's FOIA request [were] mistakenly included in the Government's fee calculation." *Id.*, Exh. 4 at 1. As a result, the CIA advised both the court and Hall that the correct amount of fees incurred by the CIA for the search of records responsive to Hall's FOIA requests since August 2000 was $10,906.33. *Id.* Because Hall had committed to paying only $1,000 of these fees, Judge Friedman found that Hall "constructively abandoned his request for documents by refusing to commit to pay for the searches he requested" and dismissed the complaint with prejudice. *Id.*, slip op. at 5 (D.D.C. Nov. 13, 2003).

Before Judge Friedman dismissed Hall's complaint, plaintiffs submitted another FOIA

request to the CIA on February 7, 2003 seeking seven categories of records, many of which were

coextensive with the records sought in Hall's previous FOIA requests.  Specifically, plaintiffs

sought records pertaining to:  (1) Southeast Asia POW/MIAs who have not returned to the

United States; (2) POW/MIAs sent out of Southeast Asia; (3) Documents prepared and/or

assembled by the CIA between January 1, 1960 and December 31, 2002 relating to any United

States POW/MIAs in Laos; (4) Records of the Senate Select Committee on POW/MIA Affairs

that were withdrawn from the National Archives; (5) Records relating to over 1700 particular

individuals who are POW/MIAs; (6) All records on or pertaining to searches conducted for

Hall's previous FOIA requests submitted in 1994 and 1998; and (7) All records on or pertaining

to "any search conducted regarding any other requests for records pertaining to Vietnam War

POW/MIAs."  Request Letter, Def.'s Mot. to Stay/Dismiss, Exh. 1 at 2–3.

On March 13, 2003, the CIA acknowledged receipt of plaintiffs' 2003 FOIA request.

Over fourteen months later, the CIA had not provided a substantive response, leading plaintiffs to

file the instant action on May 19, 2004.  On June 15, 2004, the CIA belatedly responded to

plaintiffs' 2003 FOIA request and indicated that, for a variety of reasons, it would not produce

certain documents requested by plaintiffs.  The CIA estimated that searches for the remaining

items would cost $606,950.

In response, both Hall and AIM moved for fee limitations based on their asserted status as

"representatives of the news media," and Hall moved for a "public interest" fee waiver and an

order compelling the immediate production of documents located by the CIA pursuant to his

previous FOIA requests.  In a memorandum opinion dated April 13, 2005, this court denied all of

plaintiffs' motions, holding that plaintiffs did not qualify for a fee limitation as "representatives

of the news media," that Hall did not qualify for a public interest fee waiver, and that Hall had

"no basis for demanding immediate production, in this action, of documents he requested (and

which the CIA was prepared to disclose to him) in the *previous* action." *Hall v. CIA*, Civil

Action No. 04-814, slip op. at 11 (D.D.C. Apr. 13, 2005) (emphasis in original).  In discussing

Hall's demand for immediate document production, the court held that he was not entitled to

"resuscitate his previously filed, now-dismissed action," *id.*, and that "the documents Hall seeks

to have produced 'forthwith' are simply no longer in play."  *Id.*  However, the court also made

clear that "[t]he CIA, on the other hand, cannot exclude from plaintiffs' February 7, 2003,

request any non-exempt documents on the grounds that they are coterminous with Hall's May 28,

2003 request."  *Id.* at 11–12.  Finally, the court noted that plaintiffs should anticipate higher

search fees than anticipated by the CIA in the previous action, given the expanded scope of the

FOIA requests in this action.

Less than a month after the court's decision, the CIA wrote to plaintiffs to clarify certain

outstanding issues.  Specifically, the CIA noted that it had previously requested further

information about item (5) of plaintiffs' 2003 FOIA request, information which plaintiffs

assertedly failed to supply.  Pursuant to CIA policy, plaintiffs' failure to provide the requested

additional information within forty-five days resulted in the CIA closing that item.  Furthermore,

the CIA noted that it refused to accept item (7) because it "imposes an unreasonably burdensome

search requirement on the Agency and requires research that the FOIA does not mandate."

Def.'s Opp'n, Exh. 2 at 2.  As a result of refusing to process items (5) and (7) of plaintiffs' 2003

FOIA request, the CIA stated that the estimate for the costs of conducting the search was reduced

to $40,466.[3]  The CIA requested a $20,000 deposit to process plaintiffs' request.

Hall now seeks an accounting of all time and costs incurred by the CIA in conducting

searches for the records at issue in both the previous action and in this action.

## II. ANALYSIS

FOIA requesters must ordinarily pay reasonable charges associated with processing their

requests.  5 U.S.C. § 552(a)(4)(A).  In *National Treasury Employees Union v. Griffin*, ("*NTEU*")

811 F.2d 644 (D.C. Cir. 1987), the D.C. Circuit wrote that it would be "highly improper" for an

agency to inflate the fees requested "with a view in effectively denying access." *Id.* at 650.  The

D.C. Circuit further stated that "the 1974 amendments to FOIA adding the language on fee

waivers and reasonable standard charges were clearly aimed at preventing agencies from using

high fees to discourage requests." *Id.*[4]

In his papers, Hall stops short of arguing that the CIA is intentionally using high fees to

effectively deny access to its records.  Rather, Hall suggests that the CIA's fee figures "have been

so widely divergent that they call into question either the CIA's motives or its methodology."

