### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

ROGER HALL, et al.,

            **Plaintiffs,**

v.

CENTRAL INTELLIGENCE AGENCY,

          **Defendant.**

</td><td>

**Civil Action 04-00814 (HHK)**

</td></tr>
</table>

### MEMORANDUM OPINION AND ORDER

Plaintiffs Roger Hall, Studies Solutions Results, Inc., and Accuracy in Media ("AIM")
filed this action against defendant Central Intelligence Agency ("CIA" or "Agency") under the
Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, seeking records related to
prisoners of war or soldiers missing in action from the Vietnam War era. Before the Court are
the Agency's "Renewed Motion to Dismiss and for Partial Summary Judgment" [#109], Hall's[1]
renewed "Cross-Motion for Partial Summary Judgment, an Order Authorizing Plaintiffs to Take
Discovery, an Order Instructing Defendant to Conduct Additional Searches, and Orders for
Certain Other Relief" [#117], and AIM's "Cross-Motion for Summary Judgment and for Other
Relief" [#114]. Upon consideration of the motions, the oppositions thereto, and the record of
this case, the Court concludes that the CIA has properly declined to respond to some of plaintiffs'
requests but must respond to others, the CIA has demonstrated the adequacy of some searches for
records but not others, and the CIA has properly invoked some statutory exemptions to its

---

[1]     In this opinion, references to "Hall" include Studies Solutions Results, Inc., which
appears to be under Hall's exclusive control and which has made all filings jointly with him.

disclosure obligations but has not provided sufficient information to support reliance on others.

Accordingly, each motion shall be granted in part and denied in part, and the CIA shall be

required to submit additional information to the Court.

## I. BACKGROUND

### A. The Freedom of Information Act

FOIA generally allows any person to obtain access to federal agency records, subject to

certain specified exceptions.  5 U.S.C. § 552(a), (b).  Congress enacted FOIA to "set[] forth a

policy of broad disclosure of Government documents in order to ensure 'an informed citizenry,

vital to the functioning of a democratic society.'"  *Critical Mass Energy Project v. Nuclear*

*Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (quoting *FBI v. Abramson*, 456 U.S.

615, 621 (1982)) (alteration in original).  Although Congress acknowledged that information

requests may impose burdens upon government agencies, it decided that the "ultimate policy of

open government should take precedence."  *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321,

325 (D.C. Cir. 1999) (citations omitted).

In response to a FOIA request, an agency must "conduct[] a search reasonably calculated

to uncover all relevant documents."  *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C.

Cir. 1994) (quoting *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1985)

(internal quotation marks omitted).  If a requester's suit challenges an agency's invocation of

exemptions to its disclosure obligation, the agency must justify its reliance on those exemptions

through the submission to the court of a so-called "*Vaughn* index," affidavits or declarations, or

both, containing a detailed description of the information withheld.  *Defenders of Wildlife v. U.S.*

*Border Patrol*, 623 F. Supp. 2d 83, 88 (D.D.C. 2009); *see also Vaughn v. Rosen*, 484 F.2d 820,

827-28 (D.C. Cir 1973).[2]

**B. Factual Background**

Hall researches the status of Prisoners of War and Missing in Action ("POW/MIAs")

from the Vietnam War era, on his own and on behalf of families of those veterans, and shares

information he collects via email newsletters.  AIM is a non-profit corporation that "disseminates

analysis of news media reporting."  Am. Compl. ¶ 3.  Hall has submitted several FOIA requests

to the CIA; requests he made in 1994 and 1998 were the subject of previous litigation before

United States District Judge Paul L. Friedman, *see Hall v. CIA*, Civil Action No. 98-1319, slip

op. at 1-4 (D.D.C. Aug. 10, 2000) ("*Hall I*"), the outcome of which has some bearing on this

action, as explained below.

By letter dated February 7, 2003, Hall made a FOIA request of the CIA on behalf of

himself and AIM.  The request sought: (1) records pertaining to Southeast Asia POW/MIAs who

have not returned to the United States; (2) records pertaining to POW/MIAs sent out of Southeast

Asia; (3) documents prepared and/or assembled by the Agency between January 1, 1960 and

---

[2]     The Court notes here that the CIA has provided a variety of such documents in this case.  The Agency first submitted a motion to dismiss and for summary judgment in October 2006, to which the Declaration of Scott A. Koch, Information and Privacy Coordinator, Central Intelligence Agency ("Koch Declaration") and other exhibits, including a *Vaughn* index, were attached.  That filing was later vacated, and the Agency submitted a renewed motion in October 2008, to which the Declaration of Ralph S. DiMaio, Information Review Officer, National Clandestine Service, Central Intelligence Agency ("DiMaio Declaration") and other exhibits, including another *Vaughn* index, were attached.  The DiMaio Declaration and 2008 *Vaughn* index supplemented, rather than replaced, the Koch Declaration and 2006 *Vaughn* index.  For ease and clarity, this opinion will cite directly to the two declarations and their exhibits.

December 31, 2002 regarding any POW/MIAs in Laos; (4) records of the Senate Select

Committee on POW/MIA Affairs that were withdrawn from the National Archives; (5) records

relating to forty-four particular POW/MIAs from whose next-of-kin Hall had received privacy

waivers as well as approximately 1,700 POW/MIAs whose next-of-kin have made a general

authorization for the release of those individuals' information; (6) all records pertaining to

searches conducted for three previous FOIA requests Hall submitted in 1994 and 1998; and (7)

all records related to "any search conducted regarding any other requests for records pertaining to

Vietnam War POW/MIAs."  Koch Decl. Ex. 1 at 2-3 ("February 2003 Letter" or "2003 request").

Hall and AIM asserted in their request letter that they were entitled to a waiver of their search

fees because they are representatives of the news media and that they should receive a public

interest waiver of their copying fees.  *Id.* at 3.

On May 19, 2004, having received no substantive response to their request, Hall and AIM

filed this action.  On June 15, 2004, the CIA responded to the February 2003 letter, indicating

that it could not accept items 1, 2, and 3 "as part of this new request" because Hall had asked for

the same documents in the 1998 FOIA request at issue in *Hall I.*  Koch Decl. Ex. 2 at 2.  The

CIA also indicated that it could not accept item 4 because the documents sought therein "are not

'agency records' subject to FOIA."  *Id.*  Regarding item 5, the Agency wrote that it could not

accept the request unless plaintiffs provided "the date and place of birth and the full name of all

individuals listed."  *Id.* at 3.  The CIA indicated that the item 7 request imposed "such overly

burdensome search requirements as to not require a search."  *Id.*  The Agency stated that Hall had

"failed to demonstrate that he meets the criteria for the 'representative of the news media' fee

category" and estimated that the search fees for items 5, 6, and 7 would be $606,950.  *Id.*  It

demanded a $50,000 deposit before it would process Hall's request.  *Id.*[3]

On April 13, 2005, this Court addressed several motions then pending in this case.

Relevant here are the rulings in that opinion that "plaintiffs may not challenge" either "the CIA's

withholding of certain records Hall sought in his May 28, 1998, FOIA request" or the conclusion

"that particular records are exempt from the definition of 'agency records' under FOIA."  *Hall v.*

*CIA*, 2005 WL 850379, at *3 (D.D.C. Apr. 13, 2005) ("*Hall II*").  The Court also concluded that,

based on the evidence before it, neither Hall nor AIM qualified as a representative of the news

media for purposes of a fee limitation and plaintiffs were not entitled to a public interest fee

waiver.  *Id.* at *6-7.

On April 26, 2005, AIM sent a letter to the CIA duplicating the seven February 2003

requests and adding an eighth category, records "pertaining to the estimates of fees made in

response" to the February 2003 letter.  Koch Decl. Ex. 9 at 2 ("April 2005 Letter").  AIM again

requested a waiver of search fees as a representative of the news media as well as a public

interest waiver of copying fees.  The CIA responded by letter, stating that all eight items were the

subject of this pending case and therefore the CIA would not accept the request.  Koch Decl. Ex.

10 at 2.

