**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **ROGER HALL, et al.,** |
| **Plaintiffs,** |
| **v.** |
| **CENTRAL INTELLIGENCE AGENCY,** |
| **Defendant.** |

**Civil Case No. 04-00814 (RCL)**

## MEMORANDUM OPINION

Plaintiffs Roger Hall ("Hall"), Studies Solutions Results, Inc., and Accuracy in Media ("AIM") filed this action against defendant Central Intelligence Agency ("CIA" or "Agency") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*., seeking records concerning prisoners of war or soldiers missing in action from the Vietnam War era.  Before the Court is the CIA's motion for summary judgment and plaintiffs' cross-motion for summary judgment, as well as plaintiffs' request for discovery and *in camera* review.  Upon consideration of Judge Kennedy's November 12, 2009 Memorandum Opinion and Order [137]; CIA's Supplemental Response pursuant to the Court's 2009 Memorandum Opinion and Order [148]; AIM [163] and Hall's [166] responses to defendant's supplemental response to the Court's 2009 Order; CIA's reply to plaintiffs' responses to CIA's supplemental response [169]; CIA's supplemental items 4 and 5 response to the Court's November 12, 2009 Memorandum Opinion and Order [177]; AIM's Response to CIA's supplemental responses to the Court's memorandum Opinion and Order [181]; Memorandum of points and authorities in support of plaintiffs'

supplemental memorandum regarding this Courts November 12, 2009 Order and in opposition to defendant's supplemental items 4 and 5 response to Court's November 12, 2009 Order [182]; defendant's response in support of its May 15, 2012, filing and in opposition to plaintiffs' requests for discovery and *in camera* review [184]; the applicable law; and the entire record of this case; the Court will GRANT IN PART and DENY IN PART the CIA's Motion for summary judgment; GRANT IN PART and DENY IN PART plaintiffs' Cross-Motion for summary judgment, and DENY plaintiffs' Motions for *in camera* review and discovery.  The Court will explain its reasoning in the analysis below.

## I.  PROCEDURAL HISTORY

In February 2003, Hall made a FOIA request to the CIA on behalf of himself and AIM, seeking assorted records pertaining to POW/MIAs from the Vietnam War era.  Hall Compl. ¶ 6. Having received no substantive response, Hall and AIM filed this action in May, 2004.  *Hall v. CIA*, 668 F. Supp. 2d 172, 176 (D.D.C. 2009).  The procedural history of this case, leading up to November 12, 2009, is told comprehensively in Judge Kennedy's 2009 Order.  *Id*. at 175–78. Though the 2009 Order narrowed the case issues, and though the CIA has since released "several thousand pages of records," many issues remain.  Hall's Resp. [166] at 1.

Judge Kennedy's 2009 Order held that the CIA must complete the following to be awarded summary judgment: (1) provide plaintiffs with all non-exempt records created by the CIA which were provided to the Senate Select Committee, *id*. at 179–80; (2) search for the approximately 1,700 names in the Item 5 request and turn over all non-exempt documents, or explain why it cannot complete the search without additional biographical information, *id*. at 180–81; (3) search its system for responsive documents relating to searches recently conducted for other federal agencies, as requested in Item 7, or explain to the Court why it cannot do so, *id*.

at 181; (4) take affirmative steps to ensure that its referrals and coordination documents are being processed by the other agencies, *id*. at 182; (5) provide supplemental declarations describing its search methods, including terms, databases, and other relevant information that will allow the Court to evaluate whether the searches were adequate, *id*. at 184; (6) either search other divisions for the requested records, in relation to Item 6, or explain to the Court why those divisions are unlikely to have responsive documents, *id*. at 186; (7) submit an adequate *Vaughn* index for the withholdings it disclosed in November 2005; *id*. at 187, (8) show an exemption for the withheld documents claimed under exception 1 that are under 25 years old, *id*. at 188–89; (9) provide further detail to the Court regarding the documents withheld under exception 2, or provide the documents to Hall, *id*. at 190; (10) provide Hall with the seven[1] June 2004 documents claimed exempt by the CIA under deliberative process, or provide the Court with more details on the reasons for non-disclosure, *id*. at 192; (11) disclose records withheld pursuant to the attorney-client privilege, or indicate why withholding is proper as to each document for which it relies on the privilege; *id*., (12) disclose the information withheld under exception 6, or provide the Court with more detail on why the exception applies; *id*. at 193; and (13) specify in detail which portions of the documents are disclosable and which are allegedly exempt in regard to the segregability of withheld documents, *id* at 194.

## II.  STATUTORY FRAMEWORK

Under FOIA, federal government agencies are required to release records to the public upon request.  5 U.S.C. § 552(a).  FOIA defines "record" as "any information that would be an agency record subject to the requirements of [FOIA] when maintained by an agency in any format, including an electronic format," including information "that is maintained for an agency

---

[1] The documents are numbers 1100665, 1100667, 1100668, 1100669, 1100670, 1100671, and 1479603.  *Hall*, 668 F. Supp. 2d at 191 n.18, 19.  The CIA was granted summary judgment on all other deliberative process claims.  *Id*. at 192.

by an entity under Government contract, for the purposes of records management." 5 U.S.C. § 552(f)(2). A FOIA requester may appeal an agency's failure to disclose requested records. 5 U.S.C. § 552(a)(6). The requester may bring suit in federal court if the request for appeal is denied. 5 U.S.C. § 552(a)(6)(C)(i). A district court has jurisdiction to order the production of any records that have been improperly denied to the requester. 5 U.S.C. § 552(a)(4)(B).

### III.  LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and all reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). In order to defeat summary judgment, a factual dispute must be capable of affecting the substantive outcome of the case and be supported by sufficient admissible evidence that a reasonable trier of fact could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

An agency may be entitled to summary judgment in a FOIA case if it demonstrates that no material facts are in dispute, it has conducted an adequate search for responsive records, and each responsive record that it has located has either been produced to the plaintiff or is exempt from disclosure. *See Weisberg v. DOJ*, 705 F.2d 365, 368 (D.C. Cir. 1980). To meet its burden, a defendant may rely on reasonably detailed and non-conclusory declarations. *See McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983).

In a FOIA case, the court determines *de novo* whether an agency properly withheld information under a claimed exemption. *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d

242, 251 (D.C. Cir. 1977).  "The underlying facts are viewed in the light most favorable to the

[FOIA] requester," *Weisberg*, 705 F.2d at 1350, and the exemptions must be narrowly construed.

*FBI v. Abramson*, 456 U.S. 615, 630 (1982).  However, courts generally defer to agency

expertise in national security matters.  *See, e.g., Taylor v. Dep't of the Army*, 684 F.2d 99, 109

(D.C. Cir. 1982) (according "utmost deference" to classification affidavits); *Krikorian v. Dep't of

State*, 984 F.2d 461, 464–65 (D.C. Cir. 1993) (acknowledging "unique insights" of executive

agencies responsible for national defense and foreign relations).  While the agency must not

withhold information in bad faith, *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir.

1981), the affidavits submitted by the agency to demonstrate the adequacy of its response are

presumed to be in good faith.  *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir.

1981).

## IV.  ANALYSIS

### A.  CIA's Refusal to Respond to Certain Portions of Plaintiffs' Requests

#### i.  Item 5

Hall's Item 5 request[2] asked the CIA to provide responsive documents on 1,711 names,

each of whom is an alleged Vietnam War Era POW/MIA.  Hall's Resp. [166] at 4.  The names

come from "an official [Primary Next-of-Kin] list drawn up by the Department of Defense."  *Id.*

at 3.  In the 2009 Order, Judge Kennedy held that the CIA must conduct the search for the 1,711

names and release the non-exempt records to the plaintiffs, or explain to the court why the CIA

would be unable to distinguish responsive records from the search.  *Hall*, 668 F. Supp. 2d at

179–80.  The CIA did not originally identify legal authority for denying the Item 5 search

---

[2] Hall seeks "[r]ecords relating to [forty-four] individuals who allegedly are Vietnam era POW/MIAs, and whose next-of-kin have provided privacy waivers to Roger Hall . . . and those persons who are on the Prisoner of War/Missing Personnel Office's list of persons whose primary next-of-kin (PNOK) have authorized the release of information concerning them."  February 2003 Letter at 2.

request, *Id*. at 180, but now claims that a search for all 1,711 names without additional identifying information would be unduly burdensome.  CIA's Reply [169] at 5–7.

In 2010, the CIA agreed to search the CIA Automatic Declassification and Release Environment ("CADRE") system for 31[3] of the 1,711 names, as the 31 names came with additional identifying information to aid in responsiveness determinations.  CIA's Supp. Resp. [148] at 13–15.  Still at issue in regard to the Item 5 request is (1) whether the CIA must search for all 1,711 names provided by Hall; (2) in which systems the CIA must search for those names; and (3) whether the CIA properly redacted and withheld Item 5 documents under FOIA exemptions.  Issues 1 and 2 are addressed here, while issue 3 will be addressed with the other exemption claims later in this Opinion.

## 1.  Burdensomeness of the Search

The CIA claims that its CADRE system and archived records are the two systems "most likely[4]" to contain records responsive to plaintiffs' Item 5 FOIA request.  Cole Decl. ¶ 71.  However, the CIA claims that searching the CADRE system for anything other than the 34 names that it has been given "identifying information" for would be an "unreasonable burden."  *Id*. ¶ 75.  The CIA also argues that searching its archived records for any names–even those names for which it has been supplied additional identifying information–would be unduly burdensome.  *Id*. ¶ 73.  This Court disagrees, and therefore denies the CIA's motion for summary judgment, and grants plaintiffs' motion for summary judgment in regard to the Item 5 systems search.

---

[3] Since the 2009 Order, Hall has provided additional information for three of the names–Matthes, Fanning, and Scharf–all of which the CIA has agreed to search the CADRE system for, though the CIA claims it does this absent a legal obligation.  Supp. Culver Decl. ¶ 51.  Plaintiffs refer to a "Mathes", while the CIA refers to a "Matthes," neither acknowledging a spelling error by the other side.  *Id*., Hall's Memo. of Pts and Auth. [182] at 3.  Therefore, the Court is unsure which is the correct spelling.
[4] The issue of the CIA searching only those systems "most likely" to contain Item 5 responsive documents will be addressed in section IV(B)(4) of this Opinion.

