UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROGER HALL, <u>et al.</u>,                              :
                                                              :
      Plaintiffs,                            :
                                                              :
      v.                                           :   C. A. No. 04-0814 (RCL)
                                                              :
CENTRAL INTELLIGENCE                      :
    AGENCY,                                       :
                                                              :
      Defendant                             :

## PLAINTIFFS' MOTION FOR AN INTERIM <br> AWARD OF ATTORNEY'S FEES AND COSTS

Come now the plaintiffs, Roger Hall and Studies Solutions Results, Inc., and move this Court for an interim award of attorney fees and cost pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E). Memorandum of Points and Authorities, a proposed Order, and the affidavits of James H. Lesar, Carol Hrdlicka, and the Supplemental Rule 56(f) Declaration of Roger Hall are submitted in support of this motions.

Respectfully submitted,

2

James H. Lesar #11413
930 Wayne Avenue
Suite 1111
Silver Spring, MD 20910
Phone:  (301) 328-5920

Counsel for Plaintiffs Roger Hall
and SSRI, Inc.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROGER HALL, et al.,           :
                                           :
        Plaintiffs,        :
                                           :
        v.                 :   C. A. No. 04-0814 (RCL)
                                         :
CENTRAL INTELLIGENCE   :
    AGENCY,               :
                                         :
        Defendant      :

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR AN
<u>INTERIM AWARD OF ATTORNEY'S FEES AND COSTS</u>

<u>Preliminary Statement</u>

This is a Freedom of Information Act ("FOIA") case in which plaintiffs seek

records pertaining to missing Prisoners of War and persons Missing in Action

("POW/MIAs") in Southeast Asia.  The facts pertinent to this lengthy litigation

have previously been set forth in great detail, first in Part I (A)("Factual

Background")  of Judge Henry Kennedy's Memorandum Opinion and Order in

<u>Hall v. C.I.A</u>, 668 F.Supp.2d 172, 176-178 (D.D.C. 2009)("<u>Hall</u>  II"); secondly, in

the section on the procedural history of the case Judge Lamberth's Memorandum

Opinion in Hall v. C.I.A., 881 F.Supp. 38, 50-51 (D.D.C.2012).

Both of plaintiffs' counsel took this case on a contingency fee basis. They

believe that their clients are clearly entitled to reimbursement for the fees and

costs incurred in this litigation to date. Under D.C. Circuit precedent, an

interim award of fees is permissible in the circumstances presented by this

case.

# I. PLAINTIFFS ARE BOTH ELIGIBLE FOR AND ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND COSTS

## A. The FOIA Attorney Fee Provision

The FOIA's attorney fees provision was amended by The Open Government Act

of 2007. As amended, 5 U.S.C. § 552(a)(4)(E) provides in pertinent part:

> (i) The court may assess against the United States
> reasonable attorney fees and other litigation costs
> reasonably incurred in any case under this section
> in which the complainant has substantially prevailed.
>
> (ii) For purposes of this subparagraph, a complainant
> has substantially prevailed if the complainant has
> obtained relief through either—
>
> (I) a judicial order, or an enforceable written
> agreement or consent decree; or
>
> (II) a voluntary or unilateral change in position
> by the agency, if the complainant's claim is not insubstantial.

Under the attorney fees provision, a FOIA request must show both

that he is eligible for fees by having substantially prevailed and that he is

entitled to such fees.

B. <u>Plaintiffs have substantially prevailed</u>

In <u>Citizens for Responsibility and Ethics in Washington v. U.S.</u>

<u>Department of Justice</u> ("<u>CREW</u>"F), Civil Action No. 10-750 (JEB), this Court

noted that in <u>Davy v. C.I.A.</u> 456 F.3d 162 (D.C. Cir. 2006) ("<u>Davy I</u>"), the

Court of Appeals concluded that the plaintiff had substantially prevailed on

the basis of a joint stipulation and order because the order "changed the

'legal relationship between [the plaintiff] and the defendant'" and granted the

plaintiff "some relief on the merits of his claim." <u>CREW</u>, Oct. 26, 2011 Slip

Op. at 5, citing <u>Davy I</u> at 165 (quoting <u>Buckhannon Board and, Care Home</u>

<u>Inc. v. West Virginia Department of Health & Human Services</u>, 532 U.S.

598, 604 (2001) ("<u>Buckhannon</u>").

In this case, the orders issued by both Judge Henry Kennedy, Jr. and

Judge Royce C. Lamberth, reflect that plaintiffs have prevailed in multiple

ways on multiple occasions.

