UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROGER HALL, et al.,                )
                                   )
        Plaintiffs,                )
                                   )
        v.                         )        Civil Action No. 04-814 (RCL)
                                   )
CENTRAL INTELLIGENCE AGENCY,       )
                                   )
        Defendant.                 )
_____)

PLAINTIFF ACCURACY IN MEDIA'S
MOTION FOR AN INTERIM AWARD OF ATTORNEYS' FEES

        COMES NOW plaintiff, Accuracy in Media, Inc. by counsel, and respectfully moves

the Court an Interim Award of Attorneys' Fees, under 5 U.S.C. § 552(a)(4)(E).  As set forth

in plaintiff's accompanying memorandum, under D.C. Circuit precedent, plaintiffs are

eligible for, and entitled to, an interim award of attorneys' fees, and the amount of fees

sought is reasonable.

        DATE:  February 9, 2015.


                        Respectfully submitted,


                        _____/ s/_____
                        John H. Clarke   Bar No. 388599
                        Attorney for Plaintiff Accuracy in Media, Inc.
                        1629 K Street, NW
                        Suite 300
                        Washington, DC  20006
                        (202) 344-0776
                        johnhclarke@earthlink.net

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROGER HALL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-814 (RCL) |
| | ) | |
| CENTRAL INTELLIGENCE AGENCY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

PLAINTIFF ACCURACY IN MEDIA'S
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR AN INTERIM AWARD OF ATTORNEYS' FEES

COMES NOW plaintiff Accuracy in Media, Inc. ("AIM"), and respectfully submits this memorandum in support of its motion for an interim award of attorneys' fees. The undersigned counsel, as well as counsel for plaintiff Roger Hall, took this case on a contingency fee basis. Under D.C. Circuit precedent, an interim award of fees is permissible in the circumstances presented by this case. *See Allen v. Federal Bureau of Investigation*, 349 F. Supp. 21 (D.D.C. 1990); *Allen v. Department of Defense*, 713 F. Supp. 7 (D.D.C. 1989).

<u>Contents</u>

I.      PLAINTIFFS ARE ELIGIBLE FOR AND ENTITLED TO AN AWARD
        OF ATTORNEYS' FEES
        A.      The FOIA Attorney Fee Provision
        B.      Plaintiffs have substantially prevailed
                1.      Judge Kennedy's Order
                2.      Judge Lamberth's August 3, 2012 Order
        C.      Plaintiffs are Entitled to an Award of Fees
                1.      Benefit to the Public
                2.      Commercial Benefit and the Nature of Plaintiffs' Interest
                3.      Whether Withholding Had a Reasonable Basis in Law
        D.      An Interim Award of Attorney's Fees Is Needed to Enforce the
                FOIA's Attorneys' Fees Provision
                1.      Degree of Hardship
                2.      Unreasonable Delay on the Government's Part

1

   3.     Case Length
   4.     Time Required Before Case is Concluded
II.    THE AMOUNT OF ATTORNEYS' FEES SOUGHT IS REASONABLE

I.     **PLAINTIFFS ARE ELIGIBLE FOR AND ENTITLED TO AN AWARD OF ATTORNEYS' FEES**

   A.     **The FOIA Attorney Fee Provision**

5 U.S.C. § 552(a)(4)(E), as amended, provides in pertinent part:

   (i)     The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

   (ii)    For purposes of this subparagraph, a complainant has substantially prevailed if the complainant has obtained relief through either—
      (I)     a judicial order, or an enforceable written agreement or consent decree; or
      (II)    a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial.

   Under the attorney fees provision, a FOIA request must show both that he is eligible for fees by having substantially prevailed, and that he is entitled to fees.

   B.     **Plaintiffs have substantially prevailed**

   In *Citizens for Responsibility and Ethics in Washington v. U.S. Department of Justice* ("*CREW*"), Civil Action No. 10-750 (JEB), this Court noted that in *Davy v. C.I.A.* 456 F.3d 162 (D.C. Cir. 2006) ("*Davy I*"), the Court of Appeals concluded that the plaintiff had substantially prevailed on the basis of a joint stipulation and order because the order "changed the 'legal relationship between [the plaintiff] and the defendant," and granted the plaintiff "some relief on the merits of his claim." *CREW*, Oct. 26, 2011 Slip Op. at 5, citing *Davy I* at 165 (quoting *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health & Human Services*, 532 U.S. 598, 604 (2001) ("*Buckhannon*").

In this case, the orders issued by both Judge Henry Kennedy, Jr. and Judge Royce C. Lamberth, reflect that plaintiffs have prevailed, in multiple ways, on multiple occasions.

### 1.    Judge Kennedy's Order

In this Order (Dkt. # 137),  the Court held with regard to Item 4 of plaintiffs' request that the CIA "must provide the confirmation Judge Friedman required or turn over any non-exempt records to Hall and AIM."  *Id.* at 9.

