# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ROGER HALL, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 04-814 (RCL) |
| | ) | |
| CENTRAL INTELLIGENCE AGENCY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Before the Court are plaintiffs Hall and Studies Solutions Results' motion [223] for interim attorneys' fees and plaintiff Accuracy in Media's motion [224] for interim attorneys' fees for their work in this case. For over a decade, plaintiffs have sought records under the Freedom of Information Act ("FOIA") pertaining to missing Prisoners of War and persons Missing in Action ("POW/MIAs") in Southeast Asia. The facts pertinent to this lengthy litigation have previously been set forth in great detail, both in *Hall v. CIA*, 668 F. Supp. 2d 172, 176-78 (D.D.C. 2009) and in *Hall v. CIA*, 881 F. Supp. 38 50-51 (D.D.C. 2012).

## I.     LEGAL STANDARD

In a FOIA suit, "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). A plaintiff substantially prevails by "obtain[ing] relief through either (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the

complainant's claim is not insubstantial." § 552(a)(4)(E)(ii). In addition to being eligible for attorneys' fees, i.e. substantially prevailing, a plaintiff must be entitled to the fees in order to receive any. *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1495 (D.C. Cir. 1984). Entitlement "entails a balancing of four factors: (1) the benefit of the release to the public; (2) the commercial benefit of the release to the plaintiff; (3) the nature of the plaintiff's interest; and (4) the reasonableness of the agency's withholding." *Id.* at 1498. With respect to the balancing test, "[t]he sifting of those criteria over the facts of a case is a matter of district court discretion," *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1094 (D.C. Cir. 1992), but the D.C. Circuit has offered some guidance. "Essentially, the first three factors assist a court in distinguishing between requesters who seek documents for public informational purposes and those who seek documents for private advantage." *Davy v. CIA*, 550 F.3d 1155, 1160 (D.C. Cir. 2008) (emphasis added).

FOIA permits an award of "*reasonable* attorney fees and other litigation costs" to a plaintiff that demonstrates its eligibility for and entitlement to such an award. 5 U.S.C. § 552(a)(4)(e)(i) (emphasis added). "The usual method of calculating reasonable attorney's fees is to multiply the hours reasonably expended in the litigation by a reasonable hourly fee." *Bd. of Trs. Of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998) (citations omitted); *see also Weisberg*, 745 F.2d at 1499. The plaintiff bears the burden of establishing the reasonableness of the hourly rate sought. *In re North*, 59 F.3d 184, 189 (D.C. Cir. 1995). "Once plaintiffs have provided such information, there is a presumption that the number of hours billed and the hourly rates are reasonable." *Blackman v. District of Columbia*, 677 F. Supp. 2d 169, 172 (D.D.C. 2010). At that point, "the burden then shifts to the defendants to rebut plaintiffs' showing that the amount of time spent was reasonable and that the hourly rates for the attorneys who worked on the matter

were reasonable, considering their various skill levels and experience for this kind of case." *Id.* (citing *Watkins v. Vance*, 328 F. Supp. 2d 23, 26 (D.D.C. 2004)).

If the plaintiff achieves only limited success, it is within the court's discretion to reduce the award of fees. *George Hyman Constr. Co. v. Brooks*, 963 F.2d 1532, 1535 (D.C. Cir. 1992). The court must exclude "hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). A prevailing FOIA plaintiff is not entitled to an attorneys' fee award for "nonproductive time or for time expended on issues on which plaintiff ultimately did not prevail." *Weisberg*, 745 F.2d at 1499 (citing *Nat'l Ass'n of Concerned Veterans v. Sec'y of Defense*, 675 F.2d 1319, 1323 (D.C. Cir. 1982)). As the Supreme Court explained in *Hensley*, "[t]here is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment." *Hensley*, 461 U.S. at 436-37.

Interim fees may be awarded under FOIA. *See, e.g., Nat'l Ass'n of Criminal Defense Lawyers, Inc. v. U.S. Dep't of Justice*, 182 F.3d 981 (D.C. Cir. 1999); *Washington Post v. U.S. Dep't of Defense*, 789 F. Supp. 423 (D.D.C. 1992). Some FOIA cases dealing with interim fees have erected additional bars to interim fee awards that vary from case to case. *Cf. Allen v. Dep't of Defense*, 713 F. Supp. 7 (D.D.C. 1989); *Allen v. FBI*, 716 F. Supp. 667 (D.D.C. 1989). For example, *Allen v. FBI* set forth four factors to determine whether interim fees are appropriate: (1) the degree of hardship which delaying a fee award until the litigation is finally concluded would work on plaintiff and his counsel; (2) whether there is unreasonable delay on the government's part; (3) the length of time the case has been pending prior to the motion; and (4) the period of time likely to be required before the litigation is concluded. 716 F. Supp. at 672 (citation omitted).

