## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROGER HALL et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Case No. 04-814 |
| | ) |
| CENTRAL INTELLIGENCE AGENCY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM & ORDER

How has this Freedom of Information Act (FOIA) fight lasted for fifteen years? The Court partly blames the plaintiffs, who delayed any progress for at least 680 days by moving for fifty-seven deadline extensions. *See* ECF Nos. 6, 22, 24, 56, 57, 65, 69, 70, 80, 81, 82, 89, 90, 91, 93, 94, 99, 100, 101, 102, 112, 113, 133, 134, 139, 152, 153, 156, 158, 159, 160, 161, 162, 180, 201, 202, 213, 228, 229, 230, 242, 249, 251, 252, 253, 256, 257, 273, 275, 276, 279, 280, 283, 296, 306, 308, 309. Yet the Court also blames the government: had the Central Intelligence Agency (CIA) just done as it promised, the litigation would have ended two years ago.

In August 2017—during the fourth round of summary judgment briefing—the Court granted almost all of the government's summary judgment motion. The accompanying opinion charted four simple steps for the government to resolve this case in its favor:

1. *Provide More Specificity on Document Destruction Protocols.* The government acknowledged 569 nonoperational[1] physical file folders contained records potentially

---

[1] 50 U.S.C. § 3141 exempts "operational files of the Central Intelligence Agency" from FOIA. *Id.* at (a). That section further defines "operational files," *see id.* at (b), and obliges the CIA director to review decennially all files deemed operational to determine if they still meet the definition, or—conversely—if the passage of time has eroded the justification for the exemption, *see id.* at (g).

responsive to plaintiffs' FOIA request. *See* Mem. Op. 13-14, ECF No. 291. But it claimed 114 of the folders "had been properly destroyed in accordance with the CIA's records control schedule." *Id.* So to substantiate the government's inability to recover the records contained in those folders, the Court "direct[ed] the CIA to provide further specificity as to the regulations and schedules applied to its decision to destroy the files." *Id.* at 14.

2. *Confirm or Deny the Existence of Additional Nonoperational Records Allegedly Shown to Congress.* Armed with evidence suggesting the CIA shared additional relevant records with members of Congress (i.e., records beyond those in the 569 folders), the plaintiffs claimed the government's search was inadequate, since it did not turn-up these additional records. Of course, in reviewing the adequacy of the government's search, the Court cannot guarantee the government "produce[d] all relevant material; no search of this size, dating back [multiple] decades, will be free from error." *Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986). This Court must only ratify that the government "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce" all nonoperational records. *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). And the Court need not even make that judgment if the alleged additional records do not actually exist, or if they remain operational. So hoping to nip plaintiffs' question in the bud, the Court asked the government to confirm or deny the existence of any more records. If confirmed, the Court further asked the government to declare whether the records remain operational. And if they remain operational, the Court also asked the government to explain why. *See* Mem. Op. 14-17.

3.   *Disclose Previously Redacted Names of Non–CIA Employees.* Ignoring this Court's
order from the third round of summary judgment briefing, the government reprised its
already-rejected attempt to redact names of non–CIA employees under FOIA's
protection for "personnel and medical files and similar files the disclosure of which
would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. §
552(b)(6). But the Court reaffirmed its prior decision requiring the government to
disclose these names. *See* Mem. Op. 18-19, 22.

4.   *Provide "No Later Than" Dates for Undated, Fully Withheld Records.* In seeking to
withhold documents under FOIA's exemption for national-security information, the
government failed to provide creation dates for three documents. *See* ECF No. 248-2
ex. C. But since that exemption partly turns on "the age of the documents," the Court
held "the CIA must discern and disclose the latest date on which these document[s]
can reasonably be considered to have been created." Mem. Op. 19-20.

At a status conference three weeks later, the government noted it "found" the relevant
destruction schedules and "w[ould] be able to provide them to the Court within a matter of
weeks." 8/21/17 Tr. 4:12-22, ECF No. 292. It also disclosed it was "consulting with civil
appellate" about appealing the Court's order to disclose the non–CIA employee names. *Id.* at
3:25–4:4. It further affirmed it "found" dates for the undated classified documents and was
"willing to provide them" orally or "in a supplemental filing." *Id.* at 4:5-10. And it asked the
Court for "a little bit of additional guidance" on how to disclaim any "additional records out
there including communications with Congress." *Id.* at 4:23–5:3. In response, the Court
explained:

I assume the CIA may have provided things other than from operational files to
congressmen, but the Court has no way of knowing, and the CIA has not provided

3

> the Court any information about whether other things were also transmitted to
> Congress. The record doesn't reflect that things other than operational details were
> given to Congress or weren't given to Congress, and I can't say that everything
> given to Congress was from operational files. So I don't have any way to uphold
> that you only gave operational file materials to them that would be exempt. . . . [I]f
> you only gave them operational files and didn't give them anything else, make that
> record                              for                              the                              Court.

*Id.* at 5:24–6:22. The Court reminded the government to explain why any files would still be

deemed operational sixty years after-the-fact. *Id.* at 6:23–7:12. Then the government asked a

follow-up: "So as we understand it, the Court would like clarification regarding non-ops files

materials that were provided to Congress?" *Id.* at 7:18-20. And the Court confirmed: "Right, if

there were any. . . . I don't have a declaration saying none were done." *Id.* at 7:21-24.

