<div align="center">

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

</div>

|  |  |  |
|---|---|---|
| ROGER HALL, *et al.*, | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 04-0814 (RCL) |
| CENTRAL INTELLIGENCE AGENCY, | ) ) ) | |
| Defendant. | ) ) | |

<div align="center">

**DEFENDANT'S MOTION FOR RECONSIDERATION**
**OF THE ORDER DATED AUGUST 2, 2019, AND SUPPORTING**
**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

</div>

Defendant, the Central Intelligence Agency ("CIA" or "Agency"), respectfully moves for reconsideration of the Court's memorandum and order dated August 2, 2019. *See* ECF No. 340. That order requires the CIA to review and search its operational files and explain whether any additional responsive records exist and, if so, why they remain operational and thus exempt from the Freedom of Information Act ("FOIA"). *Id.* at 3. As explained below, the operational files exemption permits judicial review in the instance where a complainant alleges that the CIA "improperly withheld records because of failure to comply with any provision of this section." 50 U.S.C. § 3141(f). Here, the CIA established through its declarations that, to the extent that responsive records exist there, any "exempted operational files likely to contain responsive records currently perform the functions" within the meaning of the applicable operational file series. *Id*. § 3141(f)(4)(B). This limited demonstration is all that is required of the Agency unless the complainant offers "sworn written submission based on personal knowledge or otherwise admissible evidence" to rebut that showing. *Id*. § 3141(f)(4)(A). In this case, Plaintiffs have submitted affidavits based on speculation and supposition that allege the existence

of additional undisclosed intelligence documents, but they do not demonstrate through personal knowledge, or other admissible evidence, the "improper exemption of" CIA's operational files. For the reasons described below, Defendant respectfully requests that the Court reconsider the Order dated August 2, 2019, and grant summary judgement on behalf of the CIA.

## LEGAL STANDARD

Interlocutory orders "may be revised at any time" before the entry of final judgment. Fed. R. Civ. P. 54(b). As the discretionary language of the rule indicates, district courts have significant flexibility to reconsider their earlier orders; and this Court and the D.C. Circuit has said that reconsideration may be granted "as justice requires." *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005) (citation omtted); *accord Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011); *Schoen v. Wash. Post*, 246 F.2d 670, 673 (D.C. Cir. 1957). Considerations a court may take into account under this standard include whether the court misunderstood a party, made a decision beyond the adversarial issues presented to the court, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law or facts has occurred since the submission of the issue to the Court. *See Singh v. George Wash. Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005). Indeed, although various factors may be considered in determining what "justice requires," the ultimate touchstone is "whether [relief upon] reconsideration is necessary under the relevant circumstances." *Bergbauer v. Mabus*, 934 F. Supp. 2d 55, 74 (D.D.C. 2013).

## ARGUMENT

### I.      Reconsideration is Appropriate

Justice requires reconsideration of the August 2, 2019 Order for several reasons. Foremost, the Court's ruling is unprecedented in the respect that Plaintiffs' affidavits fail to

demonstrate through personal knowledge the Agency's noncompliance with the operational files exemption. Though not dispositive, the novelty of the ruling counsels in favor of caution and could have substantial repercussions for the Agency in defending against other lawsuits seeking search and review of operational files.[1] The court's determination that the Agency has improperly exempted operational files – in light of the CIA's sworn submissions showing that they "currently perform [their designated] functions" and with no corresponding response from Plaintiffs refuting the Agency's "showing with a sworn written submission based on personal knowledge or admissible evidence" – has the potential to call into question the rigorous decennial review of exempted operational files undertaken by the CIA Director and consequently open these files to other legal challenges. Compliance with the Order will directly contradict the purpose of the exemption, which was "to relieve the [CIA] from an unproductive [FOIA] requirement to search and review certain CIA operational files consisting of research and . . . records which, after line-by-line security review, almost invariably prove not to be releasable under the FOIA." S. Rep. No. 98-305, at 1 (1983). Due to the gravity of these impacts, reconsideration is appropriate.

## II. The CIA Properly Demonstrated that Its Operational Files Currently Perform the Requisite Functions

The CIA Information Act, codified in the National Security Act, allows the CIA Director to exempt operational files of the CIA from the provisions of FOIA which require "publication or disclosure, or *search or review*." 50 U.S.C. § 3141(a) (emphasis added). The only issue that

[1] Although other courts have ordered the CIA to search and review its operational files, such cases are generally limited to specified statutory exceptions that subject otherwise exempt operational files to search and review requirements. *See, e.g., Talbot v. U.S. Dep't of State*, 315 F. Supp. 3d 355, 370 (D.D.C. 2018) (CIA must conduct a search where files met the exception regarding certain congressional investigations provided in 50 U.S.C. § 3141(c)). The exceptions provided in § 3141(c) are not at issue in this case.

