UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**ROGER HALL**, *et al.*,

   *Plaintiffs,*

v.

**CENTRAL INTELLIGENCE AGENCY**,

   *Defendant.*

Case No. 1:04-cv-814-RCL

### MEMORANDUM OPINION

This Freedom of Information Act ("FOIA") action has been running for over eighteen years. What began as a drawn-out contest has narrowed to one final issue which the Court will put to rest today. The Court ordered the Central Intelligence Agency ("CIA") to conduct a search of its operational files, which are typically exempt from a FOIA search. ECF No. 340 at 3. The CIA conducted that search and found no responsive records. ECF No. 353. The case was then closed, after which plaintiffs moved to reconsider so that this Court could evaluate the adequacy of the CIA's operational file search. ECF No. 364. The Court reopened the case for that single "limited purpose." ECF No. 375 at 5.

In December of 2021, the CIA filed a motion for summary judgment alongside a declaration that described the CIA's search of its operational files. CIA Mot., ECF No. 376; Vanna Blaine Decl., ECF No. 376-3. Plaintiffs timely filed a cross-motion for summary judgment and opposition to the CIA's motion, ECF No. 377, as well as a Memorandum in Support ("Pls. Mem."), ECF No. 377.

After considering the briefing, the Court will **GRANT** the CIA's motion for summary judgment and **DENY** plaintiffs' motion for summary judgment.

1

I. **BACKGROUND**

The Court has previously explained at length the factual background of this case. Plaintiffs filed a FOIA request with the CIA in February of 2003 seeking records related to prisoners of war ("POW") from the Vietnam War. ECF No. 1 at 2. This action was commenced in May of 2004. *Id.* at 1. The procedural history in this case between 2004 and 2009 is set out in Judge Kennedy's 2009 opinion. *Hall v. Cent. Intel. Agency*, 668 F. Supp. 2d 172 (D.D.C. 2009), ECF No. 137. Procedural history from 2009 to 2012 is set out in this Court's 2012 opinion. *Hall v. Cent. Intel. Agency*, 881 F. Supp. 2d 38 (D.D.C. 2012), ECF No. 187. History from 2012 to 2017 is set out in the 2017 opinion. *Hall v. Cent. Intel. Agency*, 268 F. Supp. 3d 148 (D.D.C. 2017), ECF No. 291. This Court will now briefly describe the main points leading to this opinion.

In 2019, this Court ordered the CIA to search its operational files for "additional records allegedly shown to Congress." ECF No. 340 at 1. Operational files are typically exempt from search and disclosure, but this Court ordered their search under an exception. *Id.* at 3; 50 U.S.C. § 3141(a).[1] The CIA conducted a search of operational files, but found no results satisfying the plaintiffs' request. Vanna Blaine Decl. ¶ 15; *see id.* at ¶ 13 (explaining that the CIA searched for "1,400 live sighting reports that were reportedly displayed at Congressional briefings attended by CIA employees, as well as records of imagery and reconnaissance and rescue operations"). As a result, the case was terminated in summary judgment for the CIA. ECF No. 353. Then in late 2021,

---

[1] Operational files are defined as:
    (1) files of the National Clandestine Service [now known as the Directorate of Operations] which document the conduct of foreign intelligence or counterintelligence operations or intelligence or security liaison arrangements or information exchanges with foreign governments or their intelligence or security services;
    (2) files of the Directorate of Science and Technology which document the means by which foreign intelligence or counterintelligence is collected through scientific and technical systems; and
    (3) files of the Office of Personnel Security which document investigations conducted to determine the suitability of potential foreign intelligence or counterintelligence sources;
except the files which are the sole repository of disseminated intelligence are not operational files.
50 U.S.C. § 3141(b).

2

the Court reopened the case for the sole and limited purpose of considering the adequacy of the CIA's search of its operational files. ECF No. 375.

## II. LEGAL STANDARDS

FOIA allows the general public to request release of records from government agencies. 5 U.S.C. § 552. It contains a "strong presumption in favor disclosure." *A.C.L.U. v. U.S. Dep't of Justice*, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002)).