Pl.'s Reply in Support of Mot. for Accounting ("Pl.'s Reply") at 2.  Specifically, Hall suggests

---

[3]  The CIA explained that this amount differed from the estimate provided in the June 15, 2004 letter because that previous estimate included items (5) and (7), which were estimated to cost approximately $518,220 and $83,520 respectively.  Def's Opp'n, Exh. 2 at 3.

[4]  In 1974, Congress amended the FOIA to add, *inter alia*, a provision limiting fees to "reasonable standard charges" and a fee waiver provision, which invested federal agencies with discretionary authority to determine when fees should not be charged.  1974 Amendments to the Freedom of Information Act, Pub. L. No. 93-502, 88 Stat. 1561 (1974).  Congress added this provision in an attempt to prevent government agencies from using high fees to discourage certain types of requesters and requests.  *See* S. Rep. No. 93-864, at 11–12 (1974).

that the CIA's $606,950 estimate in June 2004 was "ludicrous" and implausible in that it

amounted to more than $10,000 per search for each of the "47 persons whose names have been

provided" pursuant to item (5) of the 2003 FOIA request.  Pl.'s Mot. for Accounting at 11–13.

Accordingly, because "this Court and plaintiffs need to know more about the basis for the CIA's

current fee estimates before making any decisions regarding them," Pl.'s Reply at 2, Hall moved

for an accounting of all time and costs incurred by the CIA.

 The CIA contends that Hall is not entitled to an accounting for the costs incurred in either

the previous action before Judge Friedman or in this action.  Noting that this court held that the

documents at issue in the previous litigation before Judge Friedman "are simply no longer in

play," the CIA argues that, *a fortiori*, issues relating to fees associated with that litigation must

also no longer be in play.  Def.'s Opp'n at 4.  The court agrees.  This civil action concerns

plaintiffs' 2003 FOIA request; it is hard to understand why this court should address matters

involving a different case before a different judge, particularly in light of the fact that Hall

already requested an accounting in that previous case.  If Hall disagrees with Judge Friedman's

decision not to closely scrutinize the fees in the action before him, the appropriate response

would be to address such disagreement with Judge Friedman or with the D.C. Circuit.

 As for the fee estimates in *this* action, the CIA asserts that Hall's motion for an

accounting "is factually erroneous and in any event premature."  *Id.*  Specifically, the CIA notes

that, contrary to Hall's assertions, item (5) did not seek documents for only 47 individuals.

Rather, item (5) sought documents pertaining to over 1700 individuals.  Def's Opp'n at 4–5.

Using the correct number, the per person cost for the search was approximately $300, not

$10,637 as Hall suggested.  Hall "apologize[d] for that error" in his reply brief.  Pl.'s Reply at 2.

Further, the CIA states that the changes in estimates provided to plaintiffs, which Hall

suggests were "widely divergent," Pl.'s Reply at 2, were in fact directly responsive to the CIA's

decision not to process items (5) and (7) of plaintiffs' 2003 FOIA request.  Within a month of the

court's April 13, 2005 decision, which apprised the CIA that it was required to produce the

requested documents that were coterminous with Hall's previous FOIA requests, the CIA

informed plaintiffs of the updated fee estimate and reasoning for the reduction in that estimate.

Based on these facts, the CIA argues that "[t]here is no basis for Plaintiff's implication that the

CIA is inflating fees or for the Court to so find."  Def's Opp'n at 5.

After considering the record, the court concludes than an accounting of the CIA's

estimate for the time and costs of the searches associated with plaintiffs' 2003 FOIA request is

inappropriate at this time.  Hall's challenge to the current fee request rests largely on what he

views to be an excessively large estimate.  This challenge is undermined by the fact that Hall

failed to acknowledge that he had requested information about 1700 individuals, not 47 as he

claimed.  Moreover, there is no credible evidence that the current fee estimate—$40,466—is

inflated or inaccurate, nor is there evidence that the decrease in the fee estimate in this action, as

explained in the CIA's June 2004 letter, was for any improper reason.[5]

Furthermore, the motion for an accounting is, as the CIA argues, currently premature.

There has not yet been a search for all the documents requested by plaintiffs' 2003 FOIA request

and the fee estimate remains just that, an estimate.  It is possible that an accounting may be

---

[5] Hall argues that the CIA's "vastly different and conflicting" fee requests in the
litigation before Judge Friedman is evidence of wrongdoing.  Pl.'s Mot. for Accounting at 10–12.
The mere fact that the CIA amended its fee calculations in the previous action, notably to Hall's
benefit, is not sufficient by itself to establish that those calculations were intentionally inaccurate
and purposefully inflated.

appropriate at a later date if, for example, the actual cost of the search for documents responsive to plaintiffs' 2003 FOIA request ends up being inexplicably different than the current fee estimate or if the documents produced suggest that the costs for the search were improperly inflated.  However, the court is satisfied that the CIA's current fee estimate is reasonable and therefore must deny Hall's motion for an accounting.

### III.  CONCLUSION

For the foregoing reasons, it is this 25th  day of January, 2006, hereby

**ORDERED**, that Hall's motion for an accounting of time and costs of searches [#32] is **DENIED**.


Henry H. Kennedy, Jr.
United States District Judge