In May 2005, Hall sent two letters to the CIA: one included information "to supplement

the application" for a fee limitation as a representative of the news media and for a public interest

fee waiver, Koch Decl. Ex. 11, and the second made the same eight-part FOIA request as was

---

[3]        The CIA later sent a "follow-up" to this letter in May 2005 reiterating its previous
position that it need not respond to items 4, 5, or 7 and requesting a $20,000 deposit based on its
estimate of the cost of searching for the remaining documents.  Koch Decl. Ex. 5 at 2-3.

included in AIM's April 2005 letter, *id.* ("May 2005 Letter").  The CIA responded to Hall's requests regarding fees, referring to the Court's April 2005 determination of these issues and writing that it had "considered the information" in Hall's letter before concluding that he had "not met the standard for a public interest fee waiver," nor did he "meet the definition of a representative of the news media."  Koch Decl. Ex. 12 at 1.

In November 2005, the CIA released 122 documents, twenty in full and 102 in part, to Hall in response to the 1994 and 1998 requests that were the subject of *Hall I*.  Koch Decl. Ex. 3 at 2.  The Agency withheld twenty-six responsive documents "in their entirety" on the basis of certain FOIA exemptions.  *Id.*  The CIA asserts that this disclosure—which it notes was voluntary, because *Hall I* had been dismissed by the time it was made—responded to items 1 and 2 as well as, for the years 1971 to 1975, item 3 of Hall and AIM's current requests.  Def.'s Renewed Mot. to Dismiss at 7.  In September 2007, the CIA sent a letter to Hall and AIM stating that it had performed a search for item 3 documents from 1960 to 1971 and 1976 to 2002, the years included in the February 2003 request but not the 1994 and 1998 requests, and the Agency disclosed responsive, non-exempt documents.  DiMaio Decl. Ex. 1 at 1.  The letter also indicated that the CIA had located other responsive materials that originated outside the CIA and had referred those records to the relevant, unnamed agencies "for review and direct response to you." *Id.* at 2.

As to item 6, the CIA sent letters to Hall and AIM in August and October 2006 indicating it was providing responsive, non-exempt documents described in that portion of their request. Koch Decl. Exs. 6, 7.

Regarding item 8, the category added to the initial request, the CIA responded in July 2007 by providing one document in full and three in part.  DiMaio Decl. Ex. A.

Meanwhile, in September 2005, Hall and AIM filed an amended complaint in this action asserting five claims.  The plaintiffs allege that they have a right under FOIA to the records sought in their February 2003 letter (Count I); they have a right to the records sought in AIM's April 2005 letter and Hall's May 2005 letter, respectively (Counts II and III); they are entitled to a fee waiver as representatives of the news media (Count IV); and they are entitled to a public interest fee waiver (Count V).

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In a FOIA action, the agency must prove that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978), *cert. denied*, 445 U.S. 927 (1980).  The agency is entitled to summary judgment in an action challenging the adequacy of its search only if it demonstrates that it has "conducted a search reasonably calculated to uncover all relevant documents." *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1985)) (internal quotation marks omitted).  Regarding withholdings pursuant to statutory exemptions, the Court may award summary judgment solely on the information provided in affidavits or declarations that describe

"the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  Agency decisions to withhold or disclose information under FOIA are reviewed *de novo*.  *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977).  A reviewing court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B).

**B. Dismissal for Failure to State a Claim**

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint, or any portion of it, for failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  A court considering such a motion to dismiss must assume that all factual allegations are true, even if they are doubtful.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[A] plaintiff's obligation to provide the 'grounds' of [her] 'entitle[ment] to relief,'" however, "requires more than labels and conclusions . . . .  Factual allegations must be enough to raise a right of relief above the speculative level."  *Id.* (internal citations omitted).

### III. ANALYSIS

The parties' motions each make a number of arguments, many of which overlap or interrelate.  Therefore, rather than addressing each motion in turn, the Court will consider first the CIA's refusal to respond to certain portions of Hall and AIM's requests, next the adequacy of the CIA's search for records pursuant to requests to which it has responded, third the propriety of the Agency's invocation of certain exemptions from FOIA's disclosure requirements, and finally the remaining issues of discovery, in camera inspection of documents, and fee waivers.

**A. The CIA's Failure to Disclose Certain Categories of Documents**

**1. Item 4**

The CIA requests dismissal under Rule 12(b)(6) as to item 4, which seeks records of the

Senate Select Committee on POW/MIA Affairs that were withdrawn from the National Archives.

The CIA argues that Hall and AIM are collaterally estopped from asserting any claim regarding

item 4 because Judge Friedman ruled in *Hall I* that these records, as Senate documents, are not

"agency records" subject to FOIA.  Hall and AIM respond that *Hall I* required the CIA to

confirm that no responsive documents are of its own creation and thus within the Agency's,

rather than the Senate's, control.

As explained in this Court's earlier ruling, the principle of collateral estoppel[4] applies

here to prevent Hall and AIM from arguing that the Senate Committee's records are "agency

records."  *See Hall II*, 2005 WL 850379, at *3 (D.D.C. Apr. 13, 2005).  Consequently, insofar as

plaintiffs' complaint requests the records of the Senate Committee, it must be dismissed.  But

collateral estoppel also applies against the CIA.  Judge Friedman noted that although the Agency

need not search or disclose any documents in the Senate Select Committee files, any "identical

copies of . . . documents of its own creation" contained in CIA files would be subject to FOIA.

*Hall I*, Civil Action No. 98-1319, slip op. at 14 n.4 (D.D.C. Aug. 10, 2000).  Judge Friedman

therefore ruled that "[i]n preparing its supplemental declarations in this matter, the CIA should

confirm that it has independently reviewed all documents of its own creation that were included

---

[4]       "Collateral estoppel, or issue preclusion, provides that 'once a court has decided
an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the
issue in a suit on a different cause of action involving a party to the first case.'"  *Stonehill v. IRS*,
534 F. Supp. 2d 1, 6 (D.D.C. 2008) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)), *aff'd*
558 F.3d 534 (D.C. Cir. 2009).

with the Senate Select Committee documents." *Id.*  The CIA ultimately did not provide this confirmation,[5] so dismissal as to this specific category of documents is denied.  The Agency must provide the confirmation Judge Friedman required or turn over any non-exempt records to Hall and AIM.

### 2. Item 5

The CIA asks this Court to rule that plaintiffs' item 5 request, which seeks "[r]ecords relating to [forty-four] individuals who allegedly are Vietnam era POW/MIAs, and whose next-of-kin have provided privacy waivers to Roger Hall . . . and those persons who are on the Prisoner of War/Missing Personnel Office's list of persons whose primary next-of-kin (PNOK) have authorized the release of information concerning them," February 2003 Letter at 2, is improper.  The Agency argues that the request, which pertains to approximately 1,700 individuals,[6] was too vague to process and that Hall and AIM did not provide the additional information—the date of birth, place of birth, and full name of each person—the CIA notified them it required to conduct a proper search.  The Agency refers to the contention in the Koch Declaration that searching without this additional information might turn up records pertaining to individuals with names similar to those on the list but whose private information plaintiffs are not authorized to see.  *See* Koch Decl. ¶¶ 25-26.

---

[5]     *Hall I* was ultimately dismissed because Hall did not submit funds to pay for his requested search, and thus the Agency, which had not by the time of dismissal provided the court with the additional information described in Judge Friedman's opinion, no longer had "any obligation to file the supplemental declarations or affidavits."  *Hall I*, Civil Action No. 98-1319, slip op. at 5 (D.D.C. Nov. 13, 2003).

[6]     The parties have not provided the Court with the lists of these forty-four and 1,700 individuals that were apparently attached to the February 2003 letter.  Because no party disputes any description of these lists contained in the briefing—in particular, the number of names listed and certain additional information about the individuals included and not included—the Court assumes the parties' representations are accurate.

Hall responds that the item 5 request is not vague.  He argues that the CIA should search for, and provide records that contain, information sufficient to identify the person to whom it relates as one on Hall's lists.  AIM contends that the Agency is able to perform searches for the forty-four individuals whose next-of-kin provided authorizations directly to Hall, noting that plaintiffs have provided specific information—such as social security numbers, service numbers, and other data—for many of those POW/MIAs.  AIM further asserts that the information accompanying the longer list of POW/MIAs whose families have made records accessible—including branch of service, a seven-digit reference number, and other data regarding capture—makes a search of those names possible as well.