### a. CADRE System Search

CADRE stores information processed for the CIA's information release programs. *Id*. at 75. A search conducted in CADRE for the 1,711 names provided by plaintiffs identified almost 140,000 potentially responsive documents. *Id*. The CIA claims it would be unduly burdensome to make responsiveness determinations based on "name alone," and therefore only agreed to process the search results for 31 of the 1,711 names.[5] *Id*. The Court finds the CIA's argument unpersuasive.

First, as argued by plaintiffs, the CIA is not asked to determine responsiveness on name alone–if the record is regarding an individual as a POW or MIA, it is responsive. AIM's Resp. [163] at 3. Therefore, the CIA's argument that "it is extremely difficult or impossible to determine responsiveness based on name alone" carries little weight. Cole Decl. ¶ 69. Also, the CIA does not state that responsiveness would be impossible for all documents, just that it may be impossible to determine for *some* documents. That would mean that some responsive records, perhaps even a vast majority, could be determined to be responsive. The CIA offers no estimates of the percentage of documents for which responsiveness would be "impossible."

Second, as plaintiffs mention, the CIA gives no estimate of how long it would take to review the 140,000 folders. Hall's Resp. [166] at 7. The CIA has remained silent on the issue of estimating the man-hours involved, even after plaintiffs raised the issue. This Court will not find a search unduly burdensome on conclusory statements alone. Therefore, the CIA must search its CADRE system for all 1,711 names, and produce all responsive non-exempt documents to plaintiffs.

### b. Archived Records Search

---

[5] Thirty-one names included information such as birthdate and/or social security numbers. Hall later supplied additional information for 3 more names, which the CIA agreed to search for, bringing the total to 34.

The CIA's archived records are available only in hard copy and are searchable only by an electronic index. Cole Decl. ¶ 71–72. A search of this electronic index found that 16,423 hard-copy file folders in the archived records might contain responsive Item 5 records. *Id.* ¶ 73. The CIA argues that "[t]o continue the search and process the results for the 1,711 names in the CIA's archived records would be unduly burdensome." *Id.* However, this Court cannot find sufficient justification from the CIA to preclude the search.

The only support the CIA can conjure for its burdensome argument is that "CIA personnel would have to pull the relevant boxes, unseal the boxes, locate the correct file folders identified by the electronic index, then manually review all of the documents in each folder merely to determine whether each archived document would be responsive to plaintiffs' request." *Id* ¶ 74. Or to put it another way, someone would have to grab a box, open it, grasp the identified file folder, and look at it. Despite the CIA's detailed tutorial on how to get a file out of a box, again it fails to provide the Court with an estimate of how many man-hours are necessary to fulfill the search.[6] The Court will not find a search unduly burdensome simply because of the level of description shown and the number of steps used to describe looking into a box. Therefore, the Court denies summary judgment to the CIA in regard to the adequacy of its Item 5 search, and grants summary judgment to plaintiffs' in regard to the Item 5 systems search.

## 2. Item 7

Plaintiffs' Item 7 requested "[a]ll records on or pertaining to any search conducted regarding any other requests for records pertaining to Vietnam War POW/MIAs, including any search for such records conducted in response to any request by any congressional committee or

---

[6] In support of the search being unduly burdensome, the CIA cites a D.C. Circuit Court case, affirming that a search requiring a dozen people working full-time for over a year to be unduly burdensome. CIA's Reply [169] at 6 (citing *Int'l Counsel Bureau v. Dep't of Defense*, 723 F. Supp. 2d 54, 59 (D.D.C. 2010)).The CIA has offered no such estimates here for the Court.

executive branch agency."  Pl.s' Compl. [1] at 4.  The 2009 Order found that "based on the parties' representations, the Court will treat item 7 as excluding records of searches performed in response to previous FOIA requests."  *Hall,* 668 F. Supp. 2d at 181.  The Court stated that it could not grant summary judgment until the CIA performed the Item 7 search or explained to the Court why such a search was not possible.  *Id.*

The CIA searched its CADRE system for documents requested by other federal agencies that concerned POW/MIAs.  Nelson Decl. ¶ 39.  The CIA searched for "EB case type" files, as that was "the only part of the CADRE database likely to contain any information concerning search requests from other federal agencies . . . ."  *Id.*  The search, which used numerous manifestations of POW and MIA terms, returned no responsive documents.  *Id.* ¶ 40.

Plaintiffs argue that the CIA "misinterpreted the Court's Order," in regard to Item 7, and that the search was inadequate because it did not search for records produced "in response to any request by any congressional committee" as was originally requested.  AIM Response at 7–8. The CIA argues that this issue was raised by AIM for the first time in the April 18, 2011 response, and that AIM has thus waived that issue.  CIA's Reply [169] at 10.  This Court disagrees.

There seems to be some confusion as to what plaintiffs' Item 7 request entails.  In the plaintiffs' FOIA request and Complaint, plaintiffs requested "All records on or pertaining to any search . . . for records pertaining to Vietnam War POW/MIAs, including . . . in response to any request *by any congressional committee* . . . ."  AIM FOIA Request [114-1] at 2; plaintiffs' Complaint [1] at 4 (emphasis added).  But, the Nelson Declaration states: "In Item 7, plaintiffs initially requested 'all records pertaining to any search ever conducted by the Agency, at any time and for any reason, for records concerning Vietnam War POW/MIAs.'"  Nelson Decl. ¶ 35

(citing *Hall,* 668 F. Supp. 2d at 181).  This language differs from the complaint and original

FOIA request language cited above, which also asked for the congressional committee requests.

The CIA appears to have used the language from the 2009 Order–which appears to misquote

Hall's 2003 letter request concerning Item 7–to excuse them from the full extent of plaintiffs'

FOIA request.  The CIA then argues the issue was brought up for the first time in AIM's

response, even though it was in the FOIA request and the Complaint.

The CIA has made no claims that it is unable to conduct the search in question.

Therefore, summary judgment cannot be granted until it searches for all records on or pertaining

to any search conducted regarding any congressional committee requests pertaining to Vietnam

War POW/MIAs, in all systems likely to contain responsive documents, and provides plaintiffs

with all non-exempt records and photographs.  Therefore, the CIA's motion for summary

judgment in regard to Item 7 is denied, and the plaintiffs' cross-motion for summary judgment as

to the Item 7 congressional committee request search is granted.

### 3.  Referral/Coordination Documents

Referral documents are documents "that originated from a third agency."  Nelson Decl. at

13 n.9.  When this is the case, "[t]he agency . . . refers the document to the originating agency for

a direct response to the requester."  *Id*.  Coordination documents involve CIA-originated

materials that contain "information, the disclosure of which, would affect the interests or

activities of another federal agency."  *Id*.  When this is the case, "[t]he Agency . . . contacts the

third-party agency in order to obtain guidance on whether to release or withhold the information"

and the CIA responds to the FOIA requestor directly.

An agency "must take responsibility for processing the [FOIA] request" even if the

documents originated elsewhere.  *McGehee*, 697 F.2d at 1110.  Referrals are appropriate, but a

referral system constitutes withholding "if its net effect is significantly to impair the requester's ability to obtain the records or significantly to increase the amount of time he must wait to obtain them." *Id*. The withholding is "'improper' unless the agency can offer a reasonable explanation for its procedure." *Id*.

### a.   Item 3

Plaintiffs requested the Item 3 records in February 2003. *Hall,* 668 F. Supp. 2d at 182. "The CIA released the results of the search it conducted in response to that request in September 2007." *Id*. The search found responsive documents "that originated from a third agency" which were referred to "unnamed agencies" for review. At the time of the 2009 Order, plaintiffs had not yet received those documents. *Hall,* 668 F. Supp. 2d at 182. The Court held that "the CIA is responsible for responding to [the Item 3] request and that it must take affirmative steps to ensure that its referrals are being processed, which it should describe in its supplemental filing." *Id*.

The CIA updated the Court on the referral process in its August 23, 2010 Supplemental Response. CIA's Supp. Resp. [148] at 17–20. The CIA stated that Item 3 referral documents concerned 6 different agencies, and each agency was sent a May 24, 2010, registered letter requesting that the originating agencies process the referral documents and respond to plaintiffs as soon as possible. *Id*. at 18–19. The CIA followed up with those agencies in June and July of 2010, and as of August 23, 2010, the CIA claimed that "[p]laintiffs have received final responses from all six originating agencies to which the CIA sent referral documents." *Id*. Plaintiffs have not disputed that all Item 3 referral documents have been received, so the Court finds that, here, the CIA has met its burden.

The CIA also had 13 coordination documents responsive to Item 3, concerning 11 agencies. *Id*. "[O]n August 3, 2010, two coordination documents were released to plaintiffs in

full and eleven were [released in part]." *Id.* The withheld information invoked exemptions 1, 3, and 6, with supporting declarations from the coordinating agencies. *Id.* at 20. The appropriateness of the exemption claims will be discussed in the exemption portion of this Opinion, but it is found here that the Agency fulfilled its burden as to the coordination of these documents, and therefore, the CIA is granted summary judgment in regard to the following coordination documents.

### b.  Item 4

Of the 1,452 Item 4 responsive documents, the CIA claims that 167 contained information that required coordination with other agencies. Culver Supp. Decl. ¶ 7. Of the 167 coordination documents, two have been released in whole, and 165 released in part. *Id.* The CIA released the Item 4 coordination documents to plaintiffs by letter on November 30, 2011. *Id.* Again, the appropriateness of the exemption claims here will be discussed in the exemption portion of this Opinion, but it is found here that the Agency fulfilled its burden as to the coordination of these documents.