1. <u>Judge Kennedy's Order</u>

In predecessor to this action, Judge Paul Friedman held with regard to Item 4

of plaintiffs' request that "'[i]n preparing its supplemental declaration in this matter

the CIA should confirm that it has independently reviewed all documents of its own creation that were included with the Senate Select Committee documents.'" Hall v. C.I.A., 688 F.Supp.2d 172, 179 (D.D.C. 2009)("Hall II"), quoting Hall v. C.I.A., Civil Action No. 98-1319, slip op. at 14 n.4 (D.D.C. Aug. 10, 2000)("Hall I"). Judge Henry Kennedy found that the CIA "ultimately did not provide this confirmation, so dismissal as to this category is denied. The Agency must provide the confirmation Judge Friedman requested or turn over any non-exempt records to Hall and AIM. Id. at 179-180 (footnote omitted).

Item 5 of plaintiffs' request sought records pertaining to Vietnam era POW/MIAs (1) whose relatives had provided next-of-kin privacy waivers to Hall or (2) whose names were on a primary next-of-kin ("PNOK") list of just about 1,700 persons compiled by the Prisoner of War/Missing Personnel Office whose next-of-kin had had authorized release of information concerning them. The CIA claimed the request was "improper," arguing that the request pertaining to the PNOK list was too vague to process and that Hall and AIM did not provide the CIA with additional information it had demanded—the date of birth, place of birth and full name of each person. The Court found that "[t]he Agency has not alleged that it cannot discern what records Hall and AIM seek." Id. at 180. The Court noted the CIA's assertion that were it to search for the names, the search would turn up are not responsive to the request. In light of this, the Court found that "the

Agency has conceded that a search is possible.  And it has not explained why it could verify the identity of individuals by date and place of birth but not by for example, social security number." Id.  Absent such an explanation, the Court found that the CIA "must search for and disclose any non-exempt records which, based on the information Hall and AIM have provided and the details contained in the records themselves, it can verify pertain to an individual on plaintiffs' lists." Id. at 180-181.  No such explanation was provided, and as a result of the additional searches, Hall and AIM received a significant number of responsive records.

As to Item 7, the court held that it "cannot grant summary judgment to the CIA as to Hall and AIM's remaining item 7 request until it performs a search of that system for responsive documents or explains to the Court why it cannot do so." Id. at 181.

As a consequence of each of these holdings, the CIA subsequently produced numerous responsive records.

Regarding the CIA's search, the court denied "the CIA's request for summary judgment as to the adequacy of its search for additional item 3 records. The CIA must provide a supplemental declaration describing its search method, including search terms, databases searched, and other relevant information that will allow the Court to evaluate whether the Agency's search was adequate."  Id. at 184.  As to Item 6 records, the court

wrote that it "cannot conclude based on the information in the record that the CIA's search fulfilled these requirements as to item 6." Id. at 185.

As a result of these rulings on search issues, the relationship between the parties was legally changed and the CIA conducted further searches and released additional responsive records

Further, Judge Kennedy held that the defendant's Vaughn index was deficient as it related to its November 2005 withholdings, writing that "the CIA must submit a Vaughn index describing 'the documents and the justifications for nondisclosure with reasonably specific detail, [and] demonstrate[ing] that the information withheld logically falls within the claimed exemption,' Military Audit Project, 656 F.2d at 738, for the 102 records the Agency located but did not provide in full to Hall and AIM in November 2005 as well as the twenty-six documents it withheld in their entirety." Id. at 187.

As a result of this ruling, further responsive records were released to plaintiffs.

As to the Agency's assertion of exemptions "to justify withholdings from records responsive to item 3 for the years not covered in the Hall I requests," as well as Items 6 and 8, the court held that "the Agency's statement to this Court that the records withheld pursuant to exemption 1 are

less than twenty-five years old is, as to some documents, plainly incorrect." Id.

Referring to the Executive Order then governing national security classification,

the Court asserted:

> The [Executive] Order exempts from this requirement
> nine categories of information.... The records at issue here
> may well fall into one or more of these categories, but the
> CIA has not made such an assertion.... . The CIA should
> address this issue in its supplemental filing to this Court
> pursuant to this opinion. Therefore, the Court ... denies
> summary judgment as to those documents that are more than
> twenty-five years old.

Id. at 189.

Regarding Exemption 2 the court held that "[t]he CIA misunderstands

its responsibility. The D.C. Circuit has made clear that exemption 2 'does

not shield information on the sole basis that it is designed for internal agency

use,' Morley, 508 F.3d at 1125 (quoting Fitzgibbon v. U.S. Secret Serv., 747

F. Supp. 51, 56 (D.D.C. 1990)... The CIA's supplemental filing to this

Court shall include further detail regarding its invocation of exemption 2 or

the CIA shall disclose to Hall and AIM information previously withheld

pursuant to this exemption." Hall II at 190.

As a result of this decision and the subsequent holding of the United States

Supreme Court in Milner v. U.S. Dept of the Navy, 131 S.Ct. 1259, 562 U.S. 3

(2011), the CIA could no longer withhold information which previously had been

withheld under Exemption 2.