Item 5 of plaintiffs' request sought records pertaining to Vietnam era POW/MIAs (1) whose relatives had provided next-of-kin privacy waivers to Hall or (2) whose names were on a primary next-of-kin ("PNOK") list of 1,711 persons compiled by the Prisoner of War/Missing Personnel Office  whose next-of-kin had had authorized release of information concerning them.  The CIA claimed the request was "improper," arguing that the request pertaining to the PNOK list was too vague to process and that Hall and AIM did not provide the CIA with additional information it had demanded—the date of birth, place of birth and full name of each person.  The Court found that "[t]he Agency has not alleged that it cannot discern what records Hall and AIM seek."  *Id.* at 11-12.  The Court noted that the CIA had asserted that a search for the names would turn up records that are not responsive to the request, and, so, "the Agency has conceded that a search is possible." *Id.* Absent such an explanation, the Court found that the CIA "must search for and disclose any non-exempt records which, based on the information Hall and AIM have provided and the details contained in the records themselves, it can verify pertain to an individual on plaintiffs' lists." *Id.*  No such explanation was provided, and, as a result of the additional searches were performed, plaintiffs received sought-after responsive records.

As to Item 7, the court held that it "cannot grant summary judgment to the CIA as to Hall and AIM's remaining item 7 request until it performs a search of that system for responsive documents or explains to the Court why it cannot do so." *Id.* at 13.

As a consequence of each of these holdings, the CIA subsequently produced numerous responsive records.

Regarding the CIA's search, the court denied "the CIA's request for summary judgment as to the adequacy of its search for additional item 3 records.  The CIA must provide a supplemental declaration describing its search method, including search terms, databases searched, and other relevant information that will allow the Court to evaluate whether the Agency's search was adequate." *Id.* at 18.  As to Item 6 records, the court wrote that it "cannot conclude based on the information in the record that the CIA's search fulfilled these requirements as to item 6." *Id.* at 20-21.  As a result of these rulings, the relationship between the parties was legally change and the CIA conducted further searches and released additional responsive records.

As a result of these rulings on search issues, the relationship between the parties was legally changed and the CIA conducted further searches and released additional responsive records.

Further, Judge Kennedy held that the defendant's *Vaughn* index was deficient as it related to its November 2005 withholdings, writing that "the CIA must submit a *Vaughn* index describing 'the documents and the justifications for nondisclosure with reasonably specific detail, [and] demonstrat[ing] that the information withheld logically falls within the claimed exemption,' *Military Audit Project*, 656 F.2d at 738, for the 102 records the

4

Agency located but did not provide in full to Hall and AIM in November 2005 as well as the twenty-six documents it withheld in their entirety."

As a result of this ruling, further responsive records were released to plaintiffs.

As to the Agency's assertion of exemptions "to justify withholdings from records responsive to item 3 for the years not covered in the *Hall I* requests," as well as Items 6 and 8, the court held that "the Agency's statement to this Court that the records withheld pursuant to exemption 1 are less than twenty-five years old is, as to some documents, plainly incorrect…  The [Executive] Order exempts from this requirement nine categories of information…. The records at issue here may well fall into one or more of these categories, but the CIA has not made such an assertion…. The CIA should address this issue in its supplemental filing to this Court pursuant to this opinion.  Therefore, the Court… denies summary judgment as to those documents that are more than twenty-five years old." *Id.* at 26.

Regarding Exemption 2, the Court held that "[t]he CIA misunderstands its responsibility.  The D.C. Circuit has made clear that exemption 2 'does not shield information on the sole basis that it is designed for internal agency use,' *Morley*, 508 F.3d at 1125 (quoting *Fitzgibbon v. U.S. Secret Serv.*, 747 F. Supp. 51, 56 (D.D.C. 1990))…  The CIA's supplemental filing to this Court shall include further detail regarding its invocation of exemption 2 or the CIA shall disclose to Hall and AIM information previously withheld pursuant to this exemption."  *Id.* at 28.  As a result of this decision and the subsequent holding of the United States Supreme Court in *Milner v. U.S. Dept. of the Navy,* 131 S.Ct. 1259, 562 U.S. 3 (2011), the CIA could no longer withhold information which previously had been withheld under Exemption 2.

With respect to the deliberative process privilege under exemption 5, the court noted (*id.* at 32) that it "require[d] more information to make a determination about the propriety of the CIA's reliance on exemption 5 for withholding" of one document. Similarly, as to the CIA's reliance on the attorney-client privilege, the court held, *id.* at 34, that "[t]he CIA must either disclose records withheld pursuant to the attorney-client privilege or indicate in its supplemental filings, in sufficient detail, why withholding is proper as to each document for which it relies on the privilege."