Another case, *Allen v. Department of Defense*, noted only that the plaintiff had substantially prevailed on several matters and the case had been ongoing for many years before awarding interim fees. 713 F. Supp. at 13.

## II.     ANALYSIS

The CIA concedes that the plaintiffs have prevailed on several of their claims and that they are therefore eligible for fees. Opp'n 8. The CIA also "accepts some responsibility for the unnecessarily protracted nature of this litigation" and notes that there is "accordingly no need for the Court to consider whether the plaintiffs are entitled to an award." *Id.* Furthermore, the CIA does not argue that interim fees are inappropriate or that fees should not be awarded until the conclusion of litigation. By its own admission, "[t]he only question is what award is reasonable under the circumstances." Opp'n 8.

In conceding the plaintiffs' entitlement to fees, the CIA acknowledges that factors such as the benefit of the release to the public and the reasonableness of the CIA's withholding support awarding reasonable fees to the plaintiffs' attorneys for their work. The Court finds that given the scope and length of this case, the number of court proceedings recorded on the docket, and the records regarding billing hours proposed by plaintiffs, the number of hours requested appears reasonable.

Nonetheless, the CIA argues that the plaintiffs' request is "grossly unreasonable on the facts of this case" and requests limiting the award to more than $75,000, Opp'n 8, and the Court addresses each of its arguments in turn.

### 1.  Plaintiffs' Success

The CIA primarily argues that the plaintiffs' limited overall success in this case cannot justify the requested fee award. Its opposition may also be read to make the related argument that

4

plaintiffs' award should specifically exclude compensation for hours spent working on unsuccessful motions. The Court treats these related issues separately.

The CIA requests that the Court reduce the requested fees because plaintiffs have achieved only limited success, calling their victory "largely pyrrhic." *Id.* at 13 (citing *EPIC v. Dep't of Homeland Sec.*, 982 F. Supp. 2d 56, 63 (D.D.C. 2013); *Judicial Watch, Inc. v. Dep't of Justice*, 878 F. Supp. 2d 225, 239 (D.D.C. 2012)). The CIA argues that because plaintiffs sought such "extraordinarily broad categories of records," "it was almost inevitable that litigation would ensue." *Id.* at 9. This allegation is, to some extent, in tension with the CIA's statement that it "does not dispute that the plaintiffs have substantially prevailed on several of their claims." Indeed, the Court has repeatedly rejected the CIA's claim that the FOIA requests were overly broad and unduly burdensome, and now agrees that plaintiffs have achieved significantly more than a pyrrhic victory.

Overall, the Court finds that the plaintiffs in this case have been quite successful in achieving their objective: obtaining documents unlawfully withheld. When this lawsuit was filed, the CIA refused to release the requested records and failed to respond to plaintiffs' request for over a year. After many years of litigation, the CIA has released more than 4,000 documents, quite a substantial success. The Court finds that plaintiffs' actions in diligently pursuing their claims were reasonable—even those that were ultimately unsuccessful—and it will not use the benefit of hindsight to scrutinize every one of plaintiffs' actions. *Cf. Hensley*, 461 U.S. at 435 n.11 ("We agree with the District Court's rejection of 'a mathematical approach comparing the total number of issues in the case with those actually prevailed upon.'" (citations omitted)).