The Court held another status conference a month later. The government noted the non–

CIA employee name disclosure was "still being considered by civil appellate." 9/26/17 Tr. 3:20–

4:3, ECF No. 293. And the government backpedaled on the "No Later Than" dates: though the

government vowed at the last status conference to imminently provide the dates, it never

followed through, and now said only it "c[ould] provide them quite quickly." *Id.* at 4:8-10. It also

walked back its promise to provide the relevant destruction schedules: now, it claimed the

schedules were classified, necessitating "a motion to file those for the Court's in camera review."

*Id.* at 4:11-24. But helpfully, government counsel represented "the only possibility" for

additional records shown to Congress but not "sent to plaintiffs or described in the Vaughn

Index" would be if the records were operational. *Id.* at 6:2-11. And the government promised to

"provide this explanation in a declaration" by November 15, 2017. *Id.* at 6:12-15. Plaintiffs

promised their responses by January 15, 2018, and the Court ordered the government to reply by

February 15, 2018. *Id.* at 8:6–9:9.

But the government never moved to file the destruction protocols ex parte, nor did the

government file a declaration adopting what counsel said at the hearing. Instead, the Court got

this fifth round of summary judgment briefing, well past the proposed schedule: the

government's motion missed the original deadline by two weeks; plaintiffs' cross-

motions/oppositions missed the original deadline by over a year (it took plaintiffs' counsel fifty-

seven weeks to respond); the replies missed the original deadline by fourteen months.

What's worse, the government's motion ignores almost everything the Court said in its

August 2017 opinion, and almost everything the government itself said at the two status

conferences. In the motion's lone bright spot, the government finally provides "No Later Than"

dates for the three undated denied-in-full documents. *See* 2017 Decl. Antoinette B. Shiner ¶ 3,

ECF No. 295-2. But for the rest of the motion, the Court feels doomed to relive Groundhog Day.

Take the Court's request for greater specificity on the destruction protocols. Here's what

the government said back in 2016: "[T]he Agency queried an electronic database which contains

an automated inventory of records retired to the [Agency Archives and Records Center]. . . . .

These broad searches yielded approximately 16,500 hits. Personnel reviewed these search results

for any false hits . . . . [and] narrowed [the response] to 569 hard copy folders associated with

204 individuals. It was later determined that 114 of those folders had been properly destroyed in

accordance with the CIA's records control schedule." 2016 Decl. Antoinette B. Shiner ¶ 22, ECF

No. 248-2. And here's all the Agency adds in 2017: promising that under "retention rules . . .

coordinated in conjunction with" the National Archives "and formally approved by the Archivist

of the United States," the 114 records were "only required to be kept for a designated period of

time (from one to 10 years, depending on the file type)" since they "were largely administrative

in nature and contained documents related to routine administrative support, working papers,

Case 1:04-cv-00814-RCL   Document 333   Filed 05/23/19   Page 6 of 7

films of no intelligence value, and the correspondence and reference documents associated with certain FOIA/Privacy Act and declassification files." 2017 Decl. Antoinette B. Shiner ¶¶ 6–7. That's it. No citation to any formal document retention policy. No discussion about when CIA destroyed the documents. Nothing that meaningfully helps the Court substantiate the government's inability to recover the 114 folders.

The government's attempt to confirm or deny the existence of additional nonoperational records shared with Congress falls further flat. The government musters just two pages of general background on § 3141(g)'s required decennial review. *See* 2017 Decl. Antoinette B. Shiner ¶¶ 8–12. But that adds nothing. The Court keeps re-re-asking the same questions: Were there actually other records beyond those contained in the 569 folders? If yes, are they operational? And if so, why? Do they contain detailed information about still-viable intelligence sources? A method of intelligence gathering? Something else?

And the government's motion does not even acknowledge the Court's prior order to disclose the names of non–CIA employees, let alone mention any plans to appeal or any justification for flouting this Court's order in the meantime. *See* ECF No. 290.

But ignoring prior judicial opinions and orders is never an advisable litigation strategy— especially for the federal government. Ordinarily, when litigants fail to acknowledge or respond to a dispositive motion, courts treat the motion as conceded. *See Hudson v. Hardy*, 412 F.2d 1091, 1094 (D.C. Cir. 1968). And when litigants rehash already-rejected arguments, courts reject them again under principles of waiver and res judicata. *See NextWave Pers. Commc'ns, Inc. v. F.C.C.*, 254 F.3d 130, 142-43 (D.C. Cir. 2001). So too here, where the government has failed to meaningfully acknowledge or respond either to the Court's August 2017 opinion and order, or to the plaintiffs' renewed cross-motion.

Accordingly, the Court gives the government twenty days to explain why it has not conceded or waived plaintiffs' cross-motion for summary judgment, and—if possible—to supplement its original motion in accordance with this order. Plaintiffs shall have ten days to respond to any submission. These deadlines shall not be further extended. Unless the government shows good cause, the Court will grant the plaintiffs' motions and deny the government's motion.

It is **SO ORDERED**.

May 23, 2019

Royce C. Lamberth
United States District Judge