remains in this case is whether CIA has successfully demonstrated that the operational files exception bars the designated files of the National Clandestine Service (now known as the Directorate of Operations), the Directorate for Science and Technology ("DS&T"), and the Office of Personal Security from search or review under FOIA.[2]  *See* ECF No. 340 at 2.  Where, as here, Plaintiffs have alleged that the requested records have been incorrectly withheld because of improper exemption of operational files, the CIA can overcome such an assertion "by demonstrating to the court by sworn written submission that exempted operational files likely to contain responsive records currently perform the functions set forth in subsection (b) of this section" (*i.e.*, perform the functions of operational files of the Directorate of Operations, DS&T or Office of Personnel Security as defined by the statute).  In order to make such a demonstration, "the court may not order the [CIA] to review the content of exempted operational file or files" "unless the complainant disputes the [CIA's] showing with a sworn written submission based on personal knowledge or otherwise admissible evidence."  50 U.S.C. § 3141(f)(4); *see also* S. Rep. No. 98-305, at 20 (1983) ("the basis for file designation should be the function of the file, i.e., the purpose for which the file has been established, rather than the specific contents of the file").  Accordingly, the CIA need only demonstrate that the exempt *files* perform the enumerated functions, not that each of the *records* stored within those files performs those functions.  Here, the Agency has submitted several declarations to show that its operational files currently perform their designated functions, and Plaintiffs have provided no evidence to rebut this showing or even make the claim that the Agency has improperly exempted nonoperational records.

---

[2] Another remaining issue in this case is the reprocessing of certain records pursuant to FOIA Exemption 6.  Defendant notes that CIA has now reprocessed those records and produced them to Plaintiffs.

In response to Plaintiffs' allegations regarding noncompliance with the operational files exception, the CIA demonstrated, as required by the statute, that these files properly perform the requisite functions. The CIA declarant, who is the principal Information Review Officer for litigation-related records at the Agency, has averred that the "the Agency undertook a decennial review of the exempt operational files designations in 2015" and "[i]n identifying the exempt file series, the [CIA Director] and his advisers consider[ed] whether files falling within each proposed series . . . perform the functions set forth in the statute." Decl. of Antoinette B. Shiner ¶¶ 17, 19, ECF No. 271-1. She further explained that "[i]f a proposed file series would not perform one of the statutory functions, it would not be designated as exempt" and noted that these file series "are carefully and tightly defined to ensure that they serve specific operational purposes." *Id*. at ¶ 19.

In an effort to provide additional clarity on operational files designations and in an attempt to address this Court's questions regarding "how such dated records can reasonably be considered operational under the statute," in a supplemental declaration, the CIA provided further detail about the CIA Director's review process, explaining that there "is not an age limit on how long files may be held in operational files" and noting that certain operational files, even old ones,[3] "may still contain detailed, still viable sources and methods information which

---

[3] The Court has previously expressed skepticism regarding CIA's designations due to the age of the records involved. *See* ECF No. 340 at 2. However, Defendant notes that courts have generally rejected the contention that the mere age of intelligence information affects the viability of that information. *See Fitzgibbon v. CIA*, 911 F.2d 755, 763-64 (D.C. Cir. 1990). Indeed, courts have noted that CIA is best positioned to "weigh the risks that disclosure of such information may reveal intelligence sources and methods so as to endanger national security[,]" notwithstanding the age of that information. *Maynard v. CIA*, 986 F.2d 547, 555 n.6 (1st Cir. 1993); *see also CIA v. Sims,* 471 U.S. 159, 180 (1985) (noting that "it is the responsibility of the Director of Central Intelligence, not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the Agency's intelligence-gathering process").

remains very sensitive today." Decl. of Antoinette B. Shiner ¶ 11, ECF No. 295-2. Because Plaintiffs' submissions focused on imagery, the Agency's declarant explicitly provided that "in its most recent decennial review, the validation team determined which records, including those containing imagery, held in designated operational files should continue to have that designation." *Id*. at ¶ 11.

Records that would disclose intelligence sources and methods, such as those alleged by Plaintiffs to exist, are clearly covered by the statute, which includes files that would reveal both human sources and technical collection methods. "Operational files" of the Directorate of Operations are defined as files "which document the conduct of foreign intelligence or counterintelligence operations or intelligence or security liaison arrangements or information exchanges with foreign governments or their intelligence or security services" and those of the DS&T as files "which document the means by which foreign intelligence or counterintelligence is collected through scientific and technical systems." 50 U.S.C. § 3141(b)(1)-(2).