Courts routinely settle FOIA disputes in the summary judgment stage. *See Def. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Therefore, summary judgment is only appropriate "where 'the evidence is such that a reasonable jury could not return a verdict for the nonmoving party.'" *Wash. Post Co. v. U.S. Dep't of Health and Hum. Serv.*, 865 F.2d 320, 325 (D.C. Cir. 1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court must evaluate the record "in the light most favorable to the nonmoving party." *Id.*

In order for the CIA to succeed on summary judgment, it must "demonstrate[] that 1) no material facts are in dispute, 2) it has conducted an adequate search for responsive records, and 3) each responsive record that it has located has either been produced to the plaintiff or is exempt from disclosure." *Hall*, 268 F. Supp. 3d at 154 (citing *Miller v. Dep't of Justice*, 872 F. Supp. 2d 12, 18 (D.D.C. 2012)). "The 'genuine issue of fact' relevant to a FOIA summary judgment motion is not the existence of any particular document, but rather the reasonableness of the agency's search." *Id.* at 159 (citing *SafeCard Serv., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991)).

### III.     DISCUSSION

To satisfy its burden to conduct an adequate search for documents, an agency must "conduct a search reasonably calculated to uncover all relevant documents." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990) (quoting *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). Adequacy does not depend on whether other responsive documents may exist. *Id.* Rather, an agency "must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). An agency may meet its burden of showing that it complied with the requirements of FOIA by providing "[a] reasonably detailed affidavit, setting forth the search terms and type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Id.* The requirement exists as a matter of common sense: its purpose is to "afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment." *Id.* In response to this affidavit, a FOIA requestor may then present "countervailing evidence." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 314 (D.C. Cir. 2003) (citing *Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 836 (D.C. Cir. 1979)).

If the totality of the circumstances "raises substantial doubt, as to a search's adequacy, particularly in view of well-defined requests and positive indications of overlooked materials[,] summary judgment would not be appropriate." *Hall*, 268 F. Supp. 3d at 154 (internal quotation marks omitted) (quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)). When considering the credibility of the agency affidavits, courts must "accord[] a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the

4

existence and discoverability of other documents.'" *SafeCard Serv.*, 926 F.2d at 1200 (quoting *Ground Saucer Watch, Inc. v. Cent. Intel. Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

The CIA submitted an initial and supplemental affidavit here. Vanna Blaine Decl.; Supp. Vanna Blaine Decl., ECF No. 383-2. The CIA describes the search conducted in reasonable detail including what it searched for, Vanna Blaine Decl. ¶10, who searched, *id.* at ¶ 11, the types of documents searched and the terms used, *id.* at ¶ 12, the process by which initially responsive results were reviewed, *id.* at ¶ 13–14, and the final results, *id.* at ¶ 14. The CIA further explained that it "included all relevant office databases likely to contain responsive records." *Id.* at ¶ 12. And later supplemented its initial declaration by explaining that "[a]ny database where operational files related to Plaintiff's request could reasonably have been located were searched in the course of this review." Supp. Vanna Blaine Decl. ¶ III.1. These affidavits are accorded a presumption of good faith. *See SafeCard Serv.*, 926 F.2d at 1200.

In response, plaintiffs make three primary arguments. First, that there are documents that should have turned up in the search but did not, thus indicating an inadequate search. Second, that the search terms used by the CIA were inadequate. Third, that the CIA has not adequately described its search. After evaluating the arguments that plaintiffs raise, the CIA's own briefing, and the relevant affidavits, the Court concludes that the CIA has met its burden and established that it has conducted an adequate search. Accordingly, summary judgment is warranted.

### A. Plaintiffs' Contention That Alleged Missing Records Indicate An Inadequate Search Fails

"In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can reasonably be expected to produce the information requested." *Oglesby*, 920 F.2d at 68. Sometimes, failure to

5

uncover a particular document in a search will be given "significant weight" by a court analyzing adequacy. *Iturralde*, 315 F.3d at 315. However, unsubstantiated allegations of unreleased files hold little merit. *Meeropol v. Meese*, 790 F.2d 942, 952–53 (D.C. Cir. 1986) ("[A] search is not unreasonable simply because it fails to produce all relevant material."). And failure to turn up a document is not alone enough—the inquiry is "the appropriateness of the methods used to carry out the search" rather than "the fruits of the search." *Iturralde*, 315 F.3d at 315 (citing *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994)).