The CIA does not identify the legal authority on which its argument is based, but it seems to contend that item 5 does not fulfill the requirement that a FOIA request "reasonably describe[]" the records sought.  5 U.S.C. § 552(a)(3)(A).  "A request reasonably describes records," however, "if 'the agency is able to determine precisely what records are being requested.'"  *Kowalczyk v. U.S. Dep't of Justice*, 73 F.3d 386, 388 (D.C. Cir. 1996) (quoting *Yeager v. Drug Enforcement Admin.*, 678 F.2d 315, 326 (D.C. Cir. 1982)).  The Agency has not alleged that it cannot discern what records Hall and AIM seek.  Instead, it has asserted that were it to search for the names, the search would turn up some records that are not responsive to Hall and AIM's request.  So the Agency has conceded that a search is possible.  And it has not explained why it could verify the identity of individuals whose names appear in its records by date and place of birth but not by, for example, social security number.  If such an explanation exists, the CIA must provide it in a supplemental declaration.  Otherwise, it must search for and disclose any non-exempt records which, based on the information Hall and AIM have provided

and the details contained in the records themselves, it can verify pertain to an individual on plaintiffs' lists.  Pending compliance with these instructions, the Agency is not entitled to summary judgment that it has complied with FOIA as to item 5.

### 3. Item 7

The CIA has not provided any records in response to item 7 of Hall and AIM's request, which asks for "all records pertaining to any search ever conducted by the Agency, at any time and for any reason, for records concerning Vietnam War POW/MIAs."  February 2003 Letter at 3.  The Agency argues that the request is "unreasonably burdensome" based on assertions in the Koch Declaration that "the Agency's record systems are not configured in a way that enables us to search for records of searches in [non-FOIA] contexts" and a search for FOIA searches "timed out" after producing over 3,500 potentially responsive results.  Def.'s Renewed Mot. to Dismiss at 20-21; Koch Decl. ¶¶ 37-38.  Hall responds that it would not "require a gargantuan effort to locate some responsive records" to this request "through reasonable searches."  Pl. Hall's Cross-Mot. for Summ. J. at 45.  AIM argues that "[t]here is no exemption for a search being unduly burdensome" and notes that it has, as the Agency requested, narrowed its item 7 request: it is no longer seeking records of previous FOIA requests pertaining to POW/MIAs but instead is requesting only records of previous searches that resulted from other types of requests.  Pl. AIM's Cross-Mot. for Summ. J. at 18-19.  In reply, the CIA maintains that the more limited request is not sufficiently narrowed to alleviate the burden a search would impose.

First, based on the parties' representations,[7] the Court will treat item 7 as excluding records of searches performed in response to previous FOIA requests.  Thus the question of whether it is unreasonably burdensome for the CIA to sort through and provide responsive documents pertaining to such searches is moot.

As to the remaining requested records, the Court will not order the CIA to perform a search that its recordkeeping system does not allow.  *See Sonds v. Huff*, 391 F. Supp. 2d 152, 160 (D.D.C. 2005) ("[A]gencies are not required to perform searches which are not compatible with their own document retrieval systems."  (quoting *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 27 (D.D.C. 2000) (internal quotation marks omitted)).  But despite a contention in the Koch Declaration that the CIA can only retrieve records of FOIA searches, the Declaration also indicates that the Agency's electronic database system tracks "searches recently conducted for other federal agencies."  Koch Decl. ¶ 38 n.11.  The Court cannot grant summary judgment to the CIA as to Hall and AIM's remaining item 7 request until it performs a search of that system for responsive documents or explains to the Court why it cannot do so.

### 4. Item 3 referrals

As indicated in letters to Hall and AIM, the CIA asserts that in performing its search for documents responsive to item 3 of Hall and AIM's request, which seeks records "[p]repared by and/or assembled by the CIA" between 1960 and 2002 related to the status of any POW/MIAs in Laos, February 2003 Letter at 2, the Agency "located information within CIA records . . . that

---

[7]     Although Hall has not stated directly that he agrees with AIM's narrowing of item 7, his discussions of item 7 refer only to records related to searches requested by congressional committees and executive agencies.  The Court therefore infers that he is no longer requesting information regarding searches conducted in response to FOIA requests.

originated from a third agency." DiMaio Decl. ¶ 7. The CIA has referred these documents to

those other, unnamed agencies for review, and plaintiffs have not yet received them. *Id.* Hall

argues that because of the delay in receiving responses, "the right to claim exemptions for these

materials has been waived" or, in the alternative, that this Court should set a deadline by which

the CIA must provide "all nonexempt referral materials and justify any withholdings." Pl. Hall's

Cross-Mot. for Summ. J. at 4. The CIA responds that it cannot compel other agencies to respond

quickly, nor can it declassify information of another agency. The Agency notes that it has not

requested summary judgment as to these referred records.

When an agency receives a FOIA request for records in its possession, "it must take

responsibility for processing the request" even if the documents originated elsewhere. *McGehee*

*v. CIA*, 697 F.2d 1095, 1110 (D.C. Cir. 1983). Referrals to the originating agency are

appropriate, but a referral system constitutes withholding "if its net effect is significantly to

impair the requester's ability to obtain the records or significantly to increase the amount of time

[s]he must wait to obtain them." *Id.* The withholding is "'improper' unless the agency can offer

a reasonable explanation for its procedure." *Id.*

Hall and AIM initially requested the records described in item 3 in February 2003. The

CIA released the results of the search it conducted in response to that request in September 2007.

The letter accompanying those records indicated that the Agency had contacted the relevant

agencies by September 2007, but did not state on what date or dates it made the referrals.[8] Those

---

[8] One factor in evaluating referral procedures is whether the referral was "prompt
and public." *McGehee*, 697 F.2d at 1111. To make a "prompt and public" referral, the agency
must "immediately (i) inform the requester of the situation, (ii) notify the originating agency and,
(iii) if necessary, forward to the latter copies of the relevant documents." *Id.* Without precise
information regarding the timing of the referrals, the Court cannot consider this factor.

agencies had apparently not provided responses by the time briefing on the motions currently

before the Court was completed in September 2009.  Thus at least a two-year delay has

transpired, and the CIA does not assert that it has made any effort to ensure that its referrals are

being processed.  The time Hall and AIM have waited for the records has been significantly

increased by these referrals, so the referral process here constitutes improper withholding.  *Cf.*

*Keys v. U.S. Dep't of Homeland Sec.*, 570 F. Supp. 2d 59, 70 (D.D.C. 2008) (concluding that an

agency had "ignored its responsibilities under FOIA" by failing to follow up with two other

agencies to which it had referred records while eleven months passed between the referral and

the eventual disclosure of the documents).  Although the Court declines to grant Hall the precise

relief he has requested, the Court holds that the CIA is responsible for responding to this request

and that it must take affirmative steps to ensure that its referrals are being processed, which it

should describe in its supplemental filing.

**B. The Adequacy of the CIA's Search**

 **1. Items 1, 2, and 3**

  **i. Search terms**

 Hall and AIM argue that the CIA's search for records described in items 1, 2, and 3 of

their request—which seek records regarding POW/MIAs in Southeast Asia, sent out of Southeast

Asia, and in Laos—was inadequate because the Agency's search terms were deficient.

Specifically, Hall asserts that the Agency used the term "Prisoner of War" but not the plural

"Prisoners of War"; that it did not search for several terms Hall asserts are often used to refer to

POW/MIAs, such as "pirates" and "criminals"; that it entered search terms in all capital letters

and so would not turn up matches in lower case; that it did not search for any code names or

cryptonyms used in projects regarding POW/MIAs; and that it did not search for the names of prisons.  Hall also attempts to demonstrate the inadequacy of the search by providing a list of documents that the CIA has not provided to him even though, he asserts, they exist and are responsive to his FOIA request.

First, the CIA responds that Hall may not object to the adequacy of search terms used to locate records provided in November 2005 pursuant to the requests discussed in *Hall I*. Regarding the search for item 3 records for the years 1960 to 1970 and 1976 to 2002, which the CIA released to plaintiffs in September 2007, the Agency argues that the terms were those used for prior, extensive searches and that Hall had not previously objected to them.