### c.  Item 5

The CIA states that on January 21, 2011, nineteen Item 5 CIA-originated documents were sent to appropriate agencies[7], while non-CIA-originated documents were referred for direct response to plaintiffs. Cole Supp. Decl. ¶ 5. The CIA released the nineteen Item 5 coordination documents, in part, to plaintiffs by letter on November 30, 2011. Culver Supp. Decl. ¶ 7. The appropriateness of the exemption claims here will be discussed in the exemption portion of this opinion.

---

[7] These agencies are the Defense Intelligence Agency ("DIA"), the National Security Council ("NSC"), National Security Agency ("NSA"), Department of Defense ("DOD"), and Department of State ("DOS")." Cole Supp. Decl. ¶ 5.

Of the Item 5 referral documents, 48 originated with DOD, three with NSA, and 20 with DIA. *Id*. ¶ 54. The CIA sent each agency a notice of the referral documents on January 21, 2011. *Id*. "In September 2011, the CIA followed up with the DoD and NSA about the Item 5 referral documents." *Id*. On September 27, 2011, the NSA stated that it hoped to have review complete by the end of the month. *Id*. ¶ 55. On November 29, 2011, DOD stated that it anticipated finalizing the DOD and DIA documents "within the next 20–30 days." *Id*. Hall and AIM appear to have received these documents because they have not stated otherwise, therefore the Court assumes they have received these Item 5 referral documents. However, there is still a remaining Item 5 referral issue.

The CIA conducted a supplemental Item 5 search for "Capt. Peter Richard Mathes," finding seven responsive documents, all originating with other agencies. Culver Supp. Decl. ¶ 52. On September 21, 2011, "the CIA sent the originating agencies a notice of the referral documents that need to be processed." *Id*. Hall claims he has still not heard anything from these "unnamed agencies." Hall's Mem. and Pts and Auth. [182] at 4. The CIA responds that "[i]f these agencies have failed to provide a timely response to plaintiff, it is up to plaintiffs to take whatever action they deem appropriate directly with those agencies." CIA's Resp. [184] at 5–6. The CIA goes on to state that it "has fulfilled its obligation and has no power or control over the actions of another federal agency." *Id*. at 6. Here, the CIA's response is not only baffling, but the failure to produce the documents amounts to an improper withholding.

The CIA apparently chooses to ignore Judge Kennedy's 2009 Order, where it was made clear that an agency "'must take responsibility for processing the [FOIA] request' even if the documents originated elsewhere." *Hall,* 668 F. Supp. 2d at 182 (citing *McGehee*, 697 F.2d at 1110). For the CIA to then tell this Court that "[i]f these agencies have failed to provide a timely

response to plaintiff, it is up to plaintiffs to take whatever action they deem appropriate directly

with those agencies," may explain why this case has limped along for so many years.  CIA's

Resp. [184] at 5–6.  Judge Kennedy's Order even cited a case where an agency that took 11

months to produce referral documents was found to have "ignored its responsibilities under

FOIA."  *Hall,* 668 F. Supp. 2d at 182 (quoting *Keys v. U.S. Dep't of Homeland Sec.*, 570 F. Supp.

2d 59, 70 (D.D.C. 2008)).

It has been over 10 months since the CIA sent the referral letter, and the CIA has offered

no evidence that it has followed up with the "unnamed agencies" in regard to the referral

documents.  Because the CIA is responsible for responsive records, even when those records

originated with other agencies, this Court holds that the CIA must take immediate affirmative

steps to be sure that each referral is being processed, which it shall describe in its supplemental

filing.

## B.  The Adequacy of the CIA's Search

Review of the adequacy of an agency's search for records responsive to a FOIA request

is based on "principles of reasonableness."  *Weisberg*, 745 F.2d at 1485.  An agency is required

"to make a good faith effort to conduct a search for the requested records, using methods which

can reasonably be expected to produce the information requested."  *Int'l Trade Overseas, Inc. v.*

*Agency for Int'l Dev.*, 688 F. Supp. 33, 36 (D.D.C 1988) (quoting *Marrera v. U.S. Dep't of*

*Justice*, 622 F. Supp. 51, 54 (D.D.C 1985)).  The Court may rely on "[a] reasonably detailed

affidavit, setting forth the search terms and the type of search performed, and averring that all

files likely to contain responsive materials (if such records exist) were searched."  *Valencia-*

*Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir 1999) (quoting *Oglesby*, 920 F.2d at

68).  An agency is not required to search all of its records systems if searches of particular

systems "are unlikely to produce any marginal return." *Campbell v. U.S. Dep't of Justice*, 164
F.3d 20, 28 (D.C. Cir. 1998) (citing *Oglesby*, 920 F.2d at 68).

### 1.  Item 3

Plaintiff's Item 3 seeks records

> prepared by and/or assembled by the CIA between January 1, 1960 and December
> 31, 2002, relating to the status of any United States POWs or MIAs in Laos,
> including but not limited to any reports, memoranda, letters, notes or other
> documents prepared by Mr. Horgan or any other officer, agent or employee of the
> CIA for the Joint Chiefs of Staff, the President, or any federal agency.

February 7, 2003 Letter [5-1] at 2.

The CIA provided responsive Item 3 documents on September 28, 2007,[8] but Judge Kennedy
held that the CIA did not provide enough information on the search to grant summary judgment,
stating that "[t]he CIA must provide a supplemental declaration describing its search method,
including search terms, databases searched, and other relevant information that will allow the
Court to evaluate whether the Agency's search was adequate." *Hall,* 668 F. Supp. 2d at 184.
National Clandestine Files ("NCS") were not searched, because "all NCS records likely to be
responsive to plaintiffs' FOIA request would be located in CIA operational files . . . ."  Nelson
Decl. at 4 n.6.  The CIA filed the Nelson Declaration in August 2010, which detailed who
conducted the Item 3 search, the databases searched, and the search terms used.  *Id.* ¶ 5–26.
Plaintiffs' argue that the Item 3 search was inadequate because the CIA only searched those
systems "most likely" to contain responsive documents.  Hall's Resp. [166] at 4 n.2.  This Court
disagrees.

Plaintiffs are correct that an adequate FOIA search involves searching all record systems
"likely to produce responsive documents." *Oglesby* 920 F.2d at 68.  Plaintiffs also correctly
observe that the CIA states that the Item 3 search of the DIR offices was done in the systems

---

[8]CIA's Supp. Resp. [148] at 22–28.

"*most* likely" to contain responsive records.  Nelson Decl. ¶ 9 (emphasis added).  A search of the systems "most likely" to contain responsive documents does not satisfy FOIA, because systems that are not the "most likely" to contain documents may still be *likely* to contain responsive documents.  However, the CIA also states that the offices that were searched[9] "were the only offices within the DIR likely to contain information responsive to Item 3 of Plaintiffs' request."  *Id*.  This statement meets the test, and it does not contradict the previous assertion.  Searching all systems likely to contain responsive documents would also be a search of the systems "most likely" to contain responsive documents.  Because the CIA submitted declarations explaining in reasonable detail the scope and method of the agency's search,[10] and explained in adequate detail that all systems likely to contain responsive records were searched, this Court finds the CIA's Item 3 search to be adequate.  Therefore, the Court grants summary judgment to the CIA in regard to the adequacy of its Item 3 search, and denies summary judgment to plaintiffs.

## 2.  Item 4

In the 2009 Order, the Court held that the CIA must turn over all copies of non-exempt CIA created records included with the Senate Select Committee documents on POW/MIA Affairs that were withdrawn from the National Archives.  *Hall*, 668 F. Supp. 2d at 179–80.  The Agency has since stated that it possesses 1,452 CIA-originated documents responsive to the plaintiff's Item 4 request.  CIA's Supp. Resp. [148] at 2.  On August 20, 2010, the CIA provided plaintiffs with 44 of the documents in full, 970 in part, and 271 were withheld in full.  *Id*.  Documents were withheld under FOIA exceptions 1, 3, and 6.  *Id*. 3–12.  The agency also found

---

[9] The Nelson Declaration states that the CIA searched the Directors Action Center, National Intelligence Counsel, Office of the Inspector General, Office of General Counsel, and the Office of Congressional Affairs.  Nelson Decl. ¶ 9.

[10] Judge Kennedy's Order asked for information about the search, specifically asking that the CIA explain "whether it used both 'prisoner of war' and 'prisoners of War' as search terms."  *Hall*, 668 F. Supp. 2d at 184 n.9.  The Order also asked whether the search was case sensitive.  *Id*.  The CIA has stated that searches would have "captured records responsive to singular and plural versions of these search terms."  Nelson Decl. ¶ 10.  The CIA also stated that the searches were not case sensitive.  *Id*.

that 167 documents contained information that affected third-party federal agencies, and that the CIA was working with those agencies to determine what releases would be appropriate. *Id*. at 2–3. Hall claims that the CIA improperly redacted and withheld Item 4 documents, Hall's Resp. [166] at 19–26, that the Item 4 search was inadequate because subsequent searches were not conducted using terms found in released Item 4 documents, *id*. at 8–16,[11] that referral documents have not been provided, *id*. at 16–17, and that not all Item 4 documents were identified, *id*. at 19. The adequacy of identification claims of Item 4 documents will be discussed here, while the exemption claims, use of additional search terms, and referral documents, will be discussed below in those relevant sections.

Hall argues that, though the CIA identified 1,472 documents responsive to Item 4, "1,766 documents had been forwarded to the Library of Congress and 574 documents had been denied in their entirety." Hall's Resp. [166] at 19. Hall cites a November 9, 1993, letter from CIA Director R. James Woolsey to the President for this information. *Id*. The CIA counters this by stating that the letter refers to a document review effort "pursuant to Executive Order 12812, an effort entirely distinct from the CIA's review of the" Item 4 documents, thus making it "irrelevant of Plaintiffs' FOIA request." CIA's Reply [169] at 4. The Court finds the CIA's explanation credible, and plaintiffs have not responded to the CIA's argument. Therefore, the Court holds that the CIA has properly identified all relevant Item 4 documents and grants summary judgment to the CIA in regard to the adequacy of its Item 4 search, and denies summary judgment to plaintiffs.