With respect to the deliberative process privilege under exemption 5, the court noted, id at191, that it "require[d] more information to make a determination about the propriety of the CIA's reliance on exemption 5 for withholding" of one document. Similarly, as to the CIA's reliance on the attorney-client privilege, the court held, id at 34, that "[t]he CIA must either disclose records withheld pursuant to the attorney-client privilege or indicate in its supplemental filings, in sufficient detail, why withholding is proper as to each document for which it relies on the privilege." Id. at 192.

Regarding Exemption 6, the court held that, "[f]or the reasons articulated in Morley, this Court denies summary judgment to the CIA on this issue. The Agency must disclose the information or include in its supplemental declaration further explanation of its decision to withhold it." Id. at 194.

Regarding segregability, the court held that "[t]he CIA's Vaughn index does not provide information sufficient for the Court to review its compliance with FOIA's requirement that reasonably segregable portions of records be released." Id. at 194. As a result of this ruling, additional information previously withheld under Exemption 6 was subsequently released to plaintiffs.

Lastly, the CIA withdrew its denials that plaintiffs are members of the news media, and are not entitled to a public interest fee waiver, but only after plaintiffs

had fully briefed those issues. This, too, changed the legal relationship of the parties and resulted in the disclosure of requested information.

    2. Judge Lamberth's August 3, 2012 Order

    In <u>Hall v. C.I.A.</u>, 881 F.Supp.2d 38 (D.D.C. 2012("<u>Hall III</u>"), the CIA claimed that it would be unduly burdensome for it to search the CADRE system for 1,711 names on the PNOK list to obtain records responsive to the request. Judge Lamberth ruled that "[t]his Court will not find a search unduly burdensome on conclusory statements alone. Therefore, the CIA must search its CADRE system for all 1,711 names, and produce all responsive non-exempt documents to plaintiffs. <u>Id</u>. at 53.

    The CIA also argued that searching its archived records for any names–even those names for which it has been supplied additional identifying information– would be unduly burdensome. This Court disagreed. It denied the CIA's motion for summary judgment and grants summary judgment to plaintiffs in regard to the Item 5 systems search. <u>Id</u>. at 54.

    This ruling changed the legal relationship of the parties and resulted in the release of additional records.

    Item 7 of the request sought records in response to any search conducted "by any congressional committee "for POW/MIA records. The CIA initially misrepresented the nature of the request and then argued that it

had only been raised for the first time in AIM's response to the CIA's

motion for summary judgment "even though it was in the FOIA request and

the Complaint." Id. at 55. Because it was in the FOIA request and the

Complaint, "the CIA's motion for summary judgment in regard to Item 7 is

denied, and the plaintiffs' cross-motion for summary judgment as to the Item

7 congressional committee request search is granted." Id. This ruling

changed the legal relationship of the parties and resulted in the release of

records to plaintiffs."

In its supplemental Item 5 search for records on Capt. Peter Richard Mathes

the CIA located seven documents which it referred to other agencies. Plaintiffs

complained about the CIA's failure to see that these unnamed agencies made a

timely response. The CIA's response was dismissive—"'[i]f these agencies have

failed to provide a timely response to plaintiff, it is up to plaintiffs to take whatever

action they deem appropriate directly with those agencies.'" Id. at 56 (citation to

CIA brief omitted). Judge Lamberth further noted that: "The CIA goes on to state

that it 'has fulfilled its obligation and has no power or control over the actions of

another federal agency." Id. (citation omitted) He then roundly condemned the

CIA's response, finding that "[h]ere, the CIA's response is not only baffling, but

the failure to produce the documents amounts to an improper withholding."

Because "the CIA is responsible for responsive records, even when those records

originated with other agencies," Judge Lamberth held "that the CIA must take immediate affirmative steps to be sure that each referral is being processed, which it shall describe in its supplemental filing." Id.

This ruling, too, changed the legal relationship of the parties and resulted in the release of records.

With regard to the issue of missing documents, the court held that "some of Hall's arguments about additional responsive documents are valid, while others lack the support necessary to move beyond pure speculation." Id. at 62. The court held that "[t]he fact that the CIA maintained and controlled the documents that reference the other documents, many of them attachments, provides support for the proposition that the CIA maintains and controls those missing records." Therefore, the CIA must show that it has conducted a reasonable good-faith search for the missing attachments, enclosures, photographs, and reports mentioned in [specifically listed] documents . . . and provide plaintiffs with all non-exempt records." Id.

Regarding Exemption 3, the Court held that, because "it is unclear whether the DOD consulted the PNOK list, a genuine issue of material fact exists regarding the redaction of names withheld under 50 U.S.C. § 435, and the Court cannot grant summary judgment. Therefore, the 29 documents listed under 15B of the Tisdale Declaration must be released without the

POW/MIA names redacted, or a declaration must be submitted to the Court specifying that the withheld names are not on the PNOK list." Id. at 67.