Regarding Exemption 6, the court held (*id.* at 35) that, "[f]or the reasons articulated in *Morley*, this Court denies summary judgment to the CIA on this issue. The Agency must disclose the information or include in its supplemental declaration further explanation of its decision to withhold it." Regarding segregability, the court held (*id.* at 36) that "[t]he CIA's *Vaughn* index does not provide information sufficient for the Court to review its compliance with FOIA's requirement that reasonably segregable portions of records be released." As a result of this ruling, additional information previously withheld under Exemption 6 was subsequently released to plaintiffs.

Regarding segregability, the court held that "[t]he CIA's *Vaughn* index does not provide information sufficient for the Court to review its compliance with FOIA's requirement that reasonably segregable portions of records be released." *Id*. at 194. As a result of this ruling, additional information previously withheld under Exemption 6 was subsequently released to plaintiffs.

Lastly, the CIA withdrew its denials that plaintiffs are members of the news media, and are not entitled to a public interest fee waiver, but only after plaintiffs had fully briefed

those issues.  This, too, changed the legal relationship of the parties and resulted in the

disclosure of requested information.

**2.      Judge Lamberth's August 3, 2012 Order**

Judge Lamberth's August 3, 2012 Order (Docket # 187) held (at 7) that, contrary to

defendant's position, "the CIA must search its CADRE system for all 1,711 names, and

produce all responsive non-exempt documents to plaintiffs," and that it must search its

"16,423 hard-copy file folders," and granted "summary judgment to plaintiffs' in regard to

the Item. *Id*. at 8.

This ruling change the legal relationship of the parties and resulted in the release of

additional records.

Item 7 of the request sought records in response to any search conducted "by any

congressional committee" for POW/MIA records.  The CIA initially misrepresented the

nature of the request and then argued that it had only been raised for the first time in AIM's

response to the CIA's motion for summary judgment "even though it was in the FOIA

request and the Complaint."  *Id*. at 10.  Because it was in the FOIA request and the

Complaint, "the CIA's motion for summary judgment in regard to Item 7 is denied, and the

plaintiffs' cross-motion for summary judgment as to the Item 7 congressional committee

request search is granted." *Id*. at 10.

This ruling changed the legal relationship of the parties and resulted in the release

of records to plaintiffs.

Regarding referrals, the court observed that "[t]he CIA apparently chooses to ignore

Judge Kennedy's 2009 Order, where it was made clear that an agency 'must take

responsibility for processing the [FOIA] request even if the documents originated

7

elsewhere.' *Hall,* 668 F. Supp. 2d at 182 (citing <u>McGehee</u>, 697 F.2d at 1110).  For the CIA to

then tell this Court that '[i]f these agencies have failed to provide a timely response to

plaintiff, it is up to plaintiffs to take whatever action they deem appropriate directly with

those agencies,' may explain why this case has limped along for so many years. . . .  Because

the CIA is responsible for responsive records, even when those records originated with

other agencies," the court held, "this Court holds that the CIA must take immediate

affirmative steps to be sure that each referral is being processed, which it shall describe in

its supplemental filing." *Id.* at 13-14.  This ruling, too, changed the legal relationship of the

parties and resulted in the release of records.

Regarding the adequacy of the CIA's search for records responsive to the Item 5

request, the Court held that "the CIA's affidavits stated that the CIA searched the systems

'most likely' to contain responsive documents, the Court concludes that the CIA has only

searched systems 'most likely' to contain responsive documents, and did not search all

systems 'likely to produce responsive documents.'  Therefore, the Court denies the

defendant's motion for summary judgment in respect to Item 5, grants summary judgment

to plaintiffs, and holds that the CIA must search for all 1,711 names in all systems that are

likely to produce responsive documents." *Id.*

In its supplemental Item 5 search for records on Capt. Peter Richard Mathes, the CIA

located seven documents which it referred to other agencies.  Plaintiffs complained about

the CIA's failure to see that these unnamed agencies made a timely response.  The CIA's

response was dismissive—"If these agencies have failed to provide a timely response to

plaintiff, it is up to plaintiffs to take whatever action they deem appropriate directly with

those agencies." *Id.* at 10 (citation to CIA brief omitted).  Judge Lamberth further noted,

"The CIA goes on to state that it 'has fulfilled its obligation and has no power or control over the actions of another federal agency." *Id*. (citation omitted).  He then roundly condemned the CIA's response, finding that "[h]ere, the CIA's response is not only baffling, but the failure to produce the documents amounts to an improper withholding."  Because "the CIA is responsible for responsive records, even when those records originated with other agencies," Judge Lamberth held "that the CIA must take immediate affirmative steps to be sure that each referral is being processed, which it shall describe in its supplemental filing." *Id*.

With regard to the issue of missing documents, the court held that "some of Hall's arguments about additional responsive documents are valid, while others lack the support necessary to move beyond pure speculation."  *Id.* at 21. The court held that "[t]he fact that the CIA maintained and controlled the documents that reference the other documents, many of them attachments, provides support for the proposition that the CIA maintains and controls those missing records.  Therefore, the CIA must show that it has conducted a reasonable good-faith search for the missing attachments, enclosures, photographs, and reports mentioned in documents C00482286, C00465737, C00482286, C00492378, C00492397, C00492546, C00478688, C00492526, C00471978, C00478651, C00492461, C00492546, C00472096 and C00483710, and provide plaintiffs with all non-exempt records."  *Id.* at 22.