The CIA also specifically takes issue with a number of unsuccessful motions filed by the plaintiffs in this case. Opp'n 5. While it is true that not all of plaintiffs' motions were successful

5

at the time, they were not unproductive or unnecessary because all related to and contributed to the ultimate search conducted. *See Hensley*, 461 U.S. at 438 ("Given the interrelated nature of the facts and legal theories in this case, the District Court did not err in refusing to apportion the fee award mechanically on the basis of respondents' success or failure on particular issues."). For example, while plaintiffs' original motion for a fee waiver was denied, the steps they took in litigating that issue contributed to the CIA's ultimate decision to grant the waiver.[1] Likewise, while their cross-motion for summary judgment was denied without prejudice after the Court found it relied on a faulty declaration, the amended motion was largely successful. As the D.C. Circuit has held, "a litigant 'who is unsuccessful at a stage of litigation that was a necessary step to her ultimate victory is entitled to attorney's fees even for the unsuccessful stage.'" *Air Transp. Ass'n of Canada v. FAA*, 156 F.3d 1329, 1335 (D.C. Cir. 1998) (*quoting Cabrales v. Cty. of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991)). "Rare, indeed, is the litigant who doesn't lose some skirmishes on the way to winning the war." *Id.* The Court finds that the work plaintiffs did in this case was not "excessive, redundant, or otherwise unnecessary," *Hensley*, 461 U.S. at 434, but instead contributed to their ultimate success in this case.

To the extent that—despite plaintiffs' overall success—the Court might specifically exclude hours spent on the allegedly unsuccessful motions, the Court finds it troubling that the CIA did not even attempt to analyze how many hours related to such motions, instead stating only that "a fee award of up to $75,000 may be appropriate." Opp'n 8. The CIA opted out of providing a quantitative measure of which hours were "reasonable" and which were not—providing no basis

---

[1] Plaintiffs may be compensated for efforts that contributed to the CIA's voluntary decisions to grant plaintiffs' requests, notwithstanding the Supreme Court's rejection of the catalyst theory in *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001). *See* 5 U.S.C. § 552(a)(4)(E)(ii) (redefining "substantially prevail[ing]" to include "obtain[ing] relief through . . . a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial); *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 525 (D.C. Cir. 2010).

from which to determine how much of a reduction would be appropriate and leaving such calculations to the Court. This not only inconveniences the Court, but should the Court produce its own analysis for the first time in a written opinion, the plaintiffs would not have a chance to respond. General allegations of improper billing are insufficient to meet a defendant's burden to rebut plaintiffs' showing that their hours billed were reasonable. *Cf. Blackman*, 677 F. Supp. 2d at 172; *Rosenfeld*, 904 F. Supp. 2d 988, 1005.

The CIA further argues that the information uncovered by these searches does not "add to the fund of information that citizens may use in making vital political choices." Opp'n 10 (citing *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995)). Certainly information regarding missing POW/MIAs following the Vietnam and Korean Wars is exactly the type of information that interests the public. Disclosure of this information has the potential to shed light on the extent, nature, intensity, and duration of the government's efforts to locate POW/MIAs and show the degree to which the CIA has accurately informed the public about its search efforts and the information it possesses. Just last week, the *Washington Post* ran an article on this very issue, discussing Michael Linnington, the head of the Pentagon's new agency in charge of recovering and identifying remains of U.S. war dead. Robert Burns, *A Vow to Better ID War Dead*, Washington Post, July 7, 2015, at A13. A report by the Government Accountability Office noted the agency's efforts have been hampered by weak leadership, infighting and a fragmented approach to planning, and Linnington himself spoke to the "dysfunction" caused by having multiple agencies assigned to this mission. *Id.* Information regarding POW/MIAs is not only of interest to the public, but hard to come by.

Indeed, the plaintiffs have uncovered such information. For example, plaintiffs point to a responsive document indicating that David L. Hrdlicka was alive in 1968, *after* the United States

government had informed his wife that he had been captured during the Vietnam War and died in captivity. AIM Mot. at 12 (citing documents). While the CIA apparently believes that this information is of interest only to his wife and does not improve the public's knowledge of the functioning of the government, Opp'n 10, the Court vehemently disagrees.

The CIA also alleges that when these documents were produced to plaintiff, they were already available to the public as part of a National Archives declassification project. However, the relevant time period is whether they were available when plaintiff *requested* the documents. The CIA fails to bear its burden of establishing the fact that the documents were already publicly available when *requested*. *See Judicial Watch, Inc. v. Dep't of Justice*, 774 F. Supp. 2d 225, 230 (D.D.C. 2011). The CIA is not entitled to drag its feet on a FOIA request until the records sought are publicly available, and then deny plaintiffs their fees because the documents are *now* publicly available. After fighting tooth and nail over every issue in this case for over a decade, arguing that the documents were already publicly available in an attempt to avoid paying attorneys' fees is sour grapes.