### III. Plaintiffs Have Failed to Provide Written Submissions Based on Personal Knowledge or Otherwise Admissible Evidence to Rebut the CIA's Written Submissions Demonstrating the Proper Exemption of the Agency's Operational Files

Plaintiffs have submitted nothing to rebut the Agency's showing that the exempted operational files currently perform the required functions. Although Plaintiffs have filed a number of affidavits throughout the course of this litigation (the relevant of which predate the CIA's submission), none of them are written by classification authorities or individuals with personal knowledge of the CIA's operational files and whether they "currently perform the [designated] functions" in their respective file category.[4] Instead, Plaintiffs' submissions focus

---

[4] Notably, Plaintiffs have primarily challenged the CIA's decennial review as inadequate. *See, e.g.*, ECF No. 258 at 15 (arguing that "courts are authorized to review whether CIA has, in fact,

on references to documents, of unknown provenance, that were reportedly displayed at briefings where, in some cases, CIA employees were in attendance.  In the most recent Order, this Court pointed to former Congressman and Senator Bob Smith's affidavit, *see* ECF No. 258-4, which at first blush tends to indicate that certain information may have been improperly withheld. However, the affidavit does not address CIA's operational files and Senator Smith does not claim to have any personal knowledge or other admissible evidence that would call into question the CIA's decision to exempt particular operational files from search and review.  Rather, his affidavit centers on his personal disagreements with an Intelligence Community assessment authored in 1998 and, specifically, its finding that a document released from Russian archives was unreliable.  Aff. Of Bob Smith ¶¶ 11-18, ECF No. 298-4.  This contention has no bearing on this case.

Moreover, Senator Smith's assertion that "the intelligence agencies still keep numerous documents classified under the guise of national security" and that he "can state without any equivocation that they are still withholding documents that should be declassified" is sweeping and wholly unsupported.  *Id*. ¶¶ 19, 20.  Other than noting a document that CIA produced in this case, *id.* ¶ 16, Senator Smith makes no other reference to CIA and claims no personal knowledge of CIA information, let alone the propriety of the Agency's operational files determinations.  In fact, the final Report of the Senate Select Committee on POW/MIA Affairs, on which Senator Smith served, tends to show that none of the classified files requested by the committee would reside in Agency operational files but rather were "transferred to the National Archives for permanent storage."  Rep. of the S. Select Committee on POW/MIA Affairs, S. Rep. No. 103-1

---

performed the decennial review"); ECF No. 312 at 2 (again challenging CIA's decennial review).  Defendant, in turn, responded to Plaintiffs' arguments regarding the CIA's decennial review.  *See* ECF No. 295 at 6-8 (describing the decennial review in greater detail).

(1993), Appendix 5, p. 1.  In fact, Plaintiffs have been repeatedly directed to NARA and other agencies in the course of this case.  Decl. of Antoinette B. Shiner, n. 3, ECF No. 295-2.

Likewise, the declaration of former U.S. Representative John LeBoutillier lacks personal knowledge of the CIA's compliance with the operational files exception.  He asserts only that he "understood that photographs and intercepts [that the House Special POW/MIA Task Force] were shown" in the early 1980s "were CIA documents" and that, "to [his] knowledge, these documents have never been released by the Agency."  Decl. of John LeBoutillier ¶ 9, ECF No. 83-15.  The affidavit of former U.S. Representative Bill Hendon is similarly deficient.  His assertions that he "believes" that CIA is in possession of certain satellite imagery are not only entirely speculative and conclusory but also beside the point as it provides no details as to the CIA's improper exemption of its operational files series or an impropriety in the CIA Director's decennial review.  Aff. of Hon. Bill Hendon ¶ 8-24, ECF No. 95-45.  Although Plaintiffs clearly believe that there is additional material on POW/MIAs and it is contained in the CIA's operational files – even assuming arguendo that there are additional documents – this is not the only logical conclusion to be drawn.  Indeed, given the subject matter of these inquiries, it is plausible (and perhaps even likely) that to the extent that such records exist they could have originated with, or are presently held by, the Department of Defense, the Defense Intelligence Agency, or the National Archives.  Regardless, even if other documents were generated and at one point held by the CIA – Plaintiffs' submissions do nothing to rebut the CIA's affidavits showing that the operational files currently perform their proper functions.  Given that Plaintiffs have failed to meet their burden, to the extent that records reside there, they are properly exempt from search and review.

**CONCLUSION**

For the foregoing reasons, the Court should grant Defendant's motion for reconsideration and grant the CIA's motion for summary judgment.

Dated: August 30, 2019

Respectfully submitted,

JESSIE K. LIU, D.C. Bar. No. 472845
United States Attorney

DANIEL F. VAN HORN, D.C. Bar No. 924092
Chief, Civil Division

By:  /s/  *Christopher Hair*
CHRISTOPHER HAIR, PA Bar No. 306656
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-2541
christopher.hair@usdoj.gov

*Counsel for Defendant*