Plaintiffs contend that their evidence demonstrates that the CIA has not released records "clearly in its possession." Pls. Mem. 3. Plaintiffs cite generally to their 2016 statement of material facts, and to several affidavits, to support their contention that "affidavits contain numerous examples of operations, events and activities that surely generated relevant records that have not been provided or otherwise identified." *Id.* at 3–4 & n.1. After reviewing the specific portions of the 2016 statement of material facts cited to by plaintiffs, as well as the affidavits referenced, this Court has identified several that form a substantial basis for plaintiffs' contention. For example, the affidavits of Former United States Senator Bob Smith and James Sanders are statements tending to establish the prior existence of records shown to Congress.

Senator Smith stated that the Senate Select Committee on Prisoners of War found, "thousands of live-sighting reports over the years from the end of the [Vietnam] war into the 1990s." ECF No. 258-4 ¶ 8. James Sanders quotes a Senate report from the 1990s that, "the U.S. government has at least 1,400 such [live-sighting] reports." ECF No. 258-2 at ¶ 13.[2]

---

[2] Other examples include declarations previously credited by the Court, such as those of former Congressmen Bill Hendon and John LeBoutillier. ECF No. 340 at 2; *see* ECF No. 95-45; ECF No. 83-15.

Plaintiffs also point to the 1994 affidavit of Barry Toll, who served in the Army in Southeast Asia in the 1960s and 70s. ECF No. 83-1. His statements are of a different kind, pointing not to evidence of Congressional review of records, but rather to how the purported files were kept internal to the Executive Branch. In the late 1960s and 70s Toll worked in a Department of Defense group that organized, coordinated, and collected intelligence and operations regarding POWs in Southeast Asia during the Vietnam War. *Id.* at 3. According to Toll, that group, termed the Studies Observation Group ("SOG"), was the "central bottleneck" through which all POW related intelligence from any agency "flowed to the White House." *Id.* at 4.

Years after his work for SOG, and following extensive Congressional testimony about his experiences, Toll formed a group of experts on POWs to apprise the newly inaugurated President Clinton about "what he was not being told [about POWs]." *Id.* at 12. One member of this group was George Carver, a former CIA employee who worked in the Nixon White House during the years when SOG would send information to Washington. *Id.* Carver and Toll met with Anthony Lake, President Clinton's National Security Advisor in 1993. *Id.* at 15. Toll recounts this meeting in his affidavit. *Id.* Carver told Toll that the SOG archives were routinely ferried from the White House to CIA headquarters at Langley where he said they would likely remain, either in the "Director of Operations files" or the "Executive Registry Files of CIA." *Id.* at 16–18. Furthermore, Carver also stated that, even if the files had been destroyed, there would be a record of them. *Id.* at 18. Toll admits in his affidavit, however, that the Senate Select Committee was never able to "locate the SOG archives." *Id.* at 11.

These kinds of statements were previously credited by the Court as "positive indications of overlooked materials." ECF No. 340 at 2 (quoting *Aguiar v. Drug Enf't Admin.*, 865 F.3d 730, 738 (D.C. Cir. 2017)). The Court came to that conclusion, in part, because the CIA specifically

7

refused to "confirm nor deny" the existence of the records. *Id.* Back then, the CIA stated that, if the records existed, they would be in operational files. *Id.* That ominous non-answer has been rendered moot by the search at issue here, which turned up no responsive records in the CIA's operational files. Thus, the plaintiffs' affidavits and other evidence must now stand alone. But, just because "a document [might have] once existed does not mean that it now exists." *Miller v. Dep't of State*, 779 F.2d 1378, 1385 (8th Cir. 1986). This logic applies to the statements of Toll, the statements of Sanders and Senator Smith, as well as additional statements tending to establish the existence of records shown to Congress in the past. Files once displayed to plaintiffs' declarants need not exist thirty to fifty years later. In like fashion, plaintiffs' varied and voluminous references to documents and exhibits, some of which the CIA has previously released, do not demonstrate that the CIA possesses related files. "[M]ere reference to other files does not establish the existence of [relevant] documents." *Morley v. Cent. Intel. Agency*, 508 F.3d 1108, 1121 (D.C. Cir. 2007) (internal quotation marks omitted) (quoting *Steinberg*, 23 F.3d at 552).