As described above, this Court ruled in April 2005 that, based on the doctrine of collateral estoppel, issues litigated in *Hall I* may not be raised again here.  *Hall II*, 2005 WL 850379, at *3 (D.D.C. Apr. 13, 2005).  The Court specifically noted that "Hall challenged the adequacy of CIA's search" in *Hall I*.  *Id.*  In *Hall I*, Judge Friedman questioned whether the Agency's search terms were adequate because the CIA had not indicated what terms three of four divisions within the Agency had used and because the Directorate of Operations, the one division that had provided a list of search terms, did not search for the terms "PW" or "PWs."  *Hall I*, Civil Action No. 98-1319, slip op. at 9 (D.D.C. Aug. 10, 2000).  The Koch Declaration states explicitly that to locate the records disclosed in November 2005, the three other directorates performed searches using the terms the Directorate of Operations had listed as well as "PW" and "PWS."  Koch Decl. ¶ 21.  Because the opinion in *Hall I* approved these search terms, plaintiffs may not now challenge their use in responding to requests duplicative of those addressed in that case.

As to the searches conducted to locate item 3 records from years other than 1971 to 1975, the Court does not have sufficient information to evaluate the parties' arguments.  To be granted summary judgment, an agency must demonstrate that its search was "reasonably calculated to uncover all relevant documents."  *Steinberg*, 23 F.3d at 551 (quoting *Weisberg*, 745 F.2d at 1485) (internal quotation marks omitted).  The affidavits or declarations submitted to meet this burden must "explain in reasonable detail the scope and method of the agency's search." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009) (citing *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 185 F. Supp. 2d 54, 63 (D.D.C. 2002)); *see also Morley v. CIA*, 508 F.3d 1108, 1121 (D.C Cir. 2007) (holding that the CIA's description of a search was inadequate where the declaration "provide[d] no information about the search strategies of the components charged with responding to [plaintiff]'s FOIA request" and did not "provide any indication of what each directorate's search specifically yielded"); *Steinberg*, 23 F.3d at 551-52 (finding a "serious doubt" as to whether an agency's search was reasonable when the accompanying affidavit "fails to describe what records were searched, by whom, and through what processes").

The Koch Declaration states that "the same search terms will be used" to perform a search for the remaining item 3 documents as were used to produce the November 2005 disclosures, Koch Decl. ¶ 23, but it does not identify which directorates would conduct searches, describe the databases to be searched, or explain how the search would be tailored to locate records from the years in question or with content specific to Laos.  The DiMaio Declaration includes no information regarding how the search used to locate the records produced in September 2007 occurred.  DiMaio Aff. ¶ 6.  The Court therefore denies the CIA's request for

summary judgment as to the adequacy of its search for additional item 3 records.  The CIA must

provide a supplemental declaration describing its search method, including search terms,

databases searched, and other relevant information that will allow the Court to evaluate whether

the Agency's search was adequate.[9]

### ii. Operational Files

The Koch Declaration states that the Directorate of Operations "did not conduct an

additional search" using "PW" and "PWS" per Judge Friedman's instructions in *Hall I* because

that Directorate "determined that any responsive records it had would be contained in properly

designated operational files, which are exempt from the search, review, and release provisions of

the FOIA."  Koch Decl. ¶ 22 n.6.  Hall argues that this failure to search was improper because the

statute permitting the CIA to exempt "operational files"[10] from FOIA states that "exempted

operational files shall continue to be subject to search and review for information concerning . . .

the specific subject matter of an investigation by the congressional intelligence committees."  50

---

[9]     The declaration should be sufficiently detailed to allow the Court to address Hall's
objections to the search.  Specifically, the Agency should address whether it used both "Prisoner
of War" and "Prisoners of War" as search terms.  If it did not, it must either explain why the
unused form would not have turned up any additional responsive documents or perform a new
search using that term.  The Agency should also indicate whether its retrieval system is case-
sensitive, meaning that a search for a term in all capital letters would not locate a document
containing that term in lowercase letters.  The Court also advises the Agency to explain why it
believes its search terms are sufficient to locate responsive documents or why Hall's suggested
additional search terms were not necessary or useful to a reasonable search for the item 3 request.

[10]    The statute defines "operational files" as including "files of the Directorate of
Operations which document the conduct of foreign intelligence or counterintelligence operations
or intelligence or security liaison arrangements or information exchanges with foreign
governments or their intelligence or security services."  50 U.S.C. § 431(b)(1).  Hall does not
dispute the CIA's premise that a further search by the Directorate of Operations would locate
only records that fall within this definition.

U.S.C. § 431(a), (c).  Hall asserts that "[t]he Government's handling of the MIA/POW issue was the subject of investigations" by several Senate committees.  Pl. Hall's Cross-Mot. for Summ. J. at 5.[11]  The CIA responds that none of those committees are "congressional intelligence committees" to which the statute refers.

The CIA is correct.  As noted in a case Hall cites, *see Morley v. CIA*, 508 F.3d 1108, 1116 n.1 (D.C. Cir. 2007), "congressional intelligence committees" as used in section 431 means "(A) the Select Committee on Intelligence of the Senate; and (B) the Permanent Select Committee on Intelligence of the House of Representatives."  50 U.S.C. § 401a(7).  Hall has not alleged that either of those committees conducted investigations relevant to his search.  The Court therefore declines to order the Agency to perform an additional search of the files of the Directorate of Operations for records responsive to items 1, 2, or 3.

**2. Item 6**

Hall also contests the adequacy of the CIA's search for documents responsive to item 6 of his and AIM's request.  Item 6 seeks records pertaining to searches the CIA performed in response to Hall's 1994 and 1998 FOIA requests as well as to fee assessments connected to those searches.  Hall argues that the CIA has not explained why it did not search beyond the one record

---

[11]     Hall also argues that a 1993 Presidential Directive requiring declassification and release of documents related to POW/MIAs overrides the statute exempting the CIA's operational files from searches pursuant to FOIA requests.  He provides no support for this contention.

system mentioned in the Koch Declaration.[12]  The Agency responds that it was required only to search the record system likely to contain responsive documents.

Review of the adequacy of an agency's search for records responsive to a FOIA request is based on "principles of reasonableness." *Weisberg*, 745 F.2d at 1485.  An agency is required "to make a good faith effort to conduct a search for the requested records, using methods which can reasonably be expected to produce the information requested." *Int'l Trade Overseas, Inc. v. Agency for Int'l Dev.*, 688 F. Supp. 33, 36 (D.D.C. 1988) (quoting *Marrera v. U.S. Dep't of Justice*, 622 F. Supp. 51, 54 (D.D.C. 1985)).  The Court may rely on "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).  An agency is not required to search all of its record systems if searches of particular systems "are unlikely to produce any marginal return." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998) (citing *Oglesby*, 920 F.2d at 68).

The Court cannot conclude based on the information in the record that the CIA's search fulfilled these requirements as to item 6.  The Koch Declaration explains that the CIA's Public

---

[12]      Hall also argues that the CIA's search did not locate records of time spent searching and rates charged.  But review of the adequacy a FOIA search is not based on whether all responsive documents are found.  *See Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 390-91 (D.C. Cir. 2007) ("[T]he fact that a particular document was not found does not demonstrate the inadequacy of a search."  (citations omitted)); *Judicial Watch, Inc. v. U.S. Food and Drug Admin.*, 514 F. Supp. 2d 84, 87 (D.D.C. 2007) ("[I]n assessing the reasonableness of a search, a court is not guided by whether the search actually uncovered every document." (quoting *Ferranti v. Bureau of Alcohol, Tobacco & Firearms*, 177 F. Supp. 2d 41, 47 (D.D.C. 2001) (internal quotation marks omitted)).

Information Programs Division "manages the processing of FOIA requests, including any assessment of fees associated with FOIA requests," so the administrative files of that division are "most reasonably likely to contain documents or information pertaining to the assessment of fees associated with Hall's requests." Koch Decl. ¶ 32. But the Declaration does not state that other divisions, such as those that performed searches, are unlikely to have any records related to Hall's requests or the Agency's fee assessments. Such a statement is necessary to determine that a search was reasonable. *See Oglesby*, 920 F.2d at 68 (holding that summary judgment was not appropriate where the agency limited its search to one record system without making clear that the single system was "the *only* possible place that responsive records are likely to be located" and stating that "[a]t the very least, [the agency] was required to explain in its affidavit that no other record system was likely to produce responsive documents"). Therefore the Court denies summary judgment to the CIA as to the adequacy of its search for records responsive to item 6.