### 3. Item 5

---

[11] Hall does not specify that he is referring to Item 4 documents here, but just as the CIA states in its reply, the Court also "presumes that these [inadequate search] references relate to Item 4 . . . ." CIA's Reply [169] at 2 n.1. This is because of Hall's reference to the CIA's recent release of thousands of pages of records, and the CIA produced the vast majority of Item 4 records in August 2010. *Id*.

For a search to be adequate, an agency must search all record systems "likely to produce responsive documents." *Oglesby* 920 F.2d at 68. The CIA states that "[i]n conducting a search for records on 1,711 individuals to be responsive to Item 5, the Agency's Information Review Officers determined that there are two records systems *most likely* to contain information responsive to Plaintiffs' Item 5 FOIA request: the CIA's archived records . . . and the electronic CIA Automatic Declassification and Release Environment (a.k.a. CADRE)." Cole Decl. ¶ 71. (emphasis added). Again, only searching the databases "most likely" to contain responsive documents does not satisfy FOIA, as it may preclude record systems that are less likely than others to contain responsive documents, yet may still likely contain them.

The CIA argues in a reply that in regard to Item 5 it "did not limit its search to exclude any additional databases likely to contain responsive information." CIA's Reply [169] at 9–10. The CIA also states that it "made a good-faith effort to search all records systems reasonably expected to produce the information requested." *Id*. at 10. However, these statements were lacking from the agency-supplied declarations. "To show reasonableness at the summary judgment phase, an agency must set forth sufficient information in its affidavits for a court to determine if the search was adequate." *Nation Magazine, Washington Bureau v. United States Customs Service*, 71 F.3d 885, 890 (D.C. Cir. 1995). Because the CIA's affidavits stated that the CIA searched the systems "most likely" to contain responsive documents, the Court concludes that the CIA has only searched systems "most likely" to contain responsive documents, and did not search all systems "likely to produce responsive documents." Therefore, the Court denies the defendant's motion for summary judgment in respect to Item 5, grants summary judgment to plaintiffs, and holds that the CIA must search for all 1,711 names in all systems that are likely to produce responsive documents.

4.  Item 6

Plaintiffs' Item 6 requests "records pertaining to searches the CIA performed in response to Hall's 1994 and 1998 FOIA requests as well as to fee assessments connected to those searches." *Hall,* 668 F. Supp. 2d at 185.  The CIA had searched only one record system for documents, which plaintiffs challenged as inadequate.  *Id.* at 185–86, AIM's Resp. [163] at 8. Judge Kennedy held that the Court was unable to grant summary judgment on Item 6 because the Koch Declaration did not state whether other systems were also likely to contain responsive documents.  *Id.* at 186.

This Court finds that the CIA's Item 6 search satisfies FOIA.  The Agency provided this Court with a detailed affidavit concerning the Item 6 search.  Nelson Decl. ¶ 32–34.  The Agency searched for the documents using Hall's name and case numbers, searched all systems likely to contain responsive records, named the supervisor of the search, and provided the Court with an explanation as to why other systems would only contain duplicate responsive records.  *Id.* ¶ 34. AIM states that the CIA's Item 6 search remains inadequate, but puts forth no evidence or supporting legal argument.  AIM's Resp. [163] at 8–9.  Because the CIA's search methods could reasonably be expected to produce the information requested, and because plaintiffs offer no evidence or legal argument to suggest otherwise, the CIA's item 6 search is found to be adequate.  Thus, in regard to the item 6 search, the CIA is granted summary judgment, and summary judgment is denied to plaintiffs.

5.  Item 8

Plaintiffs' Item 8 requests "[a]ll records of whatever nature pertaining to the estimates of fees made in response to the February 7, 2003 Freedom of Information Act request of Mr. Roger Hall and Studies Solutions Research, Inc., and how each estimate was made."  AIM's FOIA

request [114-1] at 2.  AIM, again, claims that the Item 8 search was inadequate, without offering

evidence or a legal argument.  AIM's Resp. [163] at 8–9.  Judge Kennedy previously ruled that

plaintiffs had conceded the adequacy of the Item 8 search, and entered judgment in favor the

CIA as to the adequacy of the search for item 8 records, rendering AIM's argument against the

adequacy of the Item 8 search moot.  *Hall*, 668 F. Supp. 2d at 186.

### 6.   Use of Additional Search Terms

Hall claims that the CIA's search for responsive documents has been inadequate because

"obvious search terms" were not used.  Hall's Resp. [166] at 9.  Hall wants a further search of

CIA records using search terms or activities found in previously released documents from this

action. *Id*. at 8–14.  Hall argues that the use of additional search words "could help pinpoint the

location of records that are very much at the center of Hall's quest for responsive records."  *Id*. at

9.  The CIA argues that "agencies are generally not obligated to 'look beyond the four corners of

the request for leads to the location of responsive documents.'"  CIA's Resp. [169] at 2 (citing

*Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996)).

The standard for an adequate search is whether it was "reasonably calculated to uncover

all relevant documents."  *Weisberg,* 705 F.2d at 1351.  The question is whether the search itself

was adequate, notwithstanding whether other responsive documents may exist.  *Steinberg v.

United States Dep't of Justice,* 23 F.3d 548, 551 (D.C. Cir. 1994).

Hall argues that the CIA search is inadequate because it does not employ the terms

"LPW[12]," "Walking Kilo[13]," "Walking K," "circle search[14]," and "stay behind status[15]," all of

which were terms found in documents released through this litigation.  Hall's Resp. [166] at 9–

---

[12] Hall states that "'LPW' appears to stand for 'Laotian Prisoner of War.'"  Hall's Resp. [166] at 9.
[13] Hall claims that "Walking K" and "Walking Kilo" are terms that "refer to a symbol used to signal the presence of POWs."  *Id*. at 9.
[14] "Circle Search" is a term found in document C00479111.  *Id*.
[15] "Stay behind status" is a term found in document C00493325.  *Id* at 10.

10.  However, Hall only cites to a single released document containing each new search term. *Id*.  Hall also fails to explain why these specific terms are necessary to uncover responsive documents, simply stating in regard to "LPW": "[t]his is a significant search term which the CIA did not employ."  *Id*. at 9.  With "several thousand pages of records"[16] released by the CIA, a showing that each newly suggested search term existed in a single document is not enough to find the CIA's search inadequate without further explanation as to why these terms in particular would uncover responsive documents that the previous search did not.  Because this Court finds that the original CIA search terms were 'reasonably calculated to uncover all relevant documents," a further search with these new terms in not required under FOIA.

### 7.  Missing Documents

Hall claims that the CIA's search for responsive documents has been inadequate because released records reference other documents–or activities that may have created additional documents–that have not been released or otherwise identified.  Hall's Resp. [166] at 8.  Hall cites records that reference specific attachments that are missing,[17] records that detail activity that Hall claims would have created documents not produced,[18] and documents that "indicate[] the intention to create additional documents . . ." which were not produced.[19]

Failure to locate specific documents does not render the agency's search inadequate or demonstrate that the search was conducted in bad faith.  *See Twist v. Gonzales*, 171 F. Appx. 855, 855 (D.C. Cir. 2005).  The inquiry is "whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *SafeCard*, 926 F.2d at 1201.  Courts measure reasonableness by examining the method of the

---

[16] *Id*. at 1.
[17] Hall's Resp. [166] at 10.
[18] *Id*. at 12.
[19] *Id*. at 11.

search, not by determining whether additional responsive documents might potentially exist.

*Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health and Human Servs.*, 844 F.Supp. 770, 777

n.4 (D.D.C. 1993) (citing *Meeropol v. Meese*, 790 F. 2d 942, 952–53 (D.C. Cir. 1986)).  Here,

some of Hall's arguments about additional responsive documents are valid, while others lack the

support necessary to move beyond pure speculation.

 a.  Missing Records, Photographs, and Attachments Specifically Mentioned in Released
Documents

Where specific records, photographs, or attachments are referenced in CIA documents, it

is no longer "mere speculation" that the files exist.  Here, the CIA has provided plaintiffs with

documents that reference other specific responsive records that have not been produced.  Hall's

Resp. [166] at 10–14.  The CIA argues that plaintiffs "must provide support for the proposition

that [the records] are maintained in the agency's database or that agency controls them." CIA's

Resp. [184] at 3, citing *Accuracy in Media, Inc. v. Nat'l Transp. Safety Bd.*, No. 03–00024, 2006

WL 826070, at *8 (D.D.C. Mar. 29, 2006).  The fact that the CIA maintained and controlled the

documents that reference the other documents, many of them attachments, provides support for

the proposition that the CIA maintains and controls those missing records.  Therefore, the CIA

must show that it has conducted a reasonable good-faith search for the missing attachments,

enclosures, photographs, and reports mentioned in documents C00482286, C00465737,

C00482286, C00492378, C00492397, C00492546, C00478688, C00492526, C00471978,

C00478651, C00492461, C00492546, C00472096 and C00483710, and provide plaintiffs with

all non-exempt records.

For the search to be adequate, the CIA must provide a declaration that shows the Court

that such a reasonable good-faith search was attempted to locate these missing records.  Though

the CIA's search will not be found inadequate if it is unable to find these attachments, it cannot

demonstrate beyond material doubt that its search was "reasonably calculated to uncover all relevant documents" until those missing responsive documents are searched for.

### b.  Records Detailing Events that May Have Produced Additional Records That Are Missing

Hall also argues that records detailing activity that may have created additional documents were not produced,[20] and documents that "indicate[] the intention to create additional documents . . ." were not produced.[21]   For example, document C00482214 refers to the need to "positively confirm[] the existence of POWs with [redacted], a list of names, and the exact location."   Hall argues "[t]his indicates the intention to create additional documents regarding these requirements. Hall's Resp. [166] at 11.   Here, Hall's argument fails because the existence of the "missing" records is too speculative.