The court denied summary judgment for some of the CIA's withholdings under Exemption 6, holding "that the CIA has not overcome the heavy 'presumption in favor of disclosure' found in exemption 6 in regard to the names." Id. at 71. "[I]n regard to the names . . . of individuals themselves, and withheld photographs, the Court denies summary judgment to the CIA for the exemption 6 claims and grants summary judgment to plaintiffs." Id. 71-72.

In light of the foregoing, it is obvious that plaintiffs have substantially prevailed in this litigation in a very major way and are eligible for an award of attorney fees.

C. Plaintiffs are Entitled to an Award of Fees

Once a FOIA plaintiff has established that he is "eligible" for attorney fees by virtue of having "substantially prevailed," the next question is whether he is "entitled" to fees. In reaching a judgment on this issue, the courts have relied on the four criteria set forth in the original bill, S. 2543, which became the FOIA. These criteria are not, however, "airtight, independently indispensable prerequisites." Crooker v. United States Parole Com'n., 776 F. 2d 366, 367 (1st Cir. 1985). The four criteria are: (1) benefit

to the public, (2) commercial benefit to the plaintiff, (3) nature of the

plaintiffs' interest in the records, and (4) whether the agency's withholding

had a reasonable basis in law. See S. Rep. 93-854, 93d Cong., 2d Sess. (1974)

("Senate Report") at 19. Each of these factors favors an award of fees in this case.

## 1. Benefit to the Public

In Davy v. C.I.A., 550 F.3d 1155, 1160 (D.C.Cir.2008)("Davy II"), the

Court of Appeals aptly summed up the gist of the first three entitlement factors:

> Essentially, the first three factors assist a court in
> distinguishing between requesters who seek documents
> for public informational purposes and those who seek
> documents for private advantage. The former engage in
> the kind of endeavor for which a public subsidy makes
> some sense, and they typically need the fee incentive to
> pursue litigation; the latter cannot deserve a subsidy as
> they benefit only themselves and typically need no incentive
> to litigate.

The first criterion, benefit to the public, clearly applies to this case.

The issue of whether the government knowingly left POWs behind at the

close of the Viet Nam War, as well as the Korean conflict, has been the

subject of congressional probes, extensive mass media coverage, and a

number of books and movies. The public importance of being fully

informed about these activities is further enhanced by disclosure of records

in this case. Disclosure of the information is in the public interest because it

is likely to contribute significantly to public understanding of the operations

or activities of the government and is not primarily in the commercial

interest of the requester. Disclosure will help create a greater understanding

of the inner workings of government as shedding light on the extent, nature,

intensity, and duration of the government's efforts to locate POW/MIAs, and

will show the degree to which the CIA has complied, or failed to comply, in good

faith with relevant Executive Orders and whether it has accurately informed

Congress and the public about its search efforts and the information it possesses.

Davy II set a minimal quantitative standard for what is needed to

demonstrate sufficient benefit to the public to meet the public benefit criterion: "At

least one of the requested documents was not previously available to the public,

and the agency did not challenge [the plaintiff's] description of the released

documents as providing 'important new information bearing on [former District

Attorney Jim] Garrison's contention that the CIA was involved' in the assassination

plot." Id at 1159.

Here, Hall has obtained thousands of records that contain new information

not previously released to the public which show the operations and activities of

the government. As examples, plaintiffs cite two that provided new information of

exceptional importance.  The first relates to the long controversy over David L.

Hrdlicka, the husband of Carol Hrdlicka. The United States Government had

informed Mrs. Hrdlicka that her husband had been captured during the Vietnam

War but died in captivity. "Indeed, 'on three different occasions, the Department of Defense [] told her that he had died.'" Rule 56(f) Declaration of Roger Hall, ¶ 6 [ECF #182] quoting Declaration of Carol Hrdlicka, ¶1.

However, a Russian journalist interviewed him several times in Sam Neua, Laos, where he was seen at the dedication of a cave complex which the journalist, Ivan Shchedrov witnessed. Id., ¶7, citing Hrdlicka Decl., ¶ 2. State Department records located by Hall at the LBJ Library reveal an attempt to rescue Hrdlicka. Id., Attachment 2A. However, he was recaptured. Documents obtained from the CIA over the years never disclosed her husband's name and the CIA never released documents pertaining to the escape and recapture of her husband. Id., ¶8, citing Hrdlicka Decl., ¶4. At long last, however, a document released in this lawsuit indicates that Hrdlicka's husband was alive in 1968. Id. and Attachment 3. This document alone demonstrates the public benefit received by new information released as a result of this lawsuit. Under Davy II, that is all that is required. However, to gild the lilly, plaintiffs provide a second example, the Baron 52 document.