Regarding Exemption 3, the court held that, because "it is unclear whether the DOD consulted the PNOK list, a genuine issue of material fact exists regarding the redaction of names withheld under 50 U.S.C. § 435, and the Court cannot grant summary judgment. Therefore, the 29 documents listed under ¶ 5B of the Tisdale Declaration must be released

without the POW/MIA names redacted, or a declaration must be submitted to the Court specifying that the withheld names are not on the PNOK list." *Id.*

The court denied summary judgment for some of the CIA's withholdings under Exemption 6, holding "that the CIA has not overcome the heavy 'presumption in favor of disclosure' found in exemption 6 in regard to the names themselves." Id. at 37.  "[I]n regard to the names . . . of individuals themselves, and withheld photographs, the Court denies summary judgment to the CIA for the exemption 6 claims and grants summary judgment to plaintiffs." *Id.*

### C.      Plaintiffs are Entitled to an Award of Fees

Once a FOIA plaintiff has established that he is "eligible" for attorney fees by virtue of having "substantially prevailed," the next question is whether he is "entitled" to fees.  In reaching a judgment on this issue, the courts have relied on the four criteria set forth in the original bill, S. 2543, which became the FOIA.  These criteria are not, however, "airtight, independently indispensable prerequisites." *Crooker v. United States Parole Com'n.*, 776 F. 2d 366, 367 (1st Cir. 1985).  The four criteria are: (1) benefit to the public, (2) commercial benefit to the plaintiff, (3) nature of the plaintiffs' interest in the records, and (4) whether the agency's withholding had a reasonable basis in law. *See* S. Rep. 93-854, 93d Cong., 2d Sess. (1974) ("Senate Report") at 19.  Each of these factors favors an award of fees in this case.

### 1.      Benefit to the Public

In *Davy v. C.I.A.*, 550 F.3d 1155, 1160 (D.C. Cir. 2008) ("Davy II"), the Court of Appeals aptly summed up the gist of the first three entitlement factors:

> Essentially, the first three factors assist a court in distinguishing between requesters who seek documents for public informational purposes and those

10

who seek documents for private advantage.  The former engage in the kind of endeavor for which a public subsidy makes some sense, and they typically need the fee incentive to pursue litigation; the latter cannot deserve a subsidy as they benefit only themselves and typically need no incentive to litigate.

The first criterion, benefit to the public, clearly applies to this case.  The issue of whether the government knowingly left POWs behind at the close of the Viet Nam War, as well as the Korean conflict, has been the subject of congressional probes, extensive mass media coverage, and a number of books and movies.  The public importance of being fully informed about these activities is further enhanced by disclosure of records in this case. Disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester.  Disclosure will help create a greater understanding of the inner workings of government as shedding light on the extent, nature, intensity, and duration of the government's efforts to locate POW/MIAs, and will show the degree to which the CIA has complied, or failed to comply, in good faith with relevant Executive Orders and whether it has accurately informed Congress and the public about its search efforts and the information it possesses.

*Davy II* set a minimal quantitative standard for what is needed to demonstrate sufficient benefit to the public to meet the public benefit criterion:  "At least one of the requested documents was not previously available to the public, and the agency did not challenge [the plaintiff's] description of the released documents as providing 'important new information bearing on [former District Attorney Jim] Garrison's contention that the CIA was involved' in the assassination plot." *Id.* at 1159.

Here, plaintiffs have obtained thousands of records that contain new information not previously released to the public which show the operations and activities of the government.  As examples, plaintiffs cite two that provided new information of exceptional importance.  The first relates to the long controversy over David L. Hrdlicka, the husband of Carol Hrdlicka.  The United States Government had informed Mrs. Hrdlicka that her husband had been captured during the Vietnam War but died in captivity. "Indeed, 'on three different occasions, the Department of Defense [] told her that he had died.'"  Rule 56(f) Declaration of Roger Hall, ¶ 6 [Docket #182] quoting Declaration of Carol Hrdlicka, ¶ 1.

However, a Russian journalist interviewed him several times in Sam Neua, Laos, where he was seen at the dedication of a cave complex which the journalist, Ivan Shchedrov witnessed. *Id*., ¶ 7, citing Hrdlicka Decl., ¶ 2.  State Department records located by Hall at the LBJ Library reveal an attempt to rescue Hrdlicka. *Id*., Attachment 2A.  However, he was recaptured.  Documents obtained from the CIA over the years never disclosed her husband's name and the CIA never released documents pertaining to the escape and recapture of her husband. *Id*., ¶ 8, citing Hrdlicka Decl., ¶ 4.  At long last, however, a document released in this lawsuit indicates that Hrdlicka's husband was alive in 1968. *Id*. and Attachment 3.  This document alone demonstrates the public benefit received by new information released as a result of this lawsuit.  Under *Davy II*, that is all that is required.  And plaintiffs provide a second example, the Baron 52 document.