For these reasons, the Court finds that plaintiffs were quite successful in this case, and that their counsel's time was reasonably spent in obtaining such a victory. Therefore, the Court will not reduce the fees requested on the basis of limited success.

## A. Reasonableness of the CIA

The CIA argues that its own reasonableness counsels against the requested fee award. Still, it "concedes that at least two aspects of its handling of this case may not meet the test of reasonableness in hindsight." Opp'n 14. "First, the CIA did not send the plaintiffs a substantive response to their FOIA request for more than a year." Furthermore, "the Court criticized the CIA's failure to adequately follow up on documents referred to other agencies for processing." *Id.* The

Court agrees that while the CIA ultimately lost on many issues, its behavior was not "recalcitrant in its opposition to a valid claim" and did not "engage[] in obdurate behavior." *McKinley v. Fed. Housing Finance Agency*, 739 F.3d 707, 712 (citation omitted). The CIA's lack of reasonableness suggests that the plaintiffs' attorneys should be compensated for their efforts, but is not so egregious as to warrant more.

### B. Hours Requested

The Court rejects the CIA's allegation that the plaintiffs' separate attorneys largely duplicated each other's efforts and thus seek an award of double fees.[2] Opp'n 15. The CIA relies on the fact that plaintiffs filed "virtually identical motions" throughout the litigation. However, this is not evidence of duplicative efforts: It is just as likely a reflection of the attorneys' coordination to *avoid* duplicative effort. The plaintiffs were entitled to have separate counsel, as the CIA concedes, and some degree of coordination was required. This conclusion is bolstered by the fact that AIM's counsel spent less than 259 hours over ten years representing its client—while Hall's billed three times as many hours. Over the course of the litigation, a number of AIM's arguments were made by incorporating by reference, or summarizing, arguments advanced by Hall in his dispositive motions. Similarly, the Court rejects CIA's objections to the time spent on communication between attorneys. As noted, communication is essential to avoiding duplicative efforts, and in fact the time spent communicating is imminently reasonable: They attorneys seek compensation for 49-59 phone calls over nearly a decade, many of which were short in duration.

In any event, the CIA does not cite specifics. General allegations that fail to quantify how much duplicative time has been submitted are insufficient. *Rosenfeld*, 904 F. Supp. 2d at 1005

---

[2] The Court also rejects the CIA's objection to fees for allegedly unsuccessful motions filed by the plaintiffs. *See supra.*

("Mere generalized allegations of unjustified billing not supported by specific citations to evidence in the record are insufficient to warrant a reduction in the lodestar figure.").

For these reasons, the Court finds it inappropriate to reduce the plaintiffs' requested attorneys' fees for alleged duplicative efforts.

The CIA also argues that the plaintiffs have failed to meet their burden in several respects. Hall's counsel charged for non-legal services at their full billing rate, including proof-reading a motion (one hour), attempting to upload a CD-ROM (twelve minutes), and working on time sheets (thirty-six minutes). Hall now concedes that uploading the CD-ROM and working on time sheets was clerical work, and thus that 0.8 of an hour should be charged at the *Laffey* rate for clerical work rather than attorney services; the Court agrees. The Court finds, though, that the hour spent proof-reading the final draft of a motion before submission was not clerical work but that of an attorney.

Finally, the CIA alleges that Mr. Hall's attorney has not submitted contemporaneous documentation to support, and only bare descriptions of how he spent his time, warranting a substantial reduction. However, Hall asserts that the times reflected on his counsel's itemization were recorded contemporaneously. They include information regarding the date, amount of time (in tenths of an hour) expended, and the general subject of the service provided. While more detail would perhaps be helpful, this is all that is required. *Hensley*, 461 U.S. at 437 n.12 ("Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures."). The Court sees no benefit to obtaining for itself the spiral notebooks where these time records were originally maintained, and the CIA did not seek the Court's assistance in obtaining the notebooks for the CIA to undertake such a review—which the Court would have

authorized, even over any objection by plaintiffs. The CIA will not now be heard to complain of a lack of contemporaneous billing records.