But more fundamentally, plaintiffs' evidence fails given the limited purpose here. Agencies normally have discretion when determining which systems they believe are going to be responsive to a plaintiff's request. *See Oglseby*, 920 F.2d at 68. But here, the Court specifically ordered a search of operational files. ECF No. 340 at 3. The Court is only addressing the adequacy of that operational files search. ECF No. 375 at 5. And the plaintiffs' evidence does not establish, or even significantly suggest, that the files referenced are in the CIA's current operational files.[3]

In sum, plaintiffs' evidence is simply too attenuated to sufficiently overcome the CIA's adequate affidavit. *See Iturralde*, 315 F.3d at 315. Plaintiffs' affidavits, even considered alongside

---

[3] Plaintiffs' assertion that "the Agency declined to search" the systems mentioned by Mr. Toll for responsive records that they believe to be within the SOG archives is thus even further off base. Pls. Mem. 7–8. The CIA was only required to search its operational files.

8

the other parts of the eighteen-year record, fail to bind together in a manner that overcomes the CIA's showing of an adequate operational files search. Thus, the fact that these referenced records did not appear does not counsel a finding of inadequacy. *See id.*

### B. Plaintiffs' Contention That Search Terms Were Insufficient Fails

Plaintiffs' next argument is that a litany of search terms should have been used by the CIA. Pls. Mem. 4–7. This is no small request, especially since plaintiffs argue that the CIA should search its operational files for over 1700 individual names and terms related specifically to Laos. *Id.* at 4–5. Furthermore, such a request runs directly into FOIA precedent advising that "agencies generally have 'discretion in crafting a list of search terms' as long as they are 'reasonably tailored to uncover documents responsive to the FOIA request.'" *Heffernan v. Azar*, 317 F. Supp. 3d 94, 108 (D.D.C. 2018) (quoting *Tushnet v. U.S. Immigr. & Customs Enf't*, 246 F. Supp. 3d 422, 434 (D.D.C. 2017)); *see Bigwood v. U.S. Dep't of Def.*, 132 F. Supp. 3d 124, 140–41 (D.D.C. 2015); *Liberation Newspaper v. U.S. Dep't of State*, 80 F. Supp. 3d 137, 146 (D.D.C. 2015).

Here the CIA lists the following search terms: "POWs, prisoners of war, MIA, missing in action, Vietnam, task force, House Special POW, image, and different combinations and variations of those search terms." Vanna Blaine Decl. ¶ 12. The CIA also explains that it used broad search terms because the use of more specific terms may have omitted documents potentially responsive to plaintiff. Supp. Vanna Blaine Decl. ¶ III.2. The Court finds these terms sufficient because "it . . . appears more than likely that the terms utilized would identify" documents responsive to plaintiffs' request. *See Bigwood*, 132 F. Supp. 3d at 141. The terms used by the CIA appear to be reasonably likely to have yielded the files sought by plaintiffs if they were indeed present in the CIA's operational files.

### C. Plaintiffs' Contention That The CIA Failed To Describe Its Search in Adequate Detail Fails

Plaintiffs' last argument is that the CIA's description of its search is insufficient to warrant summary judgment. Pls. Mem. 2–3. The Court holds the CIA's description is adequate, especially considering the circumstances of this case, wherein the Court has ordered the CIA to search its operational files.

When describing its search an agency must provide affidavits that are "'relatively detailed' and nonconclusory and must be submitted in good faith." *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (quoting *Goland v. Cent. Intel. Agency*, 607 F.2d 339, 352 (D.C. Cir. 1978)). Moreover, affidavits must "explain in reasonable detail the scope and method of the search conducted by the agency." *Id.* at 127. However, an agency need not "in every FOIA case . . . set forth with meticulous documentation the details of an epic search for the requested records." *Id.*

The D.C. Circuit's cases lay out general criteria for determining adequate description. *See, e.g.*, *Weisberg* 627 F.2d at 371; *Mobley v. Cent. Intel. Agency*, 806 F.3d 568, 581 (D.C. Cir. 2015); *Morley*, 508 F.3d at 1122. Broadly, an adequate description will include (1) an explanation of what files were searched, (2) who searched them, and (3) a description of the systematic approach used to locate responsive documents. The Court will take each of these in turn.