### 3. Item 8

The CIA seeks judgment as a matter of law as to item 8, Hall and AIM's request for records related to fees estimates for the February 2003 request. Hall does not challenge the adequacy of the CIA's search for these records.[13] The Court therefore treats the argument as conceded, *see Klugel v. Small*, 519 F. Supp. 2d 66, 72 (D.D.C. 2007) ("It is well established in the D.C. Circuit that when a party does not address arguments raised by a movant, the court may treat those arguments as conceded." (citing *Hopkins v. Women's Div. Gen. Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002))), and concludes that judgment shall be entered in favor of the CIA as to the adequacy of its search for item 8 records.

---

[13]     AIM asserts that plaintiffs have not received certain documents it suggests would be responsive to the item 8 request. But it refers to Hall's motion without otherwise articulating or supporting an argument that the CIA is not entitled to summary judgment as to item 8.

**C. Exemptions**

Because Congress recognized that "legitimate governmental and private interests could be harmed by release of certain types of information" pursuant to FOIA, *FBI v. Abramson*, 456 U.S. 615, 621 (1982), it set forth nine exemptions to the statute under which an agency may properly withhold information.  *See* 5 U.S.C. § 552(a)(4)(B), (b)(1)–(9).  The agency bears the burden of justifying its decision to withhold requested documents.  *Beck v. U.S. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993).  An agency's declaration explaining its withholdings is sufficient to support a claimed exemption if it: (1) is not conclusory; (2) is neither controverted by evidence in the record nor by evidence of agency bad faith, *Shaw v. U.S. Dep't of State*, 559 F. Supp. 1053, 1056 (D.D.C. 1983) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)); and (3) describes the justification for withholding the requested records "in sufficient detail to demonstrate that the claimed exemption applies," *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 392 (D.C. Cir. 1987).  If the declarations or affidavits meet these standards, "then the court need not question the submissions' veracity and must accord them substantial weight in its decision."  *Schlesinger v. CIA*, 591 F. Supp. 60, 64 (D.D.C. 1984) (citing *Taylor v. Dep't of the Army*, 684 F.2d 99, 106-07 (D.C. Cir. 1982)).

In the *Vaughn* indexes the CIA submitted to the Court in 2006 and 2008, the Agency invokes exemptions 1, 2, 3, 5, and 6 to justify the withholding of portions of, or in some cases the entirety of, records responsive to Hall and AIM's 2003 and 2005 requests for production. The Agency has not submitted a *Vaughn* index to accompany the November 2005 disclosures it made pursuant to the 1994 and 1998 requests reviewed in *Hall I*.  Hall and AIM object to the Agency's reliance on exemptions 1, 2, 5, and 6 and to its failure to justify its *Hall I* withholdings.

### 1. November 2005 withholdings

Hall and AIM argue that the CIA has failed to meet its obligation to provide a "relatively detailed analysis," *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973), supporting withholdings regarding the items 1, 2, and 3 records it disclosed in November 2005. Pl. Hall's Cross-Mot. for Summ. J. at 19-20. The Agency has submitted no declaration or index pertaining to those withholdings to this Court. The CIA argues this omission is acceptable because Judge Friedman approved the invocations of exemptions in *Hall I* and this Court ruled that collateral estoppel barred relitigation of issues presented in that case, including "the CIA's withholding of certain records Hall sought in his May 28, 1998 FOIA request." *Hall II*, 2005 WL 850379, at *3.

Judge Friedman approved the Agency's invocation of certain exemptions in withholding records located by a search the CIA performed prior to his August 2000 opinion. *Hall I*, Civil Action No. 98-1319, slip op. at 17-21. This Court held that Hall and AIM may not challenge that decision. *Hall II*, 2005 WL 850379, at *3. But the *Vaughn* index submitted to Judge Friedman did not address the withholdings from the CIA's November 2005 disclosures; the CIA performed the search for those records in accordance with, and thus after the issuance of, Judge Friedman's opinion. *See* Koch Decl. ¶¶ 19-22. Therefore, the issue of whether the Agency properly withheld records or portions of records from the November 2005 disclosures has not been the subject of litigation. Therefore, the CIA must submit a *Vaughn* index describing "the documents and the justifications for nondisclosure with reasonably specific detail, [and] demonstrat[ing] that the information withheld logically falls within the claimed exemption," *Military Audit Project*, 656 F.2d at 738, for the 102 records the Agency located but did not provide in full to Hall and AIM in November 2005 as well as the twenty-six documents it withheld in their entirety.

The Court now turns to considering the Agency's reliance on exemptions to justify withholdings from records responsive to item 3 for the years not covered in the *Hall I* requests, item 6, and item 8.

### 2. Exemption 1

Exemption 1 permits the withholding of records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1).  The CIA has withheld a number of documents pursuant to this exemption and Executive Order 12,958, "Classified National Security Information," as amended, 60 Fed. Reg. 19,825 (April 17, 1995) ("E.O. 12,958").  Hall argues that the withholding is inappropriate because the records relate to historical matters, the Agency has made only "conclusory assertions" without stating how disclosure would harm national security, and the CIA has not shown that the documents have proper markings of classified documents as required by the executive order.  Pl. Hall's Cross-Mot. for Summ. J. at 25-26.  The CIA responds that the DiMaio Declaration states that the information is properly classified, the *Vaughn* indexes describe "to the greatest degree possible the information that was withheld."  Def.'s Opp. to Pls.' Cross-Mots. for Summ. J. at 14 ("Def.'s Opp.").  The CIA also argues that the information is "less than 25 years old," *id.*, meaning it is not subject to the provision of Executive Order 12,958 automatically declassifying records that are more than twenty-five years old.

An agency bears the burden of establishing that documents are properly classified as secret and thus clearly exempt from disclosure.  *Founding Church of Scientology of Wash., D.C., Inc. v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979) (citing 5 U.S.C. § 552(a)(4)(B)).  But the D.C.

24

Circuit has articulated an expansive standard of deference in national security cases, noting that "little proof or explanation is required beyond a plausible assertion that information is properly classified." *Morley*, 508 F.3d at 1124; *see also Larson v. U.S. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (noting that court need only examine whether agency's classification decision "appears 'logical' or 'plausible'" (citing *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007))). The Court is to afford "*substantial weight* . . . to an agency's affidavit concerning the details of the classified status of the disputed record." *Morley*, 508 F.3d at 1124 (quoting *Military Audit Project*, 656 F.2d at 738) (emphasis in original) (internal quotation marks omitted).

Here, the DiMaio Declaration states that all withheld records are properly classified and explains the rationales for keeping secret information pertinent to intelligence methods, internal information, and cryptonyms. DiMaio Decl. ¶¶ 13-26. The *Vaughn* indexes state the level of classification of each particular document for which the CIA invokes exemption 1. These explanations appear comparable to those the D.C. Circuit approved in *Morley v. CIA*, 508 F.3d 1108, 1124, 1125 (D.C. Cir. 2007) (affirming the CIA's use of exemption 1 based on an explanation in a declaration of "the CIA's reasons for protecting intelligence sources and methods along with other internal information"). Hall's arguments regarding the detail of the CIA's justification is therefore unpersuasive.

But the Agency's statement to this Court that the records withheld pursuant to exemption 1 are less than twenty-five years old is, as to some documents, plainly incorrect. For example, portions of several documents dating from 1962 are withheld on the basis of exemption 1.

DiMaio Decl. Ex. 2, Part 3, at 26-30 ("2008 *Vaughn* Index").[14]  Executive Order 12,958 calls for

the automatic declassification of records "more than 25 years old" with "permanent historical

value."  E.O. 12,958 §§ 3.4(a).  The Order exempts from this requirement nine categories of

information.  *Id.* § 3.4(b).[15]  The records at issue here may well fall into one or more of these

categories, but the CIA has not made such an assertion.  *Cf. Schoenman v. FBI*, 2009 WL

763065, at *21 (D.D.C. 2009) (holding that the CIA complied with the requirements of E.O.

12,958 where a declaration regarding a FOIA request stated that the declarant had "re-reviewed

each of the documents described in the CIA's *Vaughn* index during the current litigation process

and determined that [the relevant documents] each contain information . . . warranting their

continued classification despite their age").  The CIA should address this issue in its

supplemental filing to this Court pursuant to this opinion.

Therefore, the Court grants summary judgment to the CIA as to its withholding of

documents less than twenty-five years old pursuant to exemption 1 but denies summary judgment

as to those documents that are more than twenty-five years old.

---

[14]     The 2008 *Vaughn* index does not number each document consecutively.  The 1962 documents are numbered MORI 1342289, MORI 1342290, MORI 1342291, and MORI 1342292.