The information provided in these documents–concerning activities that may produce additional documents or the intention to create additional documents–does not rise above "speculation" as to the existence of additional records.   There is no indication that any of these records were actually created, only that there may have been an intention at one point to create documents that would have been responsive to plaintiffs' request.   Therefore, the CIA is not required to conduct additional searches concerning records C00465439, C00472095, C00482214, C00493228, C00479111, C00479111, C00493325, C00478741, and C00480204.

### C. Exemption Claims

#### 1.  Exemption 1

Judge Kennedy's 2009 Order found that the CIA met its burden on the exemption 1 claims for records less than 25 years old, but found that the CIA must further justify the withholding of exemption 1 records that were more than 25 years old.   *Hall*, 668 F. Supp. 2d at

---

[20] Hall's Resp. [166] at 12.
[21] *Id*. at 11.

189.  Since the Order, the CIA has claimed additional withholdings under exemption 1, in regard to responsive documents released after that Order.  Plaintiffs argue that exemption 1 withholdings by the CIA, DOD, and NSA are improper.  Hall's Memo. of Pts. and Auth.  [182] at 18.

Exemption 1 protects matters that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1).  Pursuant to Executive Order 13526,[22] 75 Fed. Reg. 707 (Dec. 29, 2009), information may be classified only if all of the following conditions are met:

(1) an original classification authority is classifying the information;
(2) the information is owned by, produced by or for, or is under the control of the United States Government;
(3) the information falls within one of more of the categories of information listed in section 1.4 of this order; and
(4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

Id. § 1.1(a).  The phrase "damage to the national security" means "harm to the national defense or foreign relations of the United States from the unauthorized disclosure of information, taking into consideration such aspects of the information as the sensitivity, value, utility, and provenance of that information."  Id. § 6.1(l).  Information may be classified either at the "top secret," "secret," or "confidential" level, Id. § 1.2(a), and such classified information must fall within one of the following categories:

---

[22] Hall cites Executive Order 13256.  He appears to have transposed the "2" and the "5", as this executive order concerns "President's Board of Advisors on Historically Black Colleges and Universities." 67 Fed. Reg. 6823 (Feb. 12, 2002).

(a)  military plans, weapons systems, or operations;
(b)  foreign government information;
(c)  intelligence activities (including covert action), intelligence sources or methods, or cryptology;
(d)  foreign relations or foreign activities of the United States, including confidential sources;
(e)  scientific, technological, or economic matters relating to the national security;
(f)  United States Government programs for safeguarding nuclear materials or facilities;
(g)  vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security; or
(h)  the development, production, or use of weapons of mass destruction.

*Id.* § 1.4.

The agency bears the burden of establishing that documents are properly classified as secret and thus clearly exempt from disclosure.  *Founding Church of Scientology of Wash., D.C., Inc. v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979) (citing 5 U.S.C. § 552(a)(4)(B)).  However, in national security cases, "little proof or explanation is required beyond a plausible assertion that information is properly classified."  *Morley*, 508 F.3d at 1124.  For the reasons discussed below, the Court holds that the CIA has met its burden for all exemption 1 withholdings.

The CIA argues that it is the original classification authority, Cole Decl. ¶¶ 15, 57–60, that the withheld information is government information, *Id.* ¶¶ 16, 57, that it falls within § 1.4, *Id.* ¶¶ 17, 57–60, and that the release of the information could be reasonably expected to damage the national security.  *Id.* ¶¶ 58.  The CIA claims the national security concerns exist because the documents could reveal confidential sources and expose CIA intelligence methods.  *Id.*  ¶ 59, ¶ 22–31.

Plaintiffs argue that "[t]he documents released to Hall do not contain the required classification markings of this or any predecessor Executive orders."  Hall's Resp. [166] at 28. Plaintiffs state that that there is only a "stamp which gives a crossed-out classification level, but there is no indication of who had the authority to place the stamp or when it was put on the

document." *Id.* Therefore, plaintiffs argue that the CIA must either restore any classification markings or the Court should find that the exemption 1 claims fail. *Id.* at 30. However, the CIA adequately explains the lack of classification markings on the documents–the documents in their redacted form are not classified–therefore the markings required by § 1.6(a) "are inapplicable to the documents released to Plaintiffs." CIA's Reply [169] at 16. Plaintiffs do not offer a counter to this argument, therefore the Court finds that the records are properly classified.

Plaintiffs also argue that the exemption 1 claims should fail because Cole's Declaration statements may be "based on information provided by others." *Id.* at 31. This argument fails, because a declarant in a FOIA case satisfies the personal knowledge requirement if he or she "attest[s] to the personal knowledge of the procedures used in handling [a FOIA] request and his familiarity with the documents in question." *Madison Mech., Inc. v. Nat'l Aeronautics and Space Admin.,* No. 99–2854, 2003 WL 1477014, 2003 U.S. Dist. LEXIS 4110 at *17 (D.D.C. Mar. 20, 2003) (quoting *Spannaus v. DOJ,* 813 F.2d 1285, 1289 (4th Cir.1987)). Therefore, Cole's account that: "I make the following statements based upon my personal knowledge and information made available to me in my official capacity" as the Information Review Officer meets the test for the level of personal knowledge necessary for a FOIA declaration. Cole Decl. ¶ 1–4.

Plaintiffs' argument of the "speculative"[23] nature of the national security concern and the fact that the region is no longer "the subject of armed conflict or terrorism against the United States" also fails. Hall's Memo. of Pts and Auth. [182] at 18. Cole states that the withheld information concerns human intelligence sources, the disclosure of which, even if they are no longer living or not given by name, and in an area free from conflict, jeopardizes future cooperation with the CIA and would reveal methods still in use by the CIA today. Cole Decl.

---

[23]Hall's Resp. [166] at 36.

¶ 22–31.  There will always be a certain level of speculation when assessing the dangers of releasing such information, but this circuit has held that, so long as the agency affidavit contains "reasonable specificity" and "information logically falls within claimed exemption," then the "court should not conduct a more detailed inquiry to test the agency's judgment." *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009).  The Cole Declaration contains the necessary level of specificity required in exemption 1 claims, as specific documents are referenced, and the reasons for information withholding cited.  Therefore, the Court grants summary judgment to the CIA in respect to the current exemption 1 withholdings.

Lastly, records over 25 years old that have permanent historical value are automatically unclassified.  Exec. Order No. 12958 § 3.3(a), 60 Fed. Reg. at 19832.  However, this does not apply to information that "could be expected to: reveal the identity of a confidential human source, or a human intelligence source, or reveal information about the application of an intelligence source or method. *Id*. § 3.4(b)(1), 60 Fed. Reg. at 19832.  The CIA, in adequate detail, has demonstrated that the withheld exemption 1 information would expose sources and reveal intelligence methods.  Cole Decl. ¶ 40, 60.  This Court finds that the CIA's exemption 1 declarations contain reasonable specificity and the withholdings logically fall within the exemption.  Therefore, this court grants summary judgment to the CIA in regard to its exemption 1 withholdings and deny summary judgment to plaintiffs.

## 2.  Exemption 2

Judge Kennedy's 2009 Order denied summary judgment to the CIA in regard to the exemption 2 documents.  *Hall,* 668 F. Supp. 2d at 190.  The Order stated that the CIA must submit a supplemental filing to the Court with further detail as to its exemption 2 claim, or disclose to plaintiffs the information previously withheld under that exemption.  *Id.*  However,

"the CIA asserted exemption (b)(3) for all the redactions where it also asserted 'low b(2)'" and

Judge Kennedy granted summary judgment to the CIA's exemption 3 withholdings.  CIA's

Reply [169] at 18; *Hall*, 668 F. Supp. 2d at 190.  Therefore, the CIA correctly states that this

issue is moot.  *Id*. at 18.

### 3.  Exemption 3

The CIA was granted summary judgment on its exemption 3 claims in the 2009 Order

because plaintiffs did not respond to the CIA's exemption 3 argument.  *Hall,* 668 F. Supp. 2d at

190.  However, the CIA has withheld additional information and records under exemption 3, in

reference to Item 4 and 5 responsive records, following the 2009 Order.  Cole Decl. ¶ 34.  This

Court finds that the CIA has met the burden of supporting its new exemption 3 withholdings and

therefore grants the CIA summary judgment on exemption 3.

Exemption 3 covers records that are

> specifically exempted from disclosure by statute . . ., provided that such statute
> (A) requires that the matters be withheld from the public in such a manner as to
> leave no discretion on the issue, or (B) establishes particular criteria for
> withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3).  For a statute to fall under exemption 3, the disclosure prohibition must at

least "explicitly deal with public disclosure."  *Reporters Comm. for Freedom of the Press v.*

*DOJ*, 816 F.2d 730, 734 (D.C. Cir.), *modified on other grounds*, 831 F.2d 1124 (D.C. Cir. 1987),

*rev'd on other grounds*, 489 U.S. 749 (1989).  An agency invoking exemption 3 must submit

affidavits that provide "the kind of detailed, scrupulous description [of the withheld documents]

that enables a District Court judge to perform a de novo review."  *Church of Scientology of Cal.,*

*Inc. v. Turner*, 662 F.2d 784, 786 (D.C. Cir. 1980).  The affidavits need not contain factual

descriptions the public disclosure of which would endanger the agency's mission, *Vaughn v.*

*Rosen*, 484 F.2d 820, 826–27 (D.C. Cir. 1973), but neither can they be vague or conclusory. *Church of Scientology*, 662 F.2d at 787.

Here, information is withheld under the National Security Act, 50 U.S.C. § 403, *et seq.*, the Central Intelligence Agency Act of 1949, 50 U.S.C. § 403g, Section 102A(i)(1) of the Intelligence Reform and Terrorism Prevention Act of 2004, 50 U.S.C. § 403-1(i)(1), and 18 U.S.C. § 798, to justify withholdings under exemption 3. Cole Decl. ¶¶ 42–46, 61; Janosek Decl. ¶ 26. Plaintiffs challenge the exemption 3 withholdings in four ways.