Baron 52 was a reconnaissance flight shot down over Laos at the end of the Vietnam War. C0492476 is a September 18, 1992 letter to Sen. John F. Kerry, Chairman of the Senate Select Committee on POW/MIA Affairs which disclosed to plaintiffs new information which shows (1) efforts by the

CIA to locate and identify PDB (Presidential Daily Briefing) references to missing POWs, (2) the location of CIA components that were searched (the NID and the CIB), (3) the names of missing POWs who are or might be associated with such incidents, (4) the existence of NSA ("National Security Agency") reports related to such incidents, references, and names.

Apart from these specific instances, the public also benefited from the fact that the released records provided information to the friends and families of missing POWS and MIAs who had not been able to learn what had happened to their loved ones. The public interest in learning this information has been shown in many ways, including by the establishment of a Senate Committee to investigate the circumstances surrounding the controversy over the POW/MIAs.

The public benefit factor weighs very strongly in favor of an award of fees to plaintiffs.

2. Commercial Benefit and the Nature of Plaintiffs' Interest

According to the Senate Report,

> Under the second criterion, a court would usually allow recovery of fees when the complainant was indigent or a nonprofit public interest group, versus but would not if it was a large corporate interest (or a representative of such an interest). For the purpose of applying this criterion, news interests should not be considered commercial interests.

S.Rep. No. 93-854, 94th Cong., 1st Sess. at 19 (Joint Committee Print (March

1975), Reprinted in Freedom of Information Act Amendments of 1974 (P.L.

93-502: Source Book: Legislative History, Texts and Other Documents ("Source

Book"), at 171.

Plaintiffs are plainly within the favored class of news interests under this

criterion, and this is indicated by the fact that the CIA has not charged them search

fees or copying costs.  As they do not come within the scope of "commercial

interests" under this criterion, an award of attorney fees to them is appropriate. The

Senate Report states that

> [u]nder the third criterion a court would
> generally award fees if the complainant's
> interest in the information sought is scholarly
> or journalistic or public-interest oriented,
> but would not do so if his interest was frivolous
> or of a purely commercial nature.

Id.

Plaintiffs' interest is by no means "purely commercial." And, as with

the second criterion, plaintiffs plainly fall well within the class of requesters

the attorney fees provision is designed to benefit. It, too, strongly favors an

award of fees.

### 3. Whether Withholding Had a Reasonable Basis in Law

The Senate Report specifies that

> [u]nder the fourth criterion a court would not
> award fees when the government's withholding had

a colorable basis in law but would ordinarily award
them if the withholding appeared to be merely to avoid
embarrassment or to frustrate the requester. Whether
the case involved a return to court by the same
complainant seeking the same or similar a second
time should be considered by the court under
this criterion.

Id.

Thus, the fourth factor "considers whether the agency's opposition to

disclosure 'had a reasonable basis in law,'" Tax Analysts, 965 F.2d 1092, 1096

(D.C. Cir. 1992) and "whether the agency 'had not been recalcitrant in its

opposition to a valid claim or otherwise engaged in obdurate behavior.'" Davy II at

1162, quoting LaSalle Extension University v. F.T.C., 627 F.2d 481, 486

(D.C.Cir. l980)(other citations omitted).

"If the Government's position is correct as a matter of law, that will be

dispositive. If the Government's position is founded on a colorable basis in law,

that will be weighed along with other relevant considerations in the entitlement

calculus." Davy II, at 1162, quoting Chesapeake Bay Foundation v.

Dept. of Agriculture ("Chesapeake"), 11 F.3d 211, 216 (D.C.Cir. 1993)(other

citations omitted). The burden is not on the plaintiff to "affirmatively show[] that

the agency was unreasonable"; rather, the burden is on the agency to show that it

had "any colorable or reasonable basis for not disclosing the material until after

[the plaintiff] filed suit." Davy II at 1163.

In this case, this Court repeatedly found that the CIA's legal

arguments were wrong. The evidence of this Court's repudiation of the CIA's legal claims is set forth in great detail in Part I (pp. 3-12) above. There is no need to repeat it here.

Thus, the burden is on the agency to show that it had "any colorable or reasonable basis for not disclosing the material until after [the plaintiff] filed suit." Id. The CIA cannot meet that burden in this case. The court opinions are filled with findings that indicate the lack of a reasonable basis for its positions as well as conduct which constitutes obdurate and dilatory conduct. Some examples—

--"the Agency's statement to this Court that the records withheld pursuant to exemption 1 are less than twenty-five years old is, as to some documents, plainly incorrect. . . ." Hall II at 182.

--The CIA withdrew its demand for search fees and copying costs only after the issue was fully briefed by the parties. In the process, it outrageously inflated the number of documents potentially responsive to the request and the amount of time and cost involved in searching for them.