Baron 52 was a reconnaissance flight shot down over Laos at the end of the Vietnam War. C0492476 is a September 18, 1992 letter to Sen. John F. Kerry, Chairman of the Senate Select Committee on POW/MIA Affairs which disclosed to plaintiffs new information,

showing (1) efforts by the CIA to locate and identify PDB (Presidential Daily Briefing) references to missing POWs, (2) the location of CIA components that were searched (the NID and the CIB), (3) the names of missing POWs who are or might be associated with such incidents, and (4) the existence of NSA ("National Security Agency") reports related to such incidents, references, and names.

Apart from these specific instances, the public also benefited from the fact that the released records provided information to the friends and families of missing POWs and MIAs who had not been able to learn what had happened to their loved ones. The public interest in learning this information has been shown in many ways, including by the establishment of a Senate Committee to investigate the circumstances surrounding the controversy over the POW/MIAs.

In this case, the records disclosed here are posted in AIM's website, AIM.org, where all of its work on the POW/MIA issue appear. The public benefit factor weighs very strongly favors an award of fees to plaintiffs.

### 2.      Commercial Benefit and the Nature of Plaintiffs' Interest

As defendant belatedly admitted, AIM is entitled to be recognized as a member of the "news media" under 5 U.S.C. § 552(a)(4)(A)(ii)(II). Its interest is of a journalistic and scholarly in nature. As the court in *Daw II* observed, "this court has long recognized that 'news interests,' regardless of private incentive, generally should not be considered 'commercial interests' for purposes of the second factor, *Tax Analysts*, 965 F.2d at 1096; *Fenster v. Brown*. 617 F2d 740, 742 n. 4 (D.C. Cir. l979) (quoting S.Rep. No. 93-854, at 19). The cited Senate Report observes:

> Under the second criterion, a court would usually allow recovery of fees
> when the complainant was indigent or a nonprofit public interest group,

13

> versus but would not if it was a large corporate interest (or a representative
> of such an interest).  For the purpose of applying this criterion, news
> interests should not be considered commercial interests.

S. Rep. No. 93-854, 94th Cong., 1st Sess. at 19 (Joint Committee Print (March 1975),

Reprinted in Freedom of Information Act Amendments of 1974 (P.L. 93-502: Source Book:

Legislative History, Texts and Other Documents ("*Source Book*"), at 171.

Plaintiffs are plainly within the favored class of news interests under this criterion.

They do not come within the scope of "commercial interests" under this criterion, and an

award of attorney fees to them is appropriate.  The Senate Report states:

> Under the third criterion a court would generally award fees if the
> complainant's interest in the information sought is scholarly or journalistic
> or public-interest oriented, but would not do so if his interest was frivolous
> or of a purely commercial nature.
> *Id.*

Thus, plaintiffs' interest in disclosure meets the second and third criterion, just as

they do regarding the first.  Plaintiffs plainly fall within the class of requesters the attorney

fees provision is designed to benefit.

### 3.    Whether Withholding Had a Reasonable Basis in Law

The Senate Report specifies:

> Under the fourth criterion a court would not award fees when the
> government's withholding had a colorable basis in law but would ordinarily
> award them if the withholding appeared to be merely to avoid
> embarrassment or to frustrate the requester.  Whether the case involved a
> return to court by the same complainant seeking the same or similar a
> second time should be considered by the court under this criterion.
> *Id.*

Thus, the fourth factor "considers whether the agency's opposition to disclosure

'had a reasonable basis in law,'" *Tax Analysts*, 965 F.2d 1092, 1096 (D.C. Cir. 1992) and

"whether the agency 'had not been recalcitrant in its opposition to a valid claim or

otherwise engaged in obdurate behavior.'" *Davy II* at 1162, quoting *LaSalle Extension University v. F.T.C.*, 627 F.2d 481, 486 (D.C. Cir. 1980)(other citations omitted).

"If the Government's position is correct as a matter of law, that will be dispositive. If the Government's position is founded on a colorable basis in law, that will be weighed along with other relevant considerations in the entitlement calculus." *Davy II*, at 1162, quoting *Chesapeake Bav Foundation v. Dept. of Agriculture* ("*Chesapeake*"), 11 F.3d 211, 216 (D.C. Cir. 1993) (other citations omitted). The burden is *not* on the plaintiff to "affirmatively show[] that the agency was unreasonable;" rather, the burden is on the agency to show that it had "any colorable or reasonable basis for not disclosing the material until after [the plaintiff] filed suit." *Davy II* at 1163.

In this case, this Court repeatedly repudiated the CIA's legal claims, the specifics of which are set forth above.