## C. Appropriate Rate

"The 'reasonable hourly rate' is guided by the *Laffey* matrix prepared by the U.S. Attorney's Office." *Hansson v. Norton*, 411 F.3d 231, 236 (D.C. Cir. 2005). Plaintiffs have decided to forego litigation of the potential application of the *Salazar* rate and accept the USAO *Laffey* rate, instead. Hall Reply at 8; AIM Reply at 15. However, the plaintiffs believe that all of their time should be compensated at today's rates rather than those in place at the time the work was done. Applying today's rates to all hours worked would result in significantly higher fee awards, which plaintiffs contend is appropriate due to the CIA's "delay and obdurate behavior." Hall Reply at 2; AIM Reply at 15.

The Court may not award attorneys' fees to compensate counsel for delay in this case. The D.C. Circuit has squarely held that such requests were "foreclosed" by the Supreme Court in *Library of Congress v. Shaw*, 478 U.S. 310 (1986)). *Weiserg v. U.S. Dep't of Justice*, 848 F.2d 1265 (D.C. Cir. 1988) *overruled on other grounds by King v. Palmer*, 950 F.2d 771 (D.C. Cir. 1991).

Alternatively, plaintiffs suggest that an upward departure is appropriate due to the government's "obdurate behavior." While the CIA's behavior has been less-than-stellar on many occasions, as both parties acknowledge, the Court does not find the behavior obdurate. To the extent that the CIA was overly vigorous in its litigation of this case, it has already resulted in additional work—and thus, additional fees for the plaintiffs' attorneys.

Therefore, the Court finds that the application of historic *Laffey* rates is appropriate.

**D. Fees Awarded**

Applying the historic *Laffey* rates to Hall and SSR's total requested hours produces an award of $346,231 after billing 0.8 hours to the clerical rate rather than the attorney rate. Their attorney, James Lesar, agrees that it is appropriate to deduct 15% of the time recorded as a matter of billing judgment, yielding an award of $294,296.40.

Plaintiff Hall also requests $1,044 for an assisting attorney's work. However, because the Court was not provided *any* documentation of this time, or information regarding this attorney's experience or efforts, it declines to award such fees. *See Action on Smoking & Health v. CAB*, 724 F.2d 211, 220 (D.C. Cir. 1984) ("Outright denial may be justified when the party seeking fees declines to proffer any substantiation in the form of affidavits, timesheets or the like . . . .).

Applying the historic *Laffey* rates to the hours claimed by plaintiff Accuracy in Motion yields an award of $120,182. Because AIM's attorney, John Clarke, attests that he has already reduced the time charged for time that was underproductive and his time recorded seems reasonable, the Court declines to make a further deduction.

The fee awards are calculated as described in the charts on the following pages:

**Hall and SSR's attorney James Lesar**

| Year | *Laffey* Rate | Hours Recorded | Hours reduced by 15% | Amount ($) |
|---|---|---|---|---|
| 6/1/03-5/31/04 | 380 | 4.4 | 3.74 | 1,421.20 |
| 6/1/04-5/31/05 | 390 | 81.7 | 69.445 | 27,083.55 |
| 6/1/05-5/31/06 | 405 | 24.7 | 20.995 | 8,502.97 |
| 6/1/06-5/31/07 | 425 | 104.9 | 89.165 | 37,895.13 |
| 6/1/07-5/31/08 | 440 | 34.9 | 29.665 | 13,052.60 |
| 6/1/08-5/31/09 | 465 | 118 | 100.3 | 46,639.50 |
| 6/1/09-5/31/10 | 465 | 70.4 | 59.84 | 27,825.60 |
| 6/1/10-5/31/11 | 475 | 87.5 | 74.375 | 35,328.13 |
| 6/1/11-5/31/12 | 495 | 21.8 | 18.53 | 9,172.35 |
| 6/1/12-5/31/13 | 505 | 76.3 | 64.855 | 32,751.78 |
| 6/1/13-5/31/14 | 510 | 48.9 | 41.565 | 21,198.15 |
| 6/1/13-5/31/14* | 145 | .8 | .68 | 98.60 |
| 6/1/14-5/31/15 | 520 | 75.4 | 64.09 | 33,326.80 |
| **TOTAL** | | 749.7 | 637.245 | $294,296.40 |