First, the CIA denotes what files were searched. It does so by specifying (1) the search terms used, (2) why they were selected, (3) that the search was not limited by date range, (4) and that both electronic and hard-copy files were searched across "Agency-wide operational file systems." Vanna Blaine Decl. ¶¶ 10, 12; Supp. Vanna Blaine Decl. ¶ III.1–2. Second, for who, the CIA explains that "CIA information management professionals" searched through the file systems and conducted a two-tiered review. Vanna Blaine Decl. ¶ 11. Finally, the CIA describes its

systematic approach. The CIA describes the "broad search terms" used to find initially responsive documents. *Id.* at ¶ 12. Then, for files identified by the search, the CIA explains how it proceeded to individually review any responsive records for information relating to the plaintiffs' request. *Id.* at ¶¶ 13–14.

Nevertheless, Plaintiffs argue that the CIA must provide more information such as, the names of offices and records systems searched, how many databases were searched, if there were indices used, and how many hours were devoted to the search. Pls. Mem. 3. Plaintiffs cite to an earlier opinion in this case, *Hall*, 668 F. Supp. 2d at 172, which held that a different CIA search was inadequately described. *Id.* at 184; Pls. Mem. 2. There, the CIA provided "no information regarding how the search used to locate the records produced . . . occurred." *Hall*, 668 F. Supp. 2d at 184. But, unlike then, the affidavit here contains detailed information about how this search was conducted.

Plaintiffs cite no other cases to support their proposition that the CIA must be more detailed. And, in fact, cases suggest that the CIA is not obligated to, "disclose the specific offices searched or other search methodologies with such granularity." *Looks Filmproduktionen GmbH v. Cent. Intel. Agency*, 199 F. Supp. 3d 153, 167 (D.D.C. 2016); *see DiBacco v. Dep't of the Army*, 795 F.3d 178, 194–95 (D.C. Cir. 2015). The CIA's description is therefore sufficient on its own merits.[4]

But even beyond the affidavit's independent sufficiency, this case involves unique circumstances that further counsel ruling in favor of the CIA. The Court ordered the CIA to search its operational files. ECF No. 340. Operational files are typically exempt from search, review, or

---

[4] The CIA's declaration certifies that, "[a]ny database where operational files related to plaintiffs' request could reasonably have been located were searched in the course of this review." Supp. Vanna Blaine Decl. ¶ III.1.

11

disclosure under the National Security Act of 1947. 50 U.S.C. § 3141(a); *Morley*, 508 F.3d at 1116. It is only because this Court applied one of the Act's limited exceptions that the CIA needed to search its operational files here. ECF No. 340 at 3; 50 U.S.C. § 3141 (f)(4). The CIA rightfully points out the sensitive national security nature of its operational files. Supp. Vanna Blaine Decl. ¶ III.1. Thus, requiring an even more detailed description would be delicate matter.

Particularly given that the CIA's affidavits already make a strong showing of sufficiency, this Court finds that the description is adequate.[5]

## IV.   CONCLUSION

For the foregoing reasons, the Court will **GRANT** the CIA's motion for summary judgment and **DENY** plaintiffs' motion for summary judgment by separate order.

Date: July 7, 2022

Royce C. Lamberth
United States District Judge

---

[5] Given the aforementioned analysis, the plaintiffs' other argument, that the CIA's description fails because the search "generated a few [initially responsive] records," Vanna Blaine Decl. ¶ 13, but did not detail the exact number, cannot win the day. Plaintiffs cite no case wherein a court has found a search inadequate based on a lack of specificity regarding the initial number of responsive records. And cases in this Circuit suggest that without more missing information, a court will not hold a search inadequate on such a basis. *See Morley*, 508 F.3d at 1122; *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 891 (D.C. Cir. 1995). Thus, plaintiffs cannot impugn the adequacy of the CIA's search by demanding the specific numbers of initially responsive records.