[15]     These categories include information which would, if released, "reveal the identity of a confidential human source, or reveal information about the application of an intelligence source or method, or reveal the identity of a human intelligence source when the unauthorized disclosure of that source would clearly and demonstrably damage the national security interests of the United States"; "reveal information that would impair U.S. cryptologic systems or activities"; or "reveal information that would seriously and demonstrably impair relations between the United States and a foreign government, or seriously and demonstrably undermine ongoing diplomatic activities of the United States."  E.O. 12,958 § 3.4(b).

### 3. Exemption 2

Exemption 2 allows an agency to withhold information "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Information is excepted from FOIA's disclosure requirements under exemption 2 if (1) it "fall[s] within the terms of the statutory language" and (2) the agency can show that "disclosure may risk circumvention of agency regulation" ("high b(2)") or "the material relates to trivial administrative matters of no genuine public interest" ("low b(2)"). *Morley*, 508 F.3d at 1124 (quoting *Schwaner v. U.S. Dep't of Air Force*, 898 F.2d 793, 794 (D.C. Cir. 1990) (internal quotation marks omitted)); *Schiller v. Nat'l Labor Relations Bd.*, 964 F.2d 1205, 1207 (D.C. Cir. 1992). For most documents withheld in part on the basis of exemption 2, the 2008 *Vaughn* index states, using the same language for each document: "The distribution information consists of internal administrative information in which there is no genuine public interest, including filing identifiers, routing codes, handling instructions, origination markings, and other internal administrative information which is protected from disclosure by exemption low b(2)." *See, e.g.*, 2008 *Vaughn* Index, Part 1, at 4, 6, 8, 10, 12.[16] For other documents, the index states, again repeatedly using the same language: "The block at the end of the letter contains a set of internal routing and filing information, which is included on the internal file copies of correspondence but not on the original sent to the addressee. This block was withheld on the basis of Exemption (b)(2)." *See* 2008 *Vaughn* Index, Part 4, at 6-13, 19-20.[17]

---

[16]     These pages correspond to documents numbered MORI 1479578, MORI 1479579, MORI 1479580, MORI 1479581, and MORI 1479582.

[17]     These pages correspond to documents numbered MORI 141096, MORI 1370159, MORI 1370160, MORI 1370161, MORI 1370162, MORI 1370163, MORI 1370164, MORI

Hall argues that the CIA has not properly invoked this exemption because the information withheld is of interest to the public; he asserts that the data "provides knowledge of where records are located, who was aware of what, when, who did what, etc."  Pl. Hall's Cross-Mot. for Summ. J. at 28.  The CIA argues that this administrative data is of the sort courts have permitted agencies to withhold in other cases.

The CIA misunderstands its responsibility.  The D.C. Circuit has made clear that exemption 2 "does not shield information on the sole basis that it is designed for internal agency use," *Morley*, 508 F.3d at 1125 (quoting *Fitzgibbon v. U.S. Secret Serv.*, 747 F. Supp. 51, 56 (D.D.C. 1990)) (internal quotation mark omitted), and that "it is the agency's burden to establish that the information withheld is too trivial to warrant disclosure," *id.* (citing 5 U.S.C. 552(a)(4)(B); *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989)).  As in other cases requiring an agency to provide more justification for reliance on exemption 2, the CIA "has failed even to suggest any . . . reason or need to keep secret the administrative routing information and internal data."  *Id.* (quoting *Fitzgibbon*, 747 F. Supp. at 57) (internal quotation marks omitted).  Because the Agency has not provided evidence regarding this exemption, Hall and AIM have established that a genuine issue of material fact exists, *cf. id.*, and the Court denied summary judgment to the CIA.  The CIA's supplemental filing to this Court shall include further detail regarding its invocation of exemption 2 or the CIA shall disclose to Hall and AIM information previously withheld pursuant to this exemption.

---

1370165, MORI 1383898, and MORI 1383899.  By highlighting these documents and those identified in the preceding footnote, the Court does not mean to exclude from its ruling other documents for which the CIA justified withholdings based on exemption 2.

### 4. Exemption 3

The CIA invoked exemption 3, which permits withholding records "specifically exempted from disclosure by statute" if the relevant statute affords the agency no discretion on disclosure, establishes particular criteria for withholding the information, or refers to the particular types of material to be withheld. *See* 5 U.S.C. § 552(b)(3)(A)–(B). The Agency seeks summary judgment as to its reliance on this exemption, and Hall and AIM have not responded to that request. Because "when a party does not address arguments raised by a movant, the court may treat those arguments as conceded," *Klugel*, 519 F. Supp. 2d at 72 (citing *Hopkins*, 238 F. Supp. 2d at 178), the Court holds that the CIA is entitled to summary judgment on the issue of whether it properly withheld records pursuant to exemption 3.

### 5. Exemption 5

Exemption 5 permits an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "As such, [exemption 5] is interpreted to encompass, *inter alia*, three evidentiary privileges: the deliberative process privilege, the attorney-client privilege, and the attorney work product privilege." *Tax Analysts v. IRS*, 294 F.3d 71, 76 (D.C. Cir. 2002). The CIA appears to seek summary judgment as to its reliance on all three privileges to invoke exemption 5.

#### i. Deliberative process privilege

Hall and AIM challenge the CIA's reliance on the deliberative process privilege as to six particular documents, arguing that the Agency's justifications are conclusory because they fail to describe the decision or advice involved. They also argue that because of its age, the withholding

of a seventh document, dated June 4, 1981, does not further the purposes of the exemption.  The CIA responds that it has properly invoked the exemption because the relevant documents "contain[] the recommendations or opinions of the Agency and its personnel on matters preceding final Agency action."  Def.'s Opp. at 16.

The deliberative process privilege "protects 'confidential intra-agency advisory opinions' and 'materials reflecting deliberative or policy-making processes.'"  *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004) (quoting *EPA v. Mink*, 410 U.S. 73, 86 (1973)).  The purpose of the deliberative process privilege is to ensure open communication between subordinates and superiors, to prevent premature disclosure of policies before final adoption, and to avoid public confusion if grounds for policies that were not part of the final adopted agency policy happened to be exposed to the public.  *Defenders of Wildlife v. U.S. Dep't of Agric.*, 311 F. Supp. 2d 44, 57 (D.D.C. 2004) (citations omitted).  Therefore, when a court reviews whether an agency properly withheld documents under the deliberative process privilege, the critical question is whether "disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions."  *Formaldehyde Inst. v. U.S. Dep't of Health & Human Servs.*, 889 F.2d 1118, 1122 (D.C. Cir. 1989).

One of the documents Hall identified as improperly withheld pursuant to the deliberative process privilege contains "emails and internal memos dated in June of 2004 from individuals in various CIA directorates and offices"; five others are "memorandums . . . addressed to various CIA directorates from CIA's FOIA office and pertain to fee estimates for preliminary searches

conducted in response to Roger Hall's FOIA request." 2008 *Vaughn* Index, Part 4, at 22-23.[18]

The CIA withheld these records because "they reflect internal pre-decisional deliberations of

agency officials on records relating to the POW/MIA [*sic*] and fee estimates on conducting

searches." *Id.*

The Court cannot ascertain from these statements, which reflect all of the pertinent

information provided in the 2008 *Vaughn* index, whether the CIA properly invoked exemption 5.

Merely asserting that the documents are "pre-decisional" without explaining to what pending

decisions they related or making clear whether they "make[] recommendations or express[]

opinions on legal or policy matters," *Vaughn*, 523 F.2d at 1143-44, is insufficient.  Insofar as the

memorandums indicate that certain decisions about searches or fees had already been made, they

do not fall within exemption 5.  *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975)

("it is difficult to see how the quality of a decision will be affected by communications with

respect to the decision occurring after the decision is finally reached").  The CIA must either

disclose these documents or, if it wishes to continue to withhold them pursuant to exemption 5,

include in its supplemental filing details that "illuminate the contents of the documents and the

reasons for non-disclosure." *Defenders of Wildlife*, 311 F. Supp. 2d at 60.

As to the June 4, 1981 document,[19] Hall is correct that the age of a document is one factor

to consider in assessing whether the deliberative process privilege is properly invoked.  *See*

*Lardner v. U.S. Dep't of Justice*, 2005 WL 758267, at *13 (D.D.C. 2005) (citing *In re Sealed*

---

[18]    These documents are numbered MORI 1100665, MORI 1100667, MORI
1100668, MORI 1100669, MORI 1100670, and MORI 1100671.