First, Hall argues that 50 U.S.C. § 403g doesn't apply to "deceased [CIA] officers and employees and those who have been publicly identified as such." Hall's Resp. [166] at 37 n.5. Because Hall concedes that 403g is an exemption 3 statute,[24] the only question is whether "the withheld material falls within the statute." *Larson*, 565 F.3d 857 (D.C. Cir. 2009) (citing *Fitzgibbon v. C.I.A.*, 911 F.2d 755, 761–62 (D.C. Cir. 1990)). The CIA argues that it does, because it exempts disclosure of information concerning "the organization, functions, *names*, official titles, salaries or numbers of personnel, *employed by the CIA*." CIA's Reply [169] at 17 (citing 50 U.S.C. § 403g) (emphasis added). Because deceased former employees still fall within the plain language of 403(g) as having been "employed" by the CIA, this Court agrees. Therefore, the Court holds that the CIA has properly supported its 403(g) withholdings under exemption 3.

Plaintiffs also argue that "the CIA has presented insufficient evidence of the need to protect the sources and methods at issue and that there is an unacceptable risk of their disclosure." Hall's Resp. [166] at 38. As explained above, the Court found the CIA's justification for the item 1 exemptions to be adequate, and as stated by plaintiffs, "[t]he CIA invokes exemption 3 in tandem with exemption 1 for virtually every document at issue." *Id.* at 37. For the same reasons

---

[24]Hall's Resp. [166] at 37 n.5.

as stated above concerning the withholding of intelligence sources names and methods under

exemption 1, the Court finds that the CIA adequately justified the need to protect the sources and

methods in the redacted documents under exemption 3.

Plaintiffs also argue that the Department of Defense inappropriately invoked exemption 3

in relation to 10 U.S.C. § 150b, because the statute is "clearly discretionary" and therefore not an

exemption 3 statute.  Hall's Memo. of Pts and Auth. [182] at 20.  However, the Court finds that

10 U.S.C. § 150b is an exemption 3 statute, because it "(B) establishes particular criteria for

withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).

Section 150b states that the information may "be withheld from disclosure to the public . . ."

when it concerns "any member of the armed forces assigned to . . . a routinely deployable unit."

10 U.S.C. § 150b.  Therefore, § 150b "establishes particular criteria for withholding," and thus is

an exemption 3 statute.

In the alternative, plaintiffs argue that even if the statute satisfies exemption 3, the DOD

fails to show any of the redacted names "are currently serving with the Armed Forces or

employees of the DOD."  Hall's Memo. of Pts and Auth. [182] at 20.  As discussed above, once

a statute is determined to fall within exemption 3, the only question is whether "the withheld

material falls within the statute."  *Larson*, 565 F.3d 857 (D.C. Cir. 2009) citing *Fitzgibbon*, 911

F.2d at 761–62.  Here, while granting "substantial weight and due consideration" to the agency

affidavit, the Court finds that it does.  *Fitzgibbon*, 911 F.2d at 762.  The Tisdale Declaration

states that the only information withheld from Document C00495778 under 10 U.S.C. § 150b are

the "names of individuals assigned to routinely deployable units."  Tisdale Decl. ¶ 5c.  Because

the statute satisfies exemption 3, and because the withheld material falls within the statute, the

Court holds that the 10 U.S.C. § 150b redactions were proper.

Plaintiffs also argue that the DOD inappropriately invoked exemption 3 with 50 U.S.C. § 435, which resulted in the redaction of names from 29 documents.  Memo. of Pts and Auth. [182] at 20.  DOD claims the redacted names in those documents were missing the necessary written consent required under 50 U.S.C. § 435.  Tisdale Decl. ¶ 5B.  Plaintiffs argue that the DOD was required to consult the PNOK list to determine whether consent was given, and there is no evidence that the DOD did this before redacting the names.  Hall's Memo. of Pts and Auth. [182] at 21.  In its response, the CIA did not counter Hall's concerns regarding whether DOD bothered to consult the provided PNOK list; it simply regurgitated the information from the Tisdale Declaration.  CIA's Resp. [184] at 15.

The Court finds the statute falls under exemption 3 because it "establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).  The statute requires primary next of kin to give written consent to the release of information concerning their treatment, location, or condition.  50 U.S.C. § 435.  However, because it is unclear whether the DOD consulted the PNOK list, a genuine issue of material fact exists regarding the redaction of names withheld under 50 U.S.C. § 435, and the Court cannot grant summary judgment.  Therefore, the 29 documents listed under ¶ 5B of the Tisdale Declaration must be released without the POW/MIA names redacted, or a declaration must be submitted to the Court specifying that the withheld names are not on the PNOK list.

### 5.  Exemption 5

Exemption 5 protects "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency" from disclosure.  5 U.S.C. § 552(b)(5).  "[T]he parameters of exemption 5 are determined by reference to the protections available to litigants in civil discovery; if material is not 'available' in

discovery, it may be withheld from FOIA requesters." *Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 516 (D.C. Cir. 1996); *see also NLRB. v. Sears, Roebuck & Co.*, 421 U.S. 132, 148 (1975).

a. Deliberative Process Privilege

The deliberative process privilege "shields only government 'materials which are both predecisional and deliberative.'" *Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997) (quoting *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) (en banc)). To show that a document is predicisional, the agency need not identify a specific final agency decision; it is sufficient to establish "what deliberative process is involved, and the role played by the documents at issue in the course of that process." *Heggestad v. DOJ*, 182 F. Supp. 2d 1, 7 (D.D.C. 2000) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980)). A document is "deliberative" if it "makes recommendations or expresses opinions on legal or policy matters." *Vaughn*, 484 F.2d at 1143–44. The deliberative process privilege is intended to "prevent injury to the quality of agency decisions." *Sears, Robuck & Co.*, 421 U.S. at 151.

In the 2009 Order, summary judgment was granted to the CIA on its deliberative process claims, excluding documents 1100665, 1100667, 1100668, 1100669, 1100670, 1100671, 1479603.[25] For these documents, Judge Kennedy held that the CIA must disclose these documents or include in its supplemental filing details that "illuminate the contents of the documents and the reasons for non-disclosure." *Hall*, 668 F. Supp. 2d at 191 (quoting *Defenders of Wildlife v. U.S. Dep't of Agric.*, 311 F. Supp. 2d 44, 60 (D.D.C. 2004)). For the reasons given

---

[25] One document contains "emails and internal memos dated in June of 2004 from individuals in various CIA directorates and offices," while five are "memorand[a] . . . addressed to various CIA directorates from CIA's FOIA office and pertain to fee estimates for preliminary searches conducted in response to Roger Hall's FOIA request." 2008 *Vaughn* Index, Part 4, at 22–23.

below, the Court finds that the CIA has fulfilled its burden under the deliberative process privilege of exemption 5 for these documents.

The Agency states that it withheld information from documents C00465476 and C00520816 under the deliberative process privilege.  CIA's Supp. Resp. [148] at 34, Cole Decl. ¶ 88–89.  The CIA states that the communications were between the Agency's executive Secretariat on behalf of the Director of Central Intelligence and other Agency officers, and consisted of predecisional deliberations.  Cole Decl. ¶ 89–90.  Plaintiffs have not responded with a legal argument, nor have they disputed the CIA's factual assertions.  Therefore, the Court grants summary judgment to the CIA in regard to the deliberative process withholdings from these two documents.

The CIA states that six[26] of the documents containing exemption 5 redactions "consist[] of internal emails, memoranda, and handwritten notes by Agency officers regarding the calculation of fee estimates for processing Plaintiffs' 2003 FOIA request."  Cole Decl. ¶ 103. The Agency states that the communications were between the "Agency's PPID and various directorate information-release officers" concerning "the legal and policy issues involved in processing Plaintiffs' FOIA request, including recommendations as to the systems of records to be searched, estimates of the amounts of time required for conducting searches, and opinions regarding appropriate search methods and likely search costs."  *Id*.  The Agency claims that no policy recommendations from these documents were ever adopted.  *Id*.  Plaintiffs did not respond with a legal argument, nor did they challenge the CIA's factual assertions.  Because the CIA has adequately explained to the Court that the redacted information was "pre-decisional," that the information concerned recommendations and opinions on legal and policy matters, and that the recommendations were never adopted, the court grants the CIA summary judgment in regard to

---

[26] 1383976, 1383977, 1383978, 1383979, 1383980, and 1383983.

the exemption 5 withholdings for these six documents.

The final deliberative process document withholding concerns document 1479603, "which is a memorandum from the head of the office that processes FOIA requests to one of his superiors, describes the FOIA request at issue as one involving a very large number of documents, and contains Agency officers' opinions about the policy issues raised by processing such a large request." Cole Decl. ¶ 104. Of particular note is that the document is over thirty years old.[27] As noted by Judge Kennedy, the age of a document is a factor to be weighed for a deliberative process withholding, but it is not determinative. *Hall,* 668 F. Supp. 2d at 191 (citing *Lardner v. U.S.* Dep't of Justice, 2005 WL 758267, at *13 (D.D.C. 2005)). Here, the CIA has supplemented the record adequately to show the Court that the withheld information concerns deliberations, and not the results of deliberations, as the documents show no evidence that the policy recommendations were ever adopted. Cole Decl. ¶ 104. Plaintiffs did not respond with a credible legal argument, nor did they challenge the factual assertions of the CIA. Therefore, the Court grants summary judgment to the CIA in regard to the deliberative process withholdings from document 1479603, and denies summary judgment to plaintiffs.

b. Attorney-Client Privilege

Judge Kennedy's 2009 Order denied summary judgment to plaintiffs in regard to the invocation of attorney-client privilege withholdings. *Hall,* 668 F. Supp. 2d at 192. Summary judgment was denied because the CIA did not provide adequate information about the responsibilities of the officers who were the other parties in the withheld communications with CIA attorneys, and therefore the Court could not "determine whether the officers are individuals who, by virtue of their authority to represent the Agency, are entitled in their communications with attorneys to the protections of the attorney-client privilege." *Id.* This information was

---

[27] The date of the document is June 4, 1981.

necessary, because "[w]here the client is an organization, the [attorney-client] privilege extends to those communications between attorneys and all agents or employees of the organization who are authorized to act or speak for the organization in relation to the subject matter of the communication." *Mead Data Cent., Inc.*, 566 F.2d at 253 n.24 (citations omitted).  For the reasons stated below, the Court finds that the CIA has supplemented the record with the necessary information about the withheld communications.