--Judge Lamberth found that the CIA initially misrepresented the nature of Item 7 of the request and then argued that it had only been raised for the first time in AIM's response to the CIA's motion for summary judgment "even though it was in the FOIA request and the Complaint. . . ." Hall III at 55.

--The CIA's failure to take responsibility for processing referrals to other agencies violated Circuit law and "may explain why this case has limped along for so many years. . . ." Id. at 57.

--"[t]he CIA apparently chooses to ignore Judge Kennedy's 2009 Order, where it was made clear that an agency 'must take responsibility for processing the [FOIA] request even if the documents originated elsewhere.'" Id. at 55 (emphasis added).

--The CIA relied on affidavits stating that it had searched systems "most likely" to contain responsive records, even though this was a clear violation of the standard established by Circuit law.

--The CIA engaged in litigation over whether it had to provide copies of records in the format requested by plaintiffs even though it had posted digitized copies of documents in that format on its own website. When Judge Howell ordered discovery on the issue in a companion case, Jeffrey Scudder v. C.I.A., Civil Action No. 12-807, the CIA conceded the issue and provided the records in the requested electronic form.

These examples, which are not exhaustive, make it clear that the fourth factor also weighs heavily in favor of an award of fees to plaintiffs.

D. An Interim Award of Attorney's Fees Is Needed to Enforce the FOIA's Attorneys' Fees Provision

It is well-established that interim fees may be awarded in FOIA.  See, e.g.,
National Ass'n of Criminal Defense Lawyers, Inc. v. U.S. Department of Justice,
182 F.3d 981 (D.C.Cir.1999)(holding that award of interim fees was not appealable
under collateral order doctrine and that the agency was not entitled to a writ of
mandamus reversing award of interim fees); National Ass'n of Criminal Defense
Lawyers, Inc. v. U.S. Department of Justice, Civil Action No. 97-372 (GK),
Memorandum Order (D.D.C. June 26, 1998); Washington Post v. U.S. Dept. of
Defense, 789 F.Supp. 423 (D.D.C. 1992); Wilson v. U.S. Dep't of Justice, 1989
WL 298673 Memorandum at 2 (D.D.C. Sept. 12, 1989); Allen v. F.B.I., 716
F.Supp. 667 (D.D.C.1989); Allen v. Department of Defense, 713 F.Supp. 7
(D.D.C.1989)("Allen v. DOD").  Rosenfeld v. U.S., 859 F.2d 717, 724-25 (9th
Cir.1988).

These cases are the progeny of the Supreme Court's decision in Hanrahan v.
Hampton, 446 U.S. 754, 757-758 (1980), which held that "[w]hile Congress
contemplated the award of fees pendente lite in some cases, it intended to permit
such an interlocutory award only when a party has prevailed on the merits of at
least some of his claims either in the trial court or on appeal."  The Court noted in
support of this holding that the House Committee Report approved the standard
suggested by this Court in Bradley v. Richmond School Board, 416 U.S. 696
(1974) that "'the entry of any order that determines substantial rights of the parties

may be an appropriate occasion upon which to consider the propriety of an award of counsel fees. . . .'" Id. at 757, citing H. Rep. No. 94-1558 (1976) at 8, quoting Bradley at 723, n. 28.   Hanrahan further noted that "the Senate Committee Report explained that the award of counsel fees pendente lite would be 'especially appropriate' where a party has prevailed in an important matter in the course of litigation, even where he ultimately does not prevail on all issues." Id., quoting S. Rept. No. 94-1011 (1976) at 5 (emphasis added by Hanrahan court.)

Although Hanrahan was decided under the Civil Rights Attorney's Fees Awards Act of 1976, not the FOIA, the decisions of this Court have made it clear that it applies to FOIA cases.  The only qualification Hanrahan made on the award of interim fees was that that the party seeking fees must establish that it had prevailed on an important matter; that is, prevailed on the merits on at least one issue in the case.  Here there is no question but that Hall has done far more than that in this case, has in fact prevailed on a multitude of issues.

The FOIA cases dealing with interim fees have erected additional bars to interim fee awards not contemplated by Hanrahan.  However, the nature of these requirements for award of interim fees varies significantly from case-to-case.  Cf. Allen v. Department of Defense, 713 F. Supp. 7 (D.D.C. 1989) ("Allen I"); Allen v. F.B.I., 716 F.Supp. 667 (D.D.C. 1989)("Allen II"); and Oglesby v. Dept. of the

Army, et al., Civil Action No. 87-3349, Report and Recommendation of Magistrate

John Facciola (D.D.C. Mar. 24, 1999)(report not adopted).