Thus, the burden is on the agency to show that it had "any colorable or reasonable basis for not disclosing the material until after [the plaintiff] filed suit." *Id*. The CIA cannot meet that burden in this case. The court opinions are filled with findings that indicate the lack of a reasonable basis for its positions as well as conduct which constitutes obdurate and dilatory conduct. Some examples:

- "[T]he Agency's statement to this Court that the records withheld pursuant to exemption 1 are less than twenty-five years old is, as to some documents, plainly incorrect..." Order, Docket # 137 at 26.

- The CIA withdrew its demand for search fees and copying costs only after the issue was fully briefed by the parties. In the process, it outrageously inflated the number of documents potentially responsive to the request and the amount of time and cost involved in searching for them.

- Judge Lamberth found that the CIA initially misrepresented the nature of Item 7 of the request and then argued that it had only been raised for the first time in AIM's response to the CIA's motion for summary judgment," even

15

though it was in the FOIA request and the Complaint. . . ." Order, Docket # 187 at 10.

- The CIA's failure to take responsibility for processing referrals to other agencies violated Circuit law and "may explain why this case has limped along for so many years. . . ." *Id.* at 13-14.

- "[T]he CIA apparently chooses to ignore Judge Kennedy's 2009 Order, where it was made clear that an agency 'must take responsibility for processing the [FOIA] request even if the documents originated elsewhere.'" *Id.* at 14.

- The CIA relied on affidavits stating that it had searched systems "most likely" to contain responsive records, even though this was a clear violation of the standard established by Circuit law.

- The CIA engaged in litigation over whether it had to provide copies of records in the format requested by plaintiffs even though it had posted digitized copies of documents in that format on its own website.

These examples, which are not exhaustive, make it clear that the fourth factor also weighs heavily in favor of an award of fees to plaintiffs.

### D.    An Interim Award of Attorney's Fees Is Needed to Enforce the FOIA's Attorneys' Fees Provision

It is well-established that interim fees may be awarded in FOIA. *See, e.g., National Ass'n of Criminal Defense Lawyers, Inc. v. U.S. Department of Justice*, 182 F.3d 981 (D.C. Cir. 1999) (holding that award of interim fees was not appealable under collateral order doctrine and that the agency was not entitled to a writ of mandamus reversing award of interim fees); *National Ass'n of Criminal Defense Lawyers, Inc. v. U.S. Department of Justice*, Civil Action No. 97-372 (GK), Memorandum Order (D.D.C. June 26, 1998); *Washington Post v. U.S. Dept. of Defense*, 789 F. Supp. 423 (D.D.C. 1992); *Wilson v. U.S. Dep't of Justice*, 1989 WL 298673 Memorandum at 2 (D.D.C. Sept. 12, 1989); *Allen v. F.B.I.*, 716 F.Supp. 667 (D.D.C.1989); *Allen v. Department of Defense*, 713 F. Supp. 7 (D.D.C. 1989) ("*Allen v. DOD*"). *Rosenfeld v. U.S.*, 859 F.2d 717, 724-25 (9th Cir. 1988).

These cases are the progeny of the Supreme Court's decision in *Hanrahan v. Hampton*, 446 U.S. 754, 757-758 (1980), which held that "[w]hile Congress contemplated the award of fees *pendente lite* in some cases, it intended to permit such an interlocutory award only when a party has prevailed on the merits of at least some of his claims either in the trial court or on appeal."  The Court noted in support of this holding that the House Committee Report approved the standard suggested by this Court in *Bradley v. Richmond School Board*, 416 U.S. 696 (1974) that "'the entry of any order that determines substantial rights of the parties may be an appropriate occasion upon which to consider the propriety of an award of counsel fees....'"  *Id.* at 757, citing H. Rep. No. 94-1558 (1976) at 8, quoting *Bradley* at 723, n. 28.  *Hanrahan* further noted that "the Senate Committee Report explained that the award of counsel fees *pendente lite* would be 'especially appropriate' where a party has prevailed in an important matter in the course of litigation, even where he ultimately does not prevail on *all* issues."  *Id.*, quoting S. Rept. No. 94-1011 (1976) at 5 (emphasis added by *Hanrahan* court.)

Although *Hanrahan* was decided under the Civil Rights Attorney's Fees Awards Act of 1976, not the FOIA, the decisions of this Court have made it clear that it applies to FOIA cases.  The only qualification *Hanrahan* made on the award of interim fees was that that the party seeking fees must establish that it had prevailed on *an important* matter; that is, prevailed on the merits on at least one issue in the case.  Here there is no question but that plaintiffs have done far more than that.  They have prevailed on a multitude of issues.