*This row represents work compensated at the clerical rate

**AIM Attorney John Clarke**

| Year | *Laffey* Rate | Hours | Amount ($) |
|---|---|---|---|
| 6/1/04-5/31/05 | 390 | 12 | 4,680 |
| 6/1/05-5/31/06 | 405 | 18.5 | 7,492.50 |
| 6/1/06-5/31/07 | 425 | 46.25 | 19,656.25 |
| 6/1/07-5/31/08 | 440 | 13 | 5,720 |
| 6/1/08-5/31/09 | 465 | 45.75 | 21,273.75 |
| 6/1/09-5/31/10 | 465 | 20.5 | 9,532.50 |
| 6/1/10-5/31/11 | 475 | 16.75 | 7,956.25 |
| 6/1/11-5/31/12 | 495 | 12.25 | 6,023.75 |
| 6/1/12-5/31/13 | 505 | 29.75 | 15,023.75 |
| 6/1/13-5/31/14 | 510 | 22.75 | 11,602.50 |
| 6/1/14-5/31/15 | 520 | 21.5 | 11,180 |
| **TOTAL** | | 259 | $120,181.50 |

The cases the CIA cites in an attempt to show that this award is out of sync with fees awarded in similar cases are not illustrative. Simply listing cases and fee awards is not helpful. For example, the CIA argues that in *Citizens for Responsibility and Ethics in Washington v. Department of Justice*, "[f]or plaintiff's five years of successful litigation, the court awarded attorney's fees of $35,018, approximately one-twentieth of what plaintiffs seek." Opp'n 12 (citing *Citizens for Responsibility & Ethics in Washington v. Dep't of Justice*, Civ. A. No. 11-0374 (D.D.C. 2015)). But the length of the litigation tells us little about the extent of the work necessary

for success. Furthermore, an inspection of the docket reveals that it was a straight-forward case and presented a single major issue—whether the FBI's categorical assertion of privacy exemptions barred disclosure of the documents at issue in their entirety or only in part. After the Court found the categorical denial by the DOJ was unjustified, it ordered the defendants to submit *Vaughn* indices of withheld documents; defendants subsequently released the requested documents and plaintiffs voluntarily dismissed the case.

*EPIC v. FBI*, Civ. A. No. 12-667, 2015 WL 737101 (D.D.C. 2015), is similarly inapposite, although the CIA notes that the court awarded $29,635 for "four years of successful litigation on a matter implicating broad privacy concerns." Opp'n 11. The litigation was less protracted and less contentious. After the defendant submitted a *Vaughn* index and sample pages, the parties agreed to resolve the remaining legal issues through settlement. *EPIC v. FBI*, Civ. A. No. 12-667, Joint Status Report of November 1, 2013, ECF No. 25. Additionally, the majority of the hours claimed in that case were provided by attorneys with two to four years of experience who commanded low rates under the *Laffey* matrix. *Id.*, ECF Nos. 28-2 through 28-5.

Awards in other FOIA cases have been significantly higher than those in cases cited by the CIA. *See, e.g.*, *CREW v. FEC*, 66 F. Supp. 3d 134 (D.D.C. 2014) (awarding $153,258 in attorneys' fees in a FOIA case); *Memphis Publ'g Co., et al v. FBI*, Civ. A. No. 10-1878 (ABJ) (D.D.C.), ECF No. 232-4 (settlement for $186,000 in attorneys' fees in FOIA action); *Rosenfeld*, 904 F. Supp. 2d at 988 (awarding $363,218 in attorneys' fees and costs). Indeed, the CIA itself recently stipulated to the payment of $350,000 in attorney's fees and costs in another FOIA case. *Nat'l Sec. Archive v. CIA*, Civ. A. No. 06-01080 (GK) (D.D.C. Dec. 11, 2008). That case lasted just over two years, and the only issue in dispute was whether the CIA had reneged upon its prior grant of "representative of the news media" status to the National Security Archive. News media status is

just one of many issues that was litigated in this case, in addition to different exemption claims, collateral estoppel and res judicata issues, and more, as well as several instances of obstructive conduct on the part of the CIA.

For these reasons, the Court does not find that this award is disproportionate to those in other FOIA cases.

## III.   CONCLUSION

For the aforementioned reasons, plaintiffs' motion for attorneys' fees will be granted as follows: The total amount awarded to Hall and SSR's counsel (James Lesar) will be $294,296.40. The total amount awarded to Accuracy in Motion's counsel (John Clarke) will be $120,182.

A separate order consistent with this Opinion shall issue on this date.

Signed by Royce C. Lamberth, United States District Judge, on July 14, 2015.