[19]    This document is numbered MORI 1479603.

*Case*, 121 F.3d 729, 753 (D.C. Cir. 1997)).  But age alone is not determinative.  *Id.*  The CIA has

asserted that the document "reflects the deliberations of agency officials on how it intends to

handle specific requests for records."  2008 *Vaughn* Index, Part 3, at 37.  But it provides no

further detail to support withholding, and the *Vaughn* index indicates that the document is a

"Weekly Report of the Information and Privacy Division," which suggests it more likely contains

the results of deliberation than deliberation itself.  *Id.*  The Court requires more information to

make a determination about the propriety of the CIA's reliance on exemption 5 for withholding

this document.

The CIA is entitled to summary judgment as to all other withholdings it justified by

reliance on the deliberative process privilege.[20]

### ii. Attorney-client privilege

The Agency has also withheld a number of documents under exemption 5 because, it

asserts, the documents are protected by the attorney-client privilege.  Hall and AIM argue that the

CIA has not demonstrated that the communications were made in confidence and that "there is

some evidence that they were not, as the CIA has apparently invoked Exemption 2 to redact the

---

[20]      The only argument Hall and AIM make regarding *all* documents for which the
CIA invokes the deliberative process privilege is that the withholding of the identities of the
documents' authors sufficiently protects the interest in not stifling future communications.  But
the focus of the privilege is not on the effect of disclosure on any particular individual at an
agency, rather, the exemption seeks to protect candid deliberation throughout the agency.  *See
Greenberg v. U.S. Dep't of Treasury*, 10 F. Supp. 2d 3, 16 n.19 (D.D.C. 1998) (rejecting an
argument that redacting the names of individuals would eliminate the need for the invocation of
exemption 5 because redaction "would not eliminate the effect that the release of these
documents, illustrating the CIA's decision-making process, would have on the candor of future
deliberations at the CIA").

list of distribute[e]s of these com[m]unications." Pl. Hall's Cross-Mot. for Summ. J. at 32.[21]

The CIA asserts that it has properly invoked the attorney-client privilege to withhold

communications between Agency attorneys and officers.

Information shared with a third party is not protected by the attorney-client privilege.

*Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 253 (D.C. Cir. 1977) (citations

omitted).  Because "[w]here the client is an organization, the privilege extends to those

communications between attorneys and all agents or employees of the organization who are

authorized to act or speak for the organization in relation to the subject matter of the

communication," *id.* at 253 n.24, some CIA employees should be considered third parties for

purposes of assessing whether the invocation of exemption 5 was proper and others should not.

The documents at issue here are listed in the *Vaughn* indexes as communications between "CIA

lawyer" or "CIA attorney" and "CIA officer."  *See, e.g.*, 2008 *Vaughn* index, Part 4, at 24.[22]  The

Agency has not provided any additional information about the responsibilities of the officers to

which it refers.  Therefore, the Court cannot determine whether the officers are individuals who,

by virtue of their authority to represent the Agency, are entitled in their communications with

---

[21]        Hall includes a variety of other arguments regarding exemption 5 in his motion,
none of which impact the Court's conclusions.  He argues that CIA attorneys are in a fiduciary
relationship with citizens who make FOIA requests and that the CIA has waived the privilege by
engaging in misconduct.  These arguments are unsupported and therefore unpersuasive.  He also
argues that certain records he did not receive regarding fees are business records and are
therefore not subject to the attorney-client privilege.  But he acknowledges that the CIA did not
assert that its search located the records to which he refers, so there is no exemption invocation
for the Court to assess.

[22]        This page corresponds to documents numbered MORI 1100673 and MORI
110[0]675.  The Court's ruling applies to all documents as to which the CIA invokes the
attorney-client privilege.

attorneys to the protections of the attorney-client privilege.  The CIA must either disclose records withheld pursuant to the attorney-client privilege or indicate in its supplemental filings, in sufficient detail, why withholding is proper as to each document for which it relies on the privilege.

### iii. Attorney work product privilege

Hall makes descriptive statements regarding the attorney work product privilege, but he does not articulate an argument that the CIA improperly withheld any documents pursuant to it. AIM similarly makes no such argument.  Because the CIA asserts that it properly invoked the privilege, this lack of response constitutes a concession.  *See Klugel*, 519 F. Supp. 2d at 72 (citing *Hopkins*, 238 F. Supp. 2d at 178).  The Court therefore grants summary judgment to the Agency as to its reliance on the attorney work product privilege.

### 6. Exemption 6

Exemption 6 allows agencies to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Hall and AIM argue that the CIA's invocation of exemption 6 is insufficient because it is conclusory.  The CIA argues that its use of the exemption is appropriate because there is no public interest in the names and identifying information of individual CIA employees.

The D.C. Circuit has read the statutory requirement that the invasion protected by exemption 6 be "clearly unwarranted" as imposing a "heavy burden" to overcome the presumption that records should be disclosed.  *Morley*, 508 F.3d at 1127.  The agency must provide context so that the reviewing court can assess the privacy interest at stake.  *See Armstrong v. Executive Office of the President*, 97 F.3d 575, 581 (D.C. Cir. 1996) ("The scope of

a privacy interest under Exemption 6 will always be dependent on the context in which it has

been asserted.").  In *Morley v. CIA*, the CIA's declaration explaining the invocation of exemption

6 stated only that "disclosure would constitute a clearly unwarranted invasion of the personal

privacy of third parties."  *Morley*, 508 F.3d at 1128.  The D.C. Circuit held that the disclosure of

biographical information does not necessarily invade an individual's privacy and that summary

judgment was inappropriate where the agency "failed to explain the extent of the privacy interest

or the consequences that may ensue from disclosure."  *Id.*  Here, the CIA has similarly stated

only[23] that each document for which it relies on exemption 6 "contains information that applies

to a particular, identifiable individual" so "[d]isclosure of this information" would constitute an

unwarranted invasion of personal privacy."  2008 *Vaughn* Index, Part 1, at 37, 39; Part 2, at 10,

15, 27; *see also id.*, Part 4, at 1, 14 (using slightly different language to describe the individuals

but offering the same justification for withholding).[24]  For the reasons articulated in *Morley*, this

Court denies summary judgment to the CIA on this issue.  The Agency must disclose the

information or include in its supplemental declaration further explanation of its decision to

withhold it.

### 7. Segregability

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to

any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. §

---

[23]     In the rare instances in which the CIA has provided more information, the details do not pertain to the privacy interest at stake.

[24]     These pages correspond to documents numbered MORI 1479603, MORI 1479604, MORI 1442331, MORI 1333276, MORI 1340885, MORI 1370168, and a document apparently incorrectly labeled "6.001."  The same conclusion applies to the invocation of exemption 6 in the 2006 *Vaughn* index for documents numbered 1 and 29.

552(b).  Accordingly, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Krikorian v. Dep't of State*, 984 F.2d 461, 466 (D.C. Cir. 1993) (quoting *Mead Data*, 566 F.2d at 260).  The agency bears the burden of demonstrating that withheld documents contain no reasonably segregable factual information, *see Army Times Pub. Co. v. Dep't of Air Force*, 998 F.2d 1067, 1068 (D.C. Cir.1993); *Mead Data*, 566 F.2d at 260, and must do so with "reasonable specificity," *Armstrong*, 97 F.3d at 578 (citing *Quiñon v. FBI*, 86 F.3d 1222, 1227 (D.C. Cir. 1996)).  The Court has an affirmative duty to consider whether an agency has released all reasonably segregable information, *Morley*, 508 F.3d at 1123, and can do so only when the agency has correlated each exemption it claims with the particular portion of the document to which the exemption applies, *Schiller*, 964 F.2d at 1209-10 (citing *Schwartz v. IRS*, 511 F.2d 1303, 1306 (D.C. Cir. 1975); *King v. U.S. Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir. 1987)).

Hall and AIM argue that the CIA has failed to meet this requirement because the Agency gave no or only a conclusory explanation of its decision to withhold substantial portions of many documents.  The CIA responds that "the exempt portions are explained to the fullest extent possible without disclosing the information that is protected" and that the DiMaio Declaration states that "no further information could be segregated."  Def.'s Opp. at 13.