Eleven documents "contain communications between CIA attorneys and information release professionals concerning the assessment of fees for Plaintiff Hall's 1998 FOIA request."[28]  Cole Decl. ¶ 108.  Seven documents concerned communications between these same parties, but in relation to searches conducted for Hall's 1998 FOIA request.[29]  *Id.*  A single document is described as a "memorandum from a CIA information release professional to CIA attorneys regarding how Hall's 1994 FOIA request was processed."  *Id.*  Six documents[30] "contain discussions between CIA information release professionals and attorneys concerning litigation with Hall over his FOIA requests."  *Id.*  The final document[31] "is a memorandum for a CIA information release professional from a CIA attorney concerning the identification of documents responsive to Hall's 1998 FOIA request."  *Id.*

The CIA claims that all documents were "prepared with the joint expectation that they would be held in confidence" and the information was only shared with those who needed it "perform their official duties."  *Id.* ¶ 109.  The CIA further provides that "all individuals who received the communications at issue were authorized to make, implement, or oversee decisions, or to provide information, concerning the matters discussed in the communications."  *Id.*

---

[28] Documents 1370083,1370539, 1370544, 1371726, 1371727, 1371732, 1371734, 1371736, 1383981, 1383983, and 1383985.
[29] Documents 1370085, 1370089, 1370540, 1370544, 1371724, 1371726, and 1371733.
[30] Documents 1370086, 1370544, 1371725, 1371726, 1371729, and 1383986.
[31] Document 1370081.

Plaintiffs have not responded to the CIA's argument, either with legal arguments or to challenge the CIA's factual assertions. Therefore, the Court finds that the CIA's supplemental declaration has satisfied the requirements for all information withheld under the attorney-client provision of exemption 5, grants the CIA summary judgment for these withholdings, and denies summary judgment to plaintiffs.

c.  Attorney Work Product Privilege

In Judge Kennedy's 2009 Order, he granted summary judgment to the CIA on all withholdings under attorney work product privilege. *Hall,* 668 F. Supp. 2d at 193. To the Court's knowledge, the CIA has not withheld any new information under attorney work product privilege.

6. Exemption 6

Exemption 6 allows an agency to withhold from disclosure "personnel and medical files and similar files" if its disclosure would constitute a clearly unwarranted invasion of personal privacy. The phrase "similar files" is interpreted broadly and exempts all information that "applies to a particular individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599–603 (1982). However, information about federal employees generally does not qualify for protection. *See Arieff v. Dep't of the Navy*, 712 F.2d 1462, 1467–68 (D.C. Cir. 1983) (declining to protect information about a large group of individuals); *Aguirre v. SEC*, 551 F. Supp. 2d 33, 54 (D.D.C. 2008) ("Correspondence does not become personal solely because it identifies government employees."). While "similar files" is construed broadly, it must not become devoid of meaning altogether.

There must be some personal information that relates to a particular individual for exemption 6 protection to be warranted. Typical personal information protected under

exemption 6 includes "place of birth, date of birth, date of marriage, employment history, and comparable data." *See Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989). In examining an exemption 6 withholding, the court must balance the privacy interest at stake against the public's interest in disclosure. *Fund for Constitutional Gov't*, 656 F.2d at 862. "Under exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere in the Act." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002).

Judge Kennedy's 2009 Order denied summary judgment to the CIA in regard to its exemption 6 withholdings because the CIA did not provide adequate justification. *Hall,* 668 F. Supp. 2d at 193. Since the 2009 Order, the CIA has withheld additional information under exemption 6. The withholdings now involve records responsive to Item 3, 4, 6, and 8. For the reasons discussed below, the Court grants summary judgment to the CIA in regard to some exemption 6 claims, but denies summary judgment for others.

The CIA redacted information concerning the names and home addresses of CIA officers from Item 4 documents. Cole Decl. ¶ 49. The CIA argues this was necessary to protect individuals and their families, some of whom were undercover. *Id.* ¶ 50. The CIA also used this same justification for a single Item 3 document.[32] For classified agents, the CIA redacted the information under exemptions 1 and 3, as well as exemption 6. *Id.* ¶ 48 n.26. As discussed in the exemption 1 analysis, the CIA employees' names were correctly redacted under exemption 1 and the Court has granted summary judgment to those redactions, rendering the exemption 6 withholding to these names moot.

Hall first challenges the exemption 6 withholdings of three specific documents: C00942526, C00472096, and C00465780. Hall's Resp. [166] at 43–44. The first document,

---

[32] C01352210

C00942526, is "a letter to the Chief Counsel of the Senate Select Committee from the CIA's

Deputy Director for Senate Affairs, whose name is redacted, as are the names of a couple of Air

America pilots whose plane crashed in March 1977." 2011 Hall Decl. ¶ 40, Att. 44. Hall claims

that all redacted names were "involved in government operations" and that there is "great public

interest" in their identities. Hall's Resp. [166] at 43. Hall next challenges the redaction of the

name of a photographer of crash sites from document C00472096. Id. Hall argues that

photographers are usually interested in having their names attached to their work, and that the

fact that the name is in a government document shows how the government functions. *Id*. at 44.

Finally, Hall challenges the redaction of 58 names of POWs in a CIA intelligence Information

Report, listed as document C00465780. Hall argues that the public interest is high because the

names of POWs are "commonly publicized in newspapers" and that the privacy interest is low

because the government contends that there are no living Vietnam Era POWs, and that death

"greatly diminishes any privacy invasion." *Id*.

Hall also challenges the withholdings of the DOD and NSA under exemption 6, which he

calls "purely conclusory in their exemption 6 analysis" and that the agencies "assume it is

sufficient that names might be disclosed" which "leads to extreme results," including the

withholding of certain photographs cited by Hall. Hall's Memo. of Pts and Auth. [182] at 23.

In reply to Hall's specific challenges, the CIA reiterates its position that the withholdings

were proper because they consisted of names of individuals, and that the CIA concluded that

there was "a significant privacy interest in the information withheld in these documents which

overrides any public interest in the information." CIA's Reply [169] at 19. The CIA also claims

that some withheld exemption 6 information contains not only names, but date of birth, place of

birth, social security number, blood type, place of residence, names of family members or

religious affiliation.  Supp. Culver Decl. ¶ 47.  Not including the names of the individuals themselves, the Court finds that the privacy interest in the remaining information is high, and the public interest low.  Therefore, all exemption 6 withholdings concerning date of birth, place of birth, social security number, blood type, place of residence, names of family members, or religious affiliation, is properly withheld, and the Court grants summary judgment to the CIA as to these withholdings.

However, the Court holds that the CIA has not overcome the heavy "presumption in favor of disclosure" found in exemption 6 in regard to the names themselves.  *Nat'l Ass'n of Home Builders,* 309 F.3d at 32.  Though the CIA is correct that the superfluous information such as blood type has a very low public interest, the names of these individuals themselves appear to be the subject of substantial public interest.[33]  As argued by Hall, there is an especially low level of privacy interest in the case of deceased individuals.[34]  The CIA has failed to respond to this argument, either by explaining that no deceased individual's names have been withheld, or by explaining why the privacy interest still exists for those deceased, some supposedly for several decades.  Therefore, in regard to the names–not including the names of CIA employees, which were granted summary judgment under exemption 3–of individuals themselves, and withheld photographs, the Court denies summary judgment to the CIA for the exemption 6 claims and grants summary judgment to plaintiffs.

## 7.  Segregability

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5

---

[33] Hall cites the Vietnam Veterans Memorial in Washington D.C., as well as the media attention paid to Vietnam POW/MIAs. Hall's Memo. of Pts and Auth. [182] at 23.

[34] "[D]eath clearly matters, as the deceased by definition cannot personally suffer the privacy-related injuries that may plague the living."  *Campbell*, 164 F.3d at 33.  However, a court must "account for the fact that certain reputational interests and family-related privacy expectations survive death."  *Id.*

U.S.C. § 552(b).  Reasonably segregable portions of withheld documents must be disclosed unless they are "inextricably intertwined with exempt portions."  *Mead Data Cent.*, 566 F.2d at 260.  "FOIA places the burden of justifying nondisclosure on the agency seeking to withhold information."  *Id.*  The reasoning behind unsegregability must be detailed, not conclusory statements.  *Id.* at 261.  Though, "agencies should not be forced to provide such a detailed justification that would itself compromise the secret nature of potentially exempt information. *Id.*

Judge Kennedy's 2009 Order held that the CIA's declarations and *Vaughn* indexes lacked the necessary specificity in regard to segregability.  *Hall*, 668 F. Supp. 2d at 194.  The Order held that the CIA's supplemental filings must specify in detail the portions that are disclosable and which are exempt, making specific findings for each document withheld and correlating claimed exemptions with specific passages.  *Id.*  Because the CIA has adequately demonstrated with reasonable specificity that no withheld documents contain reasonably segregable factual information, both in the records released before the 2009 Order and after, the Court holds that the CIA has met the segregability requirements under FOIA.

The CIA responded to the 2009 Order specifically in regard to Item 4 segregable information, claiming that all reasonably segregable information had been released.  CIA's Supp. Resp. [148] at 12, Cole Decl. ¶ 66–67.  Hall responds that that there is evidence that segregability has not been satisfied, because, while citing specific documents, he shows that many documents appear to have redactions without exemption claims, various large documents have been withheld in full, and some redactions appear to be made inconsistently.  CIA's Resp. [166] at 19–26.

The CIA counters that proper segregation of Item 4 documents is evidenced by the large number of documents released in part (970), and the "few" that were withheld in full (271). CIA's Reply [169] at 14.  Unlike the CIA, the Court sees 271 documents withheld in full to be a substantial number.  However, the CIA has included–both in relation to the Item 4 withholdings as well as other responsive documents withholdings–detailed information concerning the withholdings in corresponding *Vaughn* indexes.