Of these cases, Allen II sets forth the most rigorous requirements for

qualifying for an interim award of attorney fees, focusing on four factors:  (1) the

degree of hardship which delaying a fee award until the litigation is finally

concluded would work on plaintiff and his counsel; (2) whether there is

unreasonable delay on the government's part; (3) the length of time the case has

been pending prior to the motion, and (4) the period of time likely to be

 required before the litigation is concluded.  Allen II, 716 F. Supp. at 672, citing

Powell v. United States Dept. of Justice, 569 F.Supp. 1192, 1199-1200

(N.D.Cal.1983).

These factors differ substantially from what has been required in

other FOIA cases.  Most notably, the case which set the D.C. precedent on interim

fees, Allen v. DOD, aside from noting that the case had been ongoing for some

eight years already, simply noted that the plaintiff had substantially prevailed on

several matters and proceeded straightway to award interim fees.  No showing of

hardship was required.  Id., Allen I at 12-13.

However, as noted in Oglesby, "[i]n the absence of a dispositive decision by

either the Supreme Court or the Court of Appeals for this Circuit, there has been

insistence . . . that interim fee awards be limited to unusual instances of protracted

litigation and financial hardship." Oglesby, Magistrate's Report and

Recommendation (Mar. 24, 1999) at 5, citing Allen II, 716 F.Supp. at, 671.

Magistrate Facciola found the imposition of the four factors set forth in

Allen II "troubling when compared to the clear intent of the provision permitting

the award of attorney fees to prevent access to the FOIA's benefit being a function

of one's wealth." Id. He quoted from the legislative history of the 1974

amendments to FOIA which enacted the attorney fees provision:

> Too often the barriers presented by court costs and
> attorneys' fees are insurmountable [sic] for the
> average person requesting information, allowing the
> government to escape compliance with the law. . . ..
> [A]s observed by Senator Thurmond:
>
> "We must insure that the average citizen can
> take advantage of the law to the same extent as
> the giant corporations with large legal staffs. Often
> the average citizen has foregone legal remedies
> supplied by the Act because he has neither the finan-
> cial nor legal resources to pursue litigation when his
> Administrative remedies have been exhausted."

Id. at 5-6, quoting S. Rep. No. 93-854, 93d Cong., 2d Sess. at 17-18

(1974)(quoting from 1973 Senate Hearings, Vol. 1 at 175).

Magistrate Facciola noted several potent problems inherent to most FOIA

litigation. While attorneys in private practice "bill monthly at current rates and can

stop work if the client does not pay[,] FOIA lawyers can only be compensated at

historic rates and have to persist to the bitter end to see any money at all." Id. at 6.

In addition, "[t]he pace of FOIA litigation, which can take years, if not decades, may require FOIA lawyers to have the patience of saints and the endurance of marathon runners. To require them to also show additional financial hardship besides what they have to endure in the ordinary course piles Pelion on Ossa and threatens to undercut Congress's purposes, particularly if it leads to counsel either having to abandon the litigation in mid-stream or deterring them from undertaking the FOIA representation in the first place." Id.

Magistrate Facciola's Report and Recommendation in Oglesby was not adopted by United States District Judge Norma Holloway Johnson, who denied the motion for interim fees there. However, what Magistrate Facciola observed when considering that possibility, is also true here: "I hasten to add that even if, contrary to my view, a plaintiff must show financial hardship by considering the four factors to which some courts have pointed, plaintiff easily meets these requirements." Id. Here, Hall easily meets Allen II's four factors.

1. Degree of Hardship

Hall's attorney is compelled to move for an award of interim fees in this case because he is facing dire financial circumstances. If he is unable to obtain adequate compensation for the services he has performed in this case, his client will be forced either to proceed with the case pro se or to hire another attorney, if

possible.  Declaration of James H. Lesar in Support of Motion for an Award of

Attorney's Fees ("Lesar Decl.", ¶6).

### 2. Unreasonable Delay on the Government's Part

As noted above, Judge Lamberth, in being compelled once again to address

the issue of the CIA's failure to take steps to see that referrals got promptly

processed, observed that the CIA's failure to take responsibility for processing

referrals to other agencies violated Circuit law and "may explain why this case has

limped along for so many years. . . ."  Hall III. at 57.  The case was repeatedly

delayed by the CIA's needless litigation and re-litigation of issues that were either

baseless or had been previously decided.  For examples, see supra at 19-20.

### 3. Case Length

This case has been going on for eleven years, sixteen if you count the five

years that, Hall v. C.I.A., Civil Action No. 98-1319, lasted.  This Court has held

that a FOIA requester qualified for interim fees when the case had been ongoing

"for over a year."   National Ass'n of Criminal Defense Lawyers, Inc. v. U.S.

Department of Justice, Civil Action No. 97-372 (GK), Memorandum Order

(D.D.C. June 26, 1998) at 5;

### 4. Time Required Before Case Is Concluded

If Hall's counsel does not receive interim fees, he will no longer be able to represent Hall.  Hall will either have to represent himself or find new counsel to represent him, a prospect which is likely to be time-consuming and difficult at best.

## II. THE AMOUNT OF ATTORNEY'S FEES SOUGHT IS REASONABLE

### A. Determining a Reasonable Fee

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  While this "normally provides a 'reasonable' attorney's fee, . . . 'in some cases of exceptional success an enhanced award may be justified.'"  Blum v. Stenson, 465 U.S. 886, 887 (1984), quoting Hensley at 435.  In determining this "lodestar" amount, as Copeland v. Marshall. 641 F.2d 880, 891 (D.C.Cir.1980)(enbanc)    °  referred to it, courts handling FOIA cases in the D.C. Circuit almost always apply one of two standard market rates--the Laffey matrix rate as calculated by the U.S. Attorneys Office ("USAO Matrix") and that which has become known as the "Salazar Laffey Matrix".

The Salazar Matrix incorporates the "Legal Services Component" of the Consumer Price Index to calculate market rates for attorneys who engage in

complex federal litigation.  The USAO Matrix does not base its calculations on the Consumer Price Index's Legal Services Component.

Recently, D.C. district court judges have increasingly found the Salazar Matrix to be the appropriate measure of reasonable fees for attorneys practicing in the D.C. Circuit.  The Salazar Matrix is named after a decision by Judge Gladys Kessler in Salazar v. District of Columbia, 123 F.Supp. 2d 8, 13 (D.D.C. 2000), and subsequent fee awards in that case.  Recently, Judge Howell endorsed the Salazar Matrix in Eley v. District of Columbia, 999 F. Supp. 2d 137, 152 (D.D.C. 2013)(in what has been cited as a particularly well reasoned opinion, Judge Howell decided not only that use of the Salazar Matrix is appropriate but that likely underestimates legal cost increases in the D.C. market).   In CREW v. Dep't of Justice, Civil No. 11-0754, Memorandum Opinion at 10 (D.D.C. Aug. 4, 2014), the court reiterates that the updated Salazar Matrix is to be applied to a CREW fee petition in a FOIA case.  In a most recent decision since, Judge Boasberg adopted CREW's use of the Salazar Matrix to determine attorney fees in another FOIA case.  CREW v. Dep't. of Justice, Civil Action No. 11-1021, Memorandum Opinion, Oct. 24 2014).

### B.  Calculating the Lodestar in This Case

Attorney Lesar has more than 44 years experience litigating FOIA cases.

Lesar Decl., ¶3.  His FOIA litigation has resulted in at least 97 published decisions. Id. ¶4, Attachment 1.  His cases have resulted in a number of significant FOIA precedents.  Id., ¶5.

As an attorney with more than 20 years of experience, Lesar is entitled to receive the highest hourly rates provided under either the Salazar Laffey Matrix or the USAO Laffey Matrix.  Attached to Lesar's declaration as Chart A is a listing of the hours of service he has performed, the hourly rate appropriate to each year, and the total of fees earned in each year.  Chart B provides the same information for the USAO's Laffey Matrix.

These charts establish total fees in the amount of $511,775.4 at the Salazar rate and $346,523.0 under the U.S. Attorneys Office Laffey Matrix.  As a matter of billing judgment, Lesar deducts 15% from his total bill.  This leaves the amount due under the Salazar Matrix at $ 435,009.09  and under the USAO's Matrix at $ 294,544.55.

Hall urges that whichever matrix the Court applies, the amount should be adjusted upwards to account for the high degree of success achieved by Hall on his claim for access to these records and for the CIA's obdurate behavior in this case.

The court should also award the $1,044.00 in fees set forth in the invoice of Attorney Julia Greenberg for the services she provided in this case.

Respectfully submitted,

James H. Lesar #11413
930 Wayne Avenue
Suite 1111
Silver Spring, MD 20910
Phone: (301) 328-5920

Counsel for Plaintiffs Roger Hall
and SSRI, Inc.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROGER HALL, et al.,                    :
                                       :
        Plaintiffs,                    :
                                       :
        v.                             :        C. A. No. 04-0814 (RCL)
                                       :
CENTRAL INTELLIGENCE                   :
    AGENCY,                            :
                                       :
        Defendant                      :

## O R D E R

Upon consideration of plaintiffs' motion for an interim award of

attorney's fees and costs, defendant's opposition thereto, and the entire

record herein, it is by this Court this _____ day of _____, 2015,

hereby

ORDERED, that plaintiff's motion be, and hereby is, GRANTED, and

it is

FURTHER ORDERED, that plaintiffs shall be paid attorneys' fees in

the amount of $ _____, and costs in the amount $ _____.

_____
UNITED STATES DISTRICT JUDGE