The FOIA cases dealing with interim fees have erected additional bars to interim fee awards not contemplated by *Hanrahan*.  However, the nature of these requirements for award of interim fees varies significantly from case-to-case.  *Cf. Allen v. Department of*

17

*Defense*, 713 F. Supp. 7 (D.D.C. 1989) ("*Allen I*"); *Allen v. F.B.I.,* 716 F.Supp. 667 (D.D.C. 1989) ("*Allen II*"); and *Oglesby v. Dept. of the Army, et al.,* Civil Action No. 87-3349, Report and Recommendation of Magistrate John Facciola (D.D.C.  Mar. 24, 1999) (report not adopted).

Of these cases, *Allen II* sets forth the most rigorous requirements for qualifying for an interim award of attorney fees, focusing on four factors:  (1) the degree of hardship which delaying a fee award until the litigation is finally concluded would work on plaintiff and his counsel; (2) whether there is unreasonable delay on the government's part; (3) the length of time the case has been pending prior to the motion, and (4) the period of time likely to be required before the litigation is concluded.  *Allen II*, 716 F. Supp. at 672, citing *Powell v. United States Dept. of Justice*, 569 F. Supp. 1192, 1199-1200 (N.D. Cal. 1983).

These factors differ substantially from what has been required in other FOIA cases. Most notably, the case which set the D.C. precedent on interim fees, *Allen v. DOD*, aside from noting that the case had been ongoing for some eight years already, simply noted that the plaintiff had substantially prevailed on several matters and proceeded straightway to award interim fees.  No showing of hardship was required.  *Id.*, *Allen I* at 12-13.

However, as noted in *Oglesby*, "[i]n the absence of a dispositive decision by either the Supreme Court or the Court of Appeals for this Circuit, there has been insistence… that interim fee awards be limited to unusual instances of protracted litigation and financial hardship."  *Oglesby*, Magistrate's Report and Recommendation (Mar. 24, 1999) at 5, citing *Allen II*, 716 F. Supp. at 671.

Magistrate Facciola found the imposition of the four factors set forth in *Allen II* "troubling when compared to the clear intent of the provision permitting the award of attorney fees to prevent access to the FOIA's benefit being a function of one's wealth." *Id.*

18

He quoted from the legislative history of the 1974 amendments to FOIA which enacted the

attorney fees provision:

> Too often the barriers presented by court costs and attorneys' fees are
> insurmountable for the average person requesting information, allowing the
> government to escape compliance with the law... [A]s observed by Senator
> Thurmond:  "We must insure that the average citizen can take advantage of
> the law to the same extent as the giant corporations with large legal staffs.
> Often the average citizen has foregone legal remedies supplied by the Act
> because he has neither the financial nor legal resources to pursue litigation
> when his Administrative remedies have been exhausted."

*Id.* at 5-6, quoting S. Rep. No. 93-854, 93d Cong., 2d Sess. at 17-18 (1974) (quoting from

1973 Senate Hearings, Vol. 1 at 175).

Magistrate Facciola noted several potent problems inherent to most FOIA litigation.

While attorneys in private practice "bill monthly at current rates and can stop work if the

client does not pay[,] FOIA lawyers can only be compensated at historic rates and have to

persist to the bitter end to see any money at all." *Id.* at 6.  In addition, "[t]he pace of FOIA

litigation, which can take years, if not decades, may require FOIA lawyers to have the

patience of saints and the endurance of marathon runners.  To require them to also show

additional financial hardship besides what they have to endure in the ordinary course piles

Pelion on Ossa and threatens to undercut Congress's purposes, particularly if it leads to

counsel either having to abandon the litigation in mid-stream or deterring them from

undertaking the FOIA representation in the first place." *Id.*

Magistrate Facciola's Report and Recommendation in *Oglesby* was not adopted by

United States District Judge Norma Holloway Johnson, who denied the motion for interim

fees there.  However, what Magistrate Facciola observed when considering that possibility,

is also true here: "I hasten to add that even if, contrary to my view, a plaintiff must show

financial hardship by considering the four factors to which some courts have pointed,

plaintiff easily meets these requirements." *Id*.  Here, plaintiffs easily meet *Allen II*'s four

factors.

### 1.    Degree of Hardship

Counsel is "compelled to move for interim fees because [he is] in dire financial

straits" (Clarke Decl. ¶ 4, submitted herewith).  "In the absence of an award of fees" here,

counsel will be have to "borrow funds in the short term, simply to meet" monthly

obligations.

### 2.    Unreasonable Delay on the Government's Part

As noted above, Judge Lamberth, in being compelled once again to address the issue

of the CIA's failure to take steps to see that referrals got promptly processed, observed that

the CIA's failure to take responsibility for processing referrals to other agencies violated

Circuit law and "may explain why this case has limped along for so many years… " Order,

Docket # 187 at 13-14.  The case was repeatedly delayed by the CIA's needless litigation

and re-litigation of issues that were either baseless or had been previously decided.

### 3.    Case Length

This case has been going on for 11 years.  This Court has held that a FOIA requester

qualified for interim fees when the case had been ongoing "for over a year."  *National Ass'n*

*of Criminal Defense Lawyers, Inc. v. U.S. Department  of Justice*, Civil Action No. 97-372 (GK),

Memorandum Order (D.D.C. June 26, 1998) at 5.

### 4.    Time Required Before Case is Concluded

If AIM's counsel does not receive interim fees, he will no longer be able to represent

AIM.  AIM will either have to represent itself or find new counsel to carry on the

representation, a prospect which is likely to be time-consuming, and problematic, if not impossible.

## II.      THE AMOUNT OF ATTORNEYS' FEES SOUGHT IS REASONABLE

After determining a plaintiff's eligibility and entitlement to attorney's fees, the court must determine "the proper amount of the fee award," *Summers v. Dep't of Justice*, 477 F. Supp.2d 56, 63 (D.D.C. 2007). Fee awards are calculated employing the "usual method of... multiply[ing] the hours reasonably expended in the litigation by a reasonable hourly fee, producing the lodestar amount." *Judicial Watch, Inc. v. Bureau of Land Mgmt.*, 562 F. Supp.2d 159, 175 (D.D.C. 2008) (internal quotation and citation omitted). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). While this "normally provides a 'reasonable' attorney's fee... 'in some cases of exceptional success an enhanced award may be justified.'" *Blum v. Stenson*, 465 U.S. 886, 887 (1984), quoting *Hensley* at 435. In determining this "lodestar" amount, as *Copeland v. Marshall*. 641 F.2d 880, 891 (D.C. Cir. l980) (*en banc*) referred to it, courts handling FOIA cases in the D.C. Circuit almost always apply one of two standard market rates—the *Laffey* matrix rate as calculated by the U.S. Attorneys' Office ("USAO Matrix") and that which has become known as the "*Salazar*" *Laffey* Matrix.

The *Salazar* Matrix incorporates the "Legal Services Component" of the Consumer Since at least 2000, this Court has approved the use of a version of the *Laffey* matrix updated through the application of the legal services component of the Consumer Price Index ("CPI") to bring rates from earlier years in line with current economic realities. *See Salazar v. District of Columbia ("Salazar I")*, 123 F. Supp.2d 8, 11-15 (D.D.C. 2000). While the

U.S. Attorney's Office for the District of Columbia maintains its own version of the fee matrix, this Court reiterated in 2011 that it "still believes that use of the National Legal Services CPI 'has the distinct advantage of capturing the more relevant data because it is based on the legal services component of the Consumer Price Index rather than the general CPI on which the U.S. Attorney's Office matrix is based.'" *Salazar v. District of Columbia ("Salazar II")*, 750 F. Supp. 2d 70, 73 (D.D.C. 2011), quoting *Salazar I*, 123 F. Supp.2d at 14-15.  *See also Smith v. District of Columbia*, 466 F. Supp. 2d 151, 156 (D.D.C. 2006) ("The Court concludes that the use of the updated *Laffey* Matrix is reasonable and consistent with previous precedent from our Court of Appeals, as well as from this Court in *Salazar [I]*.")

While a fee applicant "has the burden of establishing the reasonableness of its fee request," that burden is met when supporting documentation is "of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended," *Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004) (citations and internal quotation marks omitted); *see also American Petroleum Inst. v. EPA*, 72 F.3d 907, 915 (D.C. Cir. 1996) ("petitioner must submit 'sufficiently detailed information about the hours logged and the work done'") (citation omitted).  As this Court recognizes, "the ultimate inquiry is whether the total time claimed is reasonable" and a claimant is thus required to provide "sufficient detail . . . so that [the court] can evaluate what the lawyers were doing and the reasonableness of the number of hours spent on those tasks." *Smith*, 466 F. Supp. 2d at 158.

Here, the total time claimed is reasonable, and claimant has provided sufficient detail to allow the Court to evaluate what counsel did and the reasonableness of the number of hours spent

**Conclusion**

For the foregoing reasons, the Court should grant this motion and order defendant

CIA to pay AIM's attorneys' fees in the amount of $173,949.25.

DATE:   February 9, 2015.


Respectfully submitted,


_____/ s/_____
John H. Clarke   Bar No. 388599
Attorney for Plaintiff Accuracy in Media, Inc.
1629 K Street, NW
Suite 300
Washington, DC  20006
(202) 344-0776
johnhclarke@earthlink.net

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROGER HALL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-814 (RCL) |
| | ) | |
| CENTRAL INTELLIGENCE AGENCY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

PROPOSED ORDER

Upon consideration of plaintiff Accuracy in Media, Inc.'s Motion for an Interim

Award of Attorneys' Fees, the response thereto, and the arguments of counsel, it is this

_____ day of _____, hereby

ORDERED, that the motion is granted, and it is further

ORDERED, that, within ten days of the date of the entry of this order, defendant shall

remit to counsel for plaintiff Accuracy in Media, Inc., the sum of $_____.


_____
UNITED STATES DISTRICT COURT