The CIA's *Vaughn* index does not provide information sufficient for the Court to review its compliance with FOIA's requirement that reasonably segregable portions of records be released.  The DiMaio Declaration does address the issue, but statements referring to "all documents," DiMaio Decl. ¶ 37, do not provide the specificity necessary to conduct a segregability analysis.  Nor does the statement, repeated throughout the 2008 *Vaughn* index, that

"[n]o meaningful nonexempt information is reasonably segregable for release." *See, e.g.*, 2008 *Vaughn* Index, Part 1, at 1, 2, 3, 4, 6, 8, 10. The 2006 *Vaughn* index does not mention segregability at all. FOIA does not require explanations "rich with detail or lavish with compromising revelations," but some specificity is necessary. *Animal Legal Defense Fund, Inc. v. Dep't of Air Force*, 44 F. Supp. 2d 295, 302 (D.D.C. 1999).[25] The Court therefore concludes that the CIA's supplemental filing must include more information about the segregability of documents, "'specify[ing] in detail which portions of the document are disclosable and which are allegedly exempt,' . . . mak[ing] specific findings for each document withheld[,] . . . and 'correlat[ing] claimed exemptions with particular passages.'" *Id.* (quoting *Schiller*, 964 F.2d at 1209, 1210).

## C. Fee Limitation and Fee Waiver

The CIA asks the Court to dismiss the counts of Hall and AIM's complaint pertaining to plaintiffs' requests for a fee limitation for representatives of the news media and for a public interest fee waiver. Hall and AIM appear to request summary judgment on the two counts in their favor. The Court addresses each issue in turn.

---

[25]    In *Armstrong v. Executive Office of the President*, 97 F.3d 575, 581 (D.C. Cir. 1996), the D.C. Circuit held that an agency's explanations for withholding documents in full were sufficiently specific to permit the reviewing court to conduct a segregability analysis. *Id.* at 578-79. The explanations the court approved included that one record was not segregable "because it discusses throughout intelligence data as well as cooperative counter-terrorist actions flowing from that intelligence" and that another was withheld in full because "[t]his note consists of an extensive review of numerous intelligence cables, revealing one piece of specific intelligence after another." *Id.* at 578, 579. These statements, despite providing only minimal specificity, are nevertheless far more informative than the submissions currently before the Court.

**1. Status as representatives of the news media**

FOIA requesters must ordinarily pay reasonable charges associated with processing their requests, including search, review, and duplication charges.  5 U.S.C. § 552(a)(4)(A).  A request by a "representative of the news media," however, is only subject to duplication fees.  *Id.* § 552(a)(4)(A)(ii)(II).  Hall and AIM argue that they are entitled to status as representatives of the news media.  The CIA argues that the Court decided in its previous ruling in this case that neither plaintiff met the requirements for such status and, regardless, the issue is moot because the Agency waived search fees in this case.[26]

The Court need not resolve the question of whether it can properly reconsider this issue. The CIA has decided, "[a]s a matter of administrative discretion," that "[t]he plaintiffs' fee treatment will be the same as what representatives of the news media receive."  DiMaio Aff. ¶ 10.  Therefore, the issue is moot.  *See Hall v. CIA*, 437 F.3d 94, 99 (D.C. Cir. 2006) ("the CIA's decision to release documents to Hall without seeking payment from him moots Hall's arguments that the district court's denial of a fee waiver was substantively incorrect. . . . Hall's case is moot because he already has 'obtained everything that [he] could recover . . . by a judgment of this court in [his] favor.'" (quoting *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 91 (D.C. Cir. 1986))).

---

[26]     The Agency refers to having waived "all applicable fees for searches it conducted in response to items 3, 6, and 8 in this case."  Def.'s Opp. at 14.  It does not mention review fees. Because the DiMaio Declaration states that the CIA will treat Hall and AIM as representatives of the news media and because the plaintiffs do not argue that they have been required to pay review fees, the Court will presume that the Agency has also waived any applicable review fees.

### 2. Public interest fee waiver

FOIA also directs that properly disclosed documents will be provided to a requester without charge or at reduced rates "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); 32 C.F.R. § 1900.13(b)(2); *Judicial Watch*, 185 F. Supp. 2d at 60.

Hall and AIM argue that they are entitled to a public interest fee waiver, emphasizing that they have provided to the CIA additional information relevant to this determination since this Court addressed the issue in April 2005. The CIA does not distinguish its arguments on this point from those it makes regarding fee limitations granted to representatives of the news media. The only type of fees potentially at issue, given the CIA's treatment of Hall and AIM as representatives of the news media, are duplication fees. The record before this Court contains no indication that the plaintiffs have ever been charged duplication fees.[27] Because it does not appear that an actual controversy exists, the Court will not address this issue. *See Better Gov't Ass'n*, 780 F.2d at 91 (declining to consider an argument that a FOIA requestor was entitled to a public interest fee waiver where the agency had already waived fees because "a declaration from this court that the initial refusals to waive FOIA fees were unlawful . . . would be an advisory opinion which federal courts may not provide" (citing *Natural Resources Defense Council, Inc. v. U.S. Nuclear Regulatory Comm'n*, 680 F.2d 810, 815 (D.C. Cir. 1982))).

---

[27] The only fee request the Court can identify, asserted in a June 2004 letter and recalculated in May 2005, was an estimate of *search* fees, which the CIA has since waived.

**D. Discovery**

Hall has requested discovery under Rule 56(f) of the Federal Rules of Civil Procedure, asserting that discovery is necessary to show that the CIA possesses additional records it has not provided to him.  But "[d]iscovery is not favored in lawsuits under the FOIA.  Instead, when an agency's affidavits or declarations are deficient regarding the adequacy of its search . . . the courts generally will request that the agency supplement its supporting declarations." *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 185 F. Supp. 2d 54, 65 (D.D.C. 2002) (citing *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 892 (D.C. Cir. 1995); *Oglesby*, 920 F.2d at 68).  Courts may permit discovery in FOIA cases where a "plaintiff has made a sufficient showing that the agency acted in bad faith." *Voinche v. FBI*, 412 F. Supp. 2d 60, 71 (D.D.C. 2006) (citing *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994)).  Although Hall states that "[t]he circumstances suggest that in <u>Hall I</u> the CIA deliberately misled [Hall] and the Court regarding the amount of search fees allegedly incurred," he has provided no evidence for his contention that the CIA engaged in "misbehavior" other than citation to another case in which the CIA made misrepresentations to a judicial officer regarding a FOIA request.  Pl. Hall's Cross-Mot. for Summ. J. at 18.  The Court cannot infer from the record before it that the Agency has acted in bad faith here and therefore denies the discovery request.

**E. *In Camera* Inspection**

Hall and AIM have also asked that the Court conduct *in camera* review of a sampling of documents.  Although district courts may, at their discretion, examine agency records *in camera*, "*in camera* review should not be resorted to as a matter of course." *Quiñon*, 86 F.3d at 1228 (citing *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978)).  Circumstances that suggest *in*

*camera* review is particularly appropriate include that "the number of withheld documents" is

manageably small, "the agency affidavits are insufficiently detailed to permit meaningful review

of exemption claims," and the record contains "evidence of bad faith on the part of the Agency."

*Id.* (citations omitted).  There are over 125 documents at issue here.  Although the Agency's

declaration and *Vaughn* index are in many ways insufficient, the Court expects that the CIA's

supplemental filings will correct the deficiencies described in this opinion.  And despite Hall's

unsupported assertion to the contrary, there is no evidence of bad faith on the part of the CIA

before the Court.  The Court therefore declines to exercise its discretion to review records *in*

*camera* at this time.

## IV. CONCLUSION

For the foregoing reasons, it is this 12th day of November 2009 hereby

**ORDERED** that the CIA's motion for partial summary judgment [#109] is **GRANTED**

in part and **DENIED** in part; and it is further

**ORDERED** that Hall's motion [#117] and AIM's motion [#114] are **GRANTED** in part

and **DENIED** in part; and it is further

**ORDERED** that by no later than December 4, 2009, the parties shall submit a joint

proposed case management plan and briefing schedule to govern the future proceedings in this

case; and it is further

**ORDERED** that if the parties are unable to agree on a proposed case management plan

and briefing schedule each party shall submit its own proposed plan and schedule by December

4, 2009.

Henry H. Kennedy, Jr.
United States District Judge