For example, document number C00579939 is a two page document withheld in full by the CIA.[35]  The CIA provides the subject of the document, the exemptions claimed, and a document description:

> This document is a 2-page cable providing a compilation of information on a
> foreign government.  The entire document is derived from a sensitive CIA source
> of intelligence, refers to specific foreign government entities, and includes
> personal identifying information including a name, title and date/place of birth.
> The document also includes CIA typed and handwritten analysis of the
> information, CIA control markings and other CIA organizational data including
> routing details, CIA dissemination information and information about a private
> individual. It is currently and properly classified as SECRET.

ECF No. 154 Ex. C 1–4, at 111.  The Court finds this description to contain specific findings in sufficient detail to meet the segregability requirements under FOIA.  Because the CIA's *Vaughn* indexes pertaining to other CIA withholdings contain similar detail, the Court holds that the CIA has met its burden of providing sufficient reasoning and detail in its Vaughn indexes to satisfy FOIA's segregability requirements.  Therefore, the CIA is granted summary judgment in regard to segregability, and summary judgment for plaintiffs is denied.

## D.  Discovery

Hall's previous request for discovery was denied by Judge Kennedy in his 2009 Order. *Hall*, 668 F. Supp. 2d at 196.  Hall argued that discovery was necessary to show that the CIA

---

[35] The *Vaughn* index for C00579939 is found in ECF No. 154 Ex. C 1–4, at 111.

possessed records that it had not provided him.  *Id.*  Judge Kennedy denied the request because Hall was unable to show that the CIA had acted in bad faith.  *Id.*  Plaintiffs again ask for discovery.  Hall's Resp. [166] at 45; Hall's Memo. of Pts and Auth. [182] at 8.

"Discovery is not favored in lawsuits under the FOIA.  Instead, when an agency's affidavits or declarations are deficient regarding the adequacy of its search . . . the courts generally will request that the agency supplement its supporting declarations."  *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 185 F. Supp. 2d 54, 65 (D.D.C. 2002) (citing *Nation Magazine, Wash. Bureau*, 71 F.3d at 892; Oglesby, 920 F.2d at 68).  Courts may permit discovery in FOIA cases where a "plaintiff has made a sufficient showing that the agency acted in bad faith."  *Voinche v. FBI*, 412 F. Supp. 2d 60, 71 (D.D.C. 2006) (citing *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994)).

Hall argues that discovery is necessary because "the adequacy of the search in this case is a disputed fact," and that "he cannot begin to present a full and complete record on this issue without being afforded an opportunity to take discovery."  Hall's Memo. of Pts and Auth. [182] at 8–9.  Hall also argues that discovery is necessary due to the classification of some documents, and because "several persons who have given [Hall] significant information about CIA operations and activities which would have generated records pertaining to POW/MIAs have refused to provide such information without what they regard as the protection of a court subpoena or unless they are called as witnesses at an evidentiary hearing."  Hall's Memo. of Pts and Auth. [182] at 10.  For the reasons discussed below, this Court denies plaintiffs' discovery request.

First, this Court does not find evidence of bad faith on the part of the CIA.  Plaintiffs argue that "the CIA's bad faith is manifest by its abuse of the FOIA's fee waiver provisions."

AIM's Resp. [181] at 10.   Plaintiffs cite to the fact that "the CIA's exorbitant fee estimates . . . changed over time." *Id*.  But just as noted by Judge Kennedy in the 2009 Order, plaintiffs have "provided no evidence for his contention that the CIA engaged in 'misbehavior' . . . ." *Id*. at 40.  Estimating the search fees–especially of such a broad search as that of the plaintiffs–is no doubt a difficult proposition, and a recalculation of those fees does not show that the previous estimate was intentionally inaccurate.[36]

Second, the argument plaintiffs put forward as cause for discovery–an inadequate search shown by missing documents–is premature.  As discussed above, the CIA has been ordered to search for all 1,711 names provided by plaintiffs, and to search both the CADRE system and the agency archives, as well as any other system likely to contain responsive records.  It is possible that the "missing" documents will be found in this new search.  Because plaintiffs have failed to show bad faith on the part of the CIA, and because the CIA has been ordered to carry out additional searches, this Court denies plaintiffs request for discovery at this time.

### E.  *In Camera* Inspection

FOIA gives district courts the discretion to examine the contents of requested agency records *in camera* "to determine whether such records or any part thereof shall be withheld." *See* 5 U.S.C. § 552(a)(4)(B).   "The decision whether to perform *in camera* inspection is left to the 'broad discretion of the trial court judge.'"  *Lam Lek Chong v. DEA*, 929 F.2d 729, 735 (D.C. Cir. 1991) (quoting *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 392 (D.C. Cir. 1987)). Agency affidavits are sufficient to justify summary judgment without *in camera* inspection when they meet the following standard:

---

[36]Not only have plaintiffs failed to show the previous "exorbitant" fee estimates were made in bad faith, there is no evidence that plaintiffs have been charged for the thousands of documents provided to them, either before the 2009 Order, or since.  *Hall*, 668 F. Supp. 2d at 38 n.26, 39 n.27.

> [T]he affidavits must show, with reasonable specificity, why the documents fall within the exemption.  The affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping.  If the affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents."

*Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1387 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937, (1980).  "[W]hen the agency meets its burden [under FOIA] by means of affidavits, *in camera* review is neither necessary nor appropriate."  *Weissman v. CIA*, 565 F.2d 692, 696–97 (D.C. Cir. 1977).  However, "*in camera* inspection may be particularly appropriate when either the agency affidavits are insufficiently detailed to permit meaningful review of exemption claims or there is evidence of bad faith on the part of the agency," when the number of withheld documents is relatively small, or "when the dispute turns on the contents of the withheld documents, and not the parties' interpretations of those documents."  *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996).

While FOIA provides the Court the option to conduct *in camera* review, 5 U.S.C. § 552(a)(4)(B), it by no means compels the exercise of that option.  *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978).  It is within the Court's "broad discretion" to decline to conduct *in camera* review where, as here, the Court believes that *in camera* inspection is unnecessary "to make a responsible de novo determination on the claims of exemption."  *Carter v. Dep't of Commerce*, 830 F.2d 388, 392 (D.C. Cir. 1987).

Judge Kennedy addressed Hall and AIM's previous request for *in camera* review of "a sampling" of documents in his 2009 Order.  *Hall* 668 F. Supp. 2d at 196.  He found no evidence of bad faith on the part of the CIA, and though there were insufficiencies in the CIA's *Vaughn*

indexes, the Court expected that the CIA's supplemental filings to correct the deficiencies.  *Id*. Therefore, the Court declined *in camera* review at that time.  *Id*.

Plaintiffs continue to ask for *in camera* review of an unspecified "small number of documents."[37]  Hall's Resp. [166] at 27.  Hall's argument in support of *in camera* review is based on "segregability issues" relating to documents released in part.  *Id*.  Plaintiffs have also claimed bad faith on the part of the CIA throughout their pleadings.  Though the argument does not appear to be made in direct support of *in camera* review, no evidence of bad faith on the part of the CIA has been shown by plaintiffs.[38]  For the reasons given below, this Court chooses not to review documents *in camera* at this time.

Hall argues that *in camera* review is appropriate here because "[m]any of the documents which have been released in part raise segregability issues."  *Id*.  He then cites two documents in support of this assertion.  *Id*.  The first had "several lines withheld following 'comment.'"  *Id*.  In the other, "a substantial passage under the heading 'Summary'" had been "deleted," even though the contents beneath the summary had been released in full.  *Id*. at 27–28.

In relation to the first document, Hall claims it is "unlikely that these passages do not include some information that cannot reasonably be expected to disclose protected sources and methods."  *Id*. at 27.  Hall does not assert that this is evidence of bad faith, he appears to simply imply that the redaction is improper, though he gives no explanation as to why.  The CIA did not directly address Hall's concerns over this document, instead resting on its record and previous

[37] Hall argues that "[a] relatively small [number] of documents selected by plaintiffs might enable to the Court to cut the heart of some of the major issues presented in a way that would greatly facilitate its resolution."  Hall's Resp. [166] at 27.

[38] AIM claims bad faith on the part of the CIA in reference to the Item 6 and 8 searches, claiming that information from those documents would "demonstrate the CIA's pattern and practice of abusing the FOIA's search fee provisions . . . ."  AIM's Resp. [163] at 9.  AIM argues that this "impugns the credibility of its affidavits" such that the CIA is not entitled to summary judgment.  AIM's Resp. [181] at 9–11.  The CIA has since waived the fees, which begs the question of how the previous fee estimates show bad faith on the part of the CIA.

submissions.   CIA's Reply [169] at 19.   This empty allegation by Hall, without more, is not enough to persuade this Court to grant *in camera* review.

With the second document, the CIA admitted that the summary was redacted in error, and provided plaintiffs with a copy of the record with the summary portion intact.  *Id*. at 21.   Though the CIA redacted the information in error, the Court finds that the treatment of this document does not persuade this Court to review documents *in camera*.   Once the issue of the redacted summary was brought to the attention of the CIA, it was corrected.  *Id*.   When thousands upon thousands of pages of records are involved, it is inevitable that some unnecessary redactions will be made.   Because the segregability issues cited by Hall are minor, and because plaintiffs have provided no evidence of bad faith on the part of the CIA, plaintiffs do not offer persuasive arguments as to the necessity of *in camera* review in this case.   Thus, the Court again declines to review records *in camera* at this time.

## V.  CONCLUSION

For the foregoing reasons, the Court will GRANT IN PART and DENY IN PART the CIA's Motion for summary judgment, and GRANT IN PART and DENY IN PART plaintiffs' Cross-Motion for summary judgment, and DENY plaintiffs' Motions for *in camera* review and discovery.

A separate order consistent with this Memorandum Opinion shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on